## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SOURCE PRODUCTION & EQUIPMENT CO., INC., ASPECT TECHNOLOGY LIMITED, SPECMED, LLC, SPEC MED INTELLECTUAL PROPERTY, LLC, and SPEC INTELLECTUAL PROPERTY, LLC, | CIVIL ACTION NO. 2:16-cv-17528-SSV-JVM |
| *Plaintiffs,* | JUDGE SARAH VANCE |
| v. | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| KEVIN J. SCHEHR, ISOFLEX USA, ISOFLEX RADIOACTIVE LLC, RICHARD H. MCKANNAY, JR., and JOHN DOES 1-10. | JURY TRIAL DEMANDED |
| *Defendants.* | |

## PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs Source Production & Equipment Co., Inc. ("SPEC"), Aspect Technology Limited ("Aspect"), SpecMed, LLC ("SpecMed"), SPEC MED Intellectual Property, LLC ("SPEC MED IP"), and SPEC Intellectual Property, LLC ("SPEC IP") (collectively, "Plaintiffs"), and, pursuant to LR 7.5, submit the following consolidated response in opposition to the motions to dismiss Plaintiffs' First Amended Complaint (the "Amended Complaint") filed by Defendants Kevin J. Schehr

1

("Schehr") and Isoflex Radioactive, LLC ("Isoflex Radioactive") [Docket No. 44] and by Defendants Isoflex USA ("Isoflex") and Richard H. McKannay, Jr. ("McKannay") [Docket No. 45] (collectively, the "Motions to Dismiss"), showing the Court that the Motions to Dismiss are meritless and should be denied.

## I.   INTRODUCTION

Plaintiffs filed this lawsuit because they have been, and continue to be, harmed by the Defendants' unfair and illegal acts. Defendant Schehr, once their most trusted executive, betrayed SPEC and its affiliates, taking trade secrets and weakening SPEC financially so that it would be vulnerable to competition from McKannay's company, Isoflex, and its newly-formed affiliate, Isoflex Radioactive. After SPEC learned of Schehr's betrayal and fired him, Schehr began operating Isoflex Radioactive *across the street* from SPEC's offices, sending the unmistakable message that he and his co-Defendants were willing to wage war. Moreover, Schehr refused to return his company laptop for several weeks and, based on the forensic analysis that SPEC has been able to conduct, removed and since has refused to return thousands of files that he e-mailed to his personal accounts and downloaded to external hard drives, thumb drives, and CDs.

Plaintiffs' original Complaint laid out Defendants' wrongs in painstaking detail, and the Amended Complaint contains even greater detail and additional facts that Plaintiffs have learned since their initial filing. Plaintiffs do not, of

10924778

course, know every detail about the ways in which Defendants have harmed them, despite their attempts to learn more by seeking early discovery in this case. [Docket Nos. 3-4.][1] The filing of serial motions to dismiss by Defendants is only further delaying discovery. But Plaintiffs need not prove every detail of their claims at the pleading stage. Instead, because Plaintiffs have stated plausible (and indeed very likely) causes of action, their claims should proceed and the Motions to Dismiss should be denied.

## II.   PROCEDURAL BACKGROUND

Plaintiffs initiated this action on December 16, 2016. With their Complaint, Plaintiffs alleged that the Defendants misappropriated trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839 ("DTSA") and the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431(4) ("LUTSA"). The Complaint further alleged that Schehr violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, breached legal duties owed to Plaintiffs, breached contracts relating to

---

[1]      Plaintiffs' request for early discovery was necessitated in part by Defendants' refusal to cooperate with Plaintiffs in their attempt to learn more about what Schehr misappropriated from Plaintiffs following his termination. Before this suit was filed, Plaintiffs asked Defendants to return all information and property that in any way related to Plaintiffs' business. Schehr's counsel responded that the request was "utterly vague and incapable of reasonable ascertainment" and demanded that Plaintiffs "specifically identify" the information and property that Schehr had removed from SPEC *notwithstanding* that Schehr knew exactly what he took from SPEC and still was refusing to return to SPEC. Plaintiffs then filed the present lawsuit detailing their knowledge of Schehr's activities and Schehr still has refused to return the information and property that he misappropriated from SPEC.

10924778

preservation of Plaintiffs' confidential information, converted Plaintiffs' property, withheld assignment of patent rights, and engaged in fraud. [*See* Docket No. 1.] The original Complaint also contained claims against Isoflex and its Managing Director, McKannay, and against Isoflex's newly formed affiliate, Isoflex Radioactive, for their collective role in assisting and benefitting from Schehr's conduct in furtherance of the business of Isoflex and Isoflex Radioactive. (*See id*.)

In response to initial motions to dismiss filed by Defendants, Plaintiffs filed their Amended Complaint on April 4, 2017. [Docket No. 33.] Like the original complaint, the Amended Complaint contains claims for misappropriation of trade secrets, Computer Fraud and Abuse Act violations, breach of legal duties, breach of contract, conversion, and fraud, and adds a claim for violations of Louisiana's Unfair Trade Practices Act, La. Rev. Stat. § 51:1405 ("LUTPA"). The Amended Complaint added factual detail to support these claims, recognizing that, at every turn, Defendants have refused to admit what Schehr has done with the volumes of electronic information that he misappropriated from SPEC before and after his termination.

With their instant motions, Defendants Isoflex Radioactive, McKannay, and Isoflex (but not Schehr) move to dismiss Plaintiffs' DTSA claim (Count One) and LUTSA claim (Count Two). All of the Defendants (including Schehr) move

4

to dismiss Plaintiffs' conversion claim (Count Six) and LUTPA claim (Count Eight). Schehr, however, has not moved to dismiss Plaintiffs' DTSA or LUTSA claims, and he also does not move to dismiss Plaintiffs' Computer Fraud and Abuse Act claim (Count Three); breach of legal duties claim (Count Four); breach of contract claim (Count Five); or fraud claim (Count Seven).

### III.    ARGUMENT AND CITATION TO AUTHORITY

**A.    Standard for a Motion to Dismiss.**

At the motion to dismiss stage, a court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gootee Constr., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 15-3185, 2016 WL 1545658, at *3 (E.D. La. Apr. 15, 2016) (Vance, J.) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009)). Plausible grounds "simply call[ ] for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Nunez v. Forest Oil Corp.*, No. CIV. A. 07-6850,

10924778

2008 WL 2522121, at *1 (E.D. La. June 20, 2008) (Vance, J.) (*quoting Twombly*, 550 U.S. at 570).

**B.    Plaintiffs' Trade Secrets Claims are Plausible and Well-Pled.**

The Amended Complaint paints a clear picture of Defendants' misappropriation of trade secrets, and the Motions to Dismiss those claims are therefore without merit.

**1.    *Misappropriation under the DTSA and LUTSA.***

Under the DTSA, the term "misappropriation" includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]" *See* 18 U.S.C. § 1839(5)(A). Misappropriation also exists where a person discloses or uses a trade secret without express or implied consent while knowing (or having reason to know) that the trade secret was acquired under circumstances giving rise to a duty to maintain secrecy. *See* 18 U.S.C. § 1839(5)(B). The term "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. 18 U.S.C. § 1839(6)(A). LUTSA contains nearly identical definitions of the key terms "misappropriation" and "improper means." *See* La. Stat. Ann. § 51:1431.

10924778

### 2.    *The Amended Complaint's Misappropriation Allegations.*

The Motions to Dismiss should be denied because the Amended Complaint plainly supports each element of the misappropriation claims with sufficient factual detail. First, Schehr owed a duty of confidentiality to Plaintiffs, both by agreement and in his position as an executive and officer of SPEC and its affiliates. Indeed, Schehr has not moved to dismiss Plaintiffs' claim that he breached contracts designed to protect Plaintiffs' trade secrets. What is more, Defendants McKannay and Isoflex, having worked with Schehr during his employment with SPEC, knew or should have known that Schehr was obligated not to disclose the company's trade secrets. (*See, e.g.,* Am. Compl. ¶¶ 66-76.) Still, with intent to harm, the Defendants acquired, used, or disclosed Plaintiffs' trade secrets, as the Amended Complaint makes abundantly clear.

Beginning in at least June 2016, McKannay and Isoflex began working with Schehr to lay the groundwork for a competitive business (Isoflex Radioactive) that would accelerate its operations using Plaintiffs' trade secrets. (*See* Am. Compl. ¶¶ 66-70.) At the same time, Schehr was already engaging in various breaches of his legal duties to Plaintiffs, including by actively competing against Plaintiffs during his employment, disclosing trade secrets to the Defendants, and making fraudulent misrepresentations about SPEC to its owner, Mr. Dicharry. (*See, e.g.,* Am. Compl. ¶¶ 174-75.)

Immediately after SPEC terminated Schehr for his misconduct, McKannay also began attempts to capitalize on SPEC's "cash flow issue" (which McKannay and Schehr had caused) in an effort to compete with SPEC. (*See* Am. Compl. ¶¶ 105-09.) True to form, McKannay and Schehr were in contact immediately after Schehr's termination, when Schehr was still in possession of his company laptop for several weeks after his termination. (*See* Am. Compl. ¶¶ 108; 110.)

Following Schehr's termination in July 2016, the actions of Schehr and his co-Defendants further support Plaintiffs' misappropriation of trade secrets claims.[2] As alleged in the Complaint, SPEC's forensic analysis has revealed that Schehr maintained a number of non-SPEC email accounts; accessed a number of confidential and proprietary files on SPEC's computer network; and e-mailed those files to his personal e-mail accounts. (*See* Am. Compl. ¶ 111.) These files included, but were not limited to, information about Plaintiffs' designs, pricing, contracts, iridium and selenium sources, European patents, and reactor information. (*Id.*)

In addition to e-mailing trade secrets to his personal accounts, Schehr also attached external hard drives with considerable storage capacities to his company laptop, and after using those hard drives, deleted more than 5,000 files

---

[2]   All of the Defendants participated in trade secret misappropriation after the enactment of the DTSA on May 11, 2016. (*See, e.g.*, Am. Compl. ¶¶ 111, 125, 143, 146.)

10924778

from the laptop. (*See* Am. Compl. ¶¶ 112-13.) SPEC believes that Schehr also emptied a folder containing research and development plans for a SpecMed venture. (*See* Am. Compl. ¶ 114.) Schehr also continues to refuse to return thumb drives and CDs containing Plaintiffs' trade secrets and other confidential information. (*See* Am. Compl. ¶¶ 115-16.) Indeed, when asked to return every item of SPEC-related property, Schehr, through his counsel, simply said that he had returned the company's laptop (weeks after his termination). (*See* Am. Compl. ¶ 110.)

Capitalizing on Schehr's wrongdoing, McKannay and Isoflex created Isoflex Radioactive as an affiliate of Isoflex for the specific purpose of using Plaintiffs' trade secrets and confidential information. (*See* Am. Compl. ¶ 124.) Isoflex Radioactive has already advertised itself as "a manufacturer and supplier of radiographic NDT equipment and replacement sources" in direct competition with Plaintiffs. (Am. Compl. ¶ 123.) And Plaintiffs have alleged that Schehr, with Isoflex and McKannay, ordered additional depleted uranium shields solely for the purpose of building shipping containers that Isoflex Radioactive could use to compete with Plaintiffs. (Am. Compl. ¶ 69.) The Defendants knew, or should have known, that Schehr owed an obligation to SPEC to preserve its trade secrets, as Isoflex and McKannay worked with Schehr to carry out the plot against Plaintiffs and plainly were aware of Schehr's executive role with

Plaintiffs. (*See, e.g.*, Am. Compl. ¶¶ 66-70; 105-10; 124.) And now, Defendants continue to use or retain Plaintiffs' trade secrets, with potentially devastating consequences to SPEC's business. (*See, e.g.*, Am. Compl. ¶ 125.)

Revealing the extent to which Isoflex and Isoflex Radioactive seek to avoid the discovery of the truth, Isoflex, in its brief in support of its Motion to Dismiss, claims that it "does not employ defendant Kevin Schehr as an employee or contractor" and that Plaintiffs' allegation that Isoflex "has employed and/or engaged Schehr"… "is simply untrue." [Docket No. 45-1 at pp. 2, 6.] (emphasis in original.) Setting aside that Plaintiffs' allegations have to be accepted as true for the purpose of evaluating the Motions to Dismiss, Schehr, as recently as March 2017, represented himself as an employee or agent of Isoflex in emails sent ***to SPEC***. (*See* Declaration of Kelley Richardt ("Richardt Decl."), attached hereto as Exhibit A, at ¶ 4.)  In those emails, Schehr used an "isoflex.com" email address (the same email extension used by McKannay on behalf of Isoflex); his email signature contained the Isoflex logo; he listed the address for Isoflex's corporate headquarters in San Francisco; and linked to Isoflex's website. (*See id.* and Exhibit A-1 thereto.) Therefore, Isoflex needs to own that fact that Schehr is operating on its behalf as well as on behalf of its subsidiary, Isoflex Radioactive.

Viewed as a whole, Plaintiffs' allegations are plainly sufficient to survive the Motions to Dismiss. At this early stage of litigation, Defendants cannot

prevail by cherry-picking allegations and profiting from their own obstruction of facts surrounding the data and information that was taken out of Plaintiffs' possession. *See, e.g., Baker Petrolite Corp. v. Brent*, No. CIV.A. 09-7046 A(2), 2010 WL 924289, at *2 (E.D. La. Mar. 9, 2010) (recognizing that "[t]he evidence produced in discovery might ultimately fail to demonstrate that [defendant] competed against [plaintiff] or that he conspired with [plaintiff's] business competitors to injure the company… [b]ut the complaint need not be dismissed on the merits at this juncture"); *RoDa Drilling, LP v. Energy XXI Onshore, LLC*, No. CV 11-379-BAJ-SCR, 2012 WL 6651913, at *5 (M.D. La. Sept. 28, 2012), *report and recommendation adopted*, No. CIV.A. 11-379-BAJ, 2012 WL 6629685 (M.D. La. Dec. 20, 2012) (refusing to dismiss plaintiffs' trade secrets and unfair trade practices act claims against both individuals and corporate entities).

Corporations like Isoflex and Isoflex Radioactive also cannot avoid liability for misappropriation of trade secrets by attempting to turn a blind eye to Schehr's wrongful acts. *See, e.g., B & G Crane Serv., L.L.C. v. Duvic*, 935 So. 2d 164, 165-69 (La. Ct. App. 2006), *writ denied*, 939 So. 2d 1280 (La. 2006) (granting preliminary injunction against former employee and his new employer pursuant to both LUTPA and LUTSA in a case involving allegations that the former employee took a computer disk, rolodex cards, the memory chip out of a company phone, drawings, and confidential bidding and pricing information to

his new employer). The Amended Complaint plainly states that Schehr engaged in the exact same kind of conduct referenced in *Duvic* on behalf of Isoflex and Isoflex Radioactive and therefore pleads viable trade secrets claims. The Motions to Dismiss should therefore be denied as to Counts One and Two of the Amended Complaint.

**C.     Plaintiffs' Conversion and Unfair Trade Practices Claims are Not Preempted.**

Perhaps recognizing that the voluminous factual allegations supporting Plaintiffs' claims easily surpass the standard required to survive a motion to dismiss, Defendants instead argue that Plaintiffs' conversion claim (Count Six) and unfair trade practices claim under LUTPA (Count Eight) are preempted by Plaintiffs' trade secrets claims under LUTSA or the DTSA. These claims, of course, are far from identical to Plaintiffs' trade secrets claims, and as discussed below, are not subject to preemption.

**1.     *Plaintiffs' Conversion Claim is Not Preempted.***

While it is true that Defendants' conversion of Plaintiffs' confidential and proprietary information is causing irreparable harm to Plaintiffs, the Amended Complaint alleges conversion of more than just trade secrets. Indeed, paragraph 115 of the Amended Complaint alleges that Schehr continues to possess physical property of Plaintiffs, including thumb drives and CDs that he failed to return to

12

SPEC following his termination. Further, Schehr has not denied that he continues to possess "other property" of Plaintiffs', in addition to their confidential and trade secret information, as set forth in paragraph 190 of the Amended Complaint.

Defendants rely solely upon cases from outside this District or the Fifth Circuit to support their preemption argument. To Plaintiffs' knowledge, courts within the Fifth Circuit have never held that a conversion claim that arises out of the misappropriation of trade secrets and confidential information is preempted by the existence of a separate misappropriation claim. But even if that were the case, Plaintiffs have alleged theft of physical property by the Defendants, not just theft of intellectual property. As a corollary, in *Mabile v. BP, p.l.c.*, No. CV 11-1783, 2016 WL 5231839 (E.D. La. Sept. 22, 2016), the Court rejected BP's argument that the plaintiff's conversion claim was preempted by federal patent law, reasoning that the plaintiff's allegations that BP made misrepresentations to him supported a finding that the conversion claim was "based on factual allegations beyond the conduct covered under federal patent law." *Id*. at *31. Likewise, Plaintiffs' allegations in support of their conversion claim extend beyond the facts alleged to support their trade secrets claims. Accordingly, Plaintiffs' conversion claim (Count Six) is not preempted and the Motions to Dismiss that claim should be denied.

## 2.   *Plaintiffs' Unfair Trade Practices Claim is Not Preempted.*

Defendants' argument that Plaintiffs' unfair trade practices claim is preempted also falls flat. Courts in the Eastern District have recognized that LUTPA, as a state law targeting "unsavory business practices," is rarely preempted by some other law. *See Mabile, supra,* 2016 WL 5231839 at *36.  In fact, the Fifth Circuit has *explicitly* held that LUTSA and LUTPA "do not conflict, but merely provide parallel remedies for similar conduct." *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 405 (5th Cir. 2000) (collecting cases). As a result, the existence of a trade secrets claim under LUTSA does not preempt an unfair trade practices act claim under LUTPA. *Id.*

LUTPA prohibits conduct that "offends established public policy and various laws" and is "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.,* 35 So. 3d 1053, 1059 (La. 2010). While it is true that LUTPA is intended to sanction only "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct," *id.* at 1060, the Amended Complaint is rife with such allegations. Courts have held, for example, than an employee's competitive activities prior to termination (like those alleged throughout the Amended Complaint) can constitute unfair competition. *See, e.g., Dufau v. Creole Engineering, Inc.,* 465 So. 2d 752 (La. Ct. App. 1985). Further, the determination of

14

what constitutes an unfair trade practice must be decided by the courts on a case-by-case basis, meaning that discovery is needed to determine the exact contours of Defendants' wrongful acts. *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002). Accordingly, Plaintiffs' unfair trade practices claim (Count Eight) is not preempted and should proceed to discovery.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny the Motions to Dismiss.

Respectfully submitted this 30th day of May, 2017.

ARNALL GOLDEN GREGORY LLP

*/s/ Megan P. Mitchell*
Henry M. Perlowski
Georgia Bar No. 572393 (*admitted pro hac vice*)
J. Tucker Barr
Georgia Bar No. 140868 (*admitted pro hac vice*)
Megan P. Mitchell
Georgia Bar No. 916934 (*admitted pro hac vice*)

15

171 17th Street NW
Suite 2100
Atlanta, GA 30363
Telephone: 404-873-8684
Facsimile: 404-873-8685
Email:       henry.perlowski@agg.com
             tucker.barr@agg.com
             megan.mitchell@agg.com

Bradley C. Knapp (#35867)
LOCKE LORD LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana  70130
504-558-5210 Telephone
504-910-6847 Facsimile
bknapp@lockelord.com

*Attorneys for Plaintiffs*

16

10924778

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed via the

Court's CM/ECF system, which will send service copies to all counsel of record.

This 30th day of May, 2017.

/s/ Megan P. Mitchell
_____
Megan P. Mitchell
Georgia Bar No. 916934 (*admitted pro hac vice*)

*Attorney for Plaintiffs*

10924778