UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOURCE PRODUCTION &                          CIVIL ACTION
EQUIPMENT CO., INC., ET AL.

VERSUS                                         NO. 16-17528

KEVIN J. SCHEHR, ISOFLEX USA,                SECTION "R" (1)
ISOFLEX RADIOACTIVE LLC,
RICHARD H. MCKANNAY, JR., AND
JOHN DOES 1-10

## ORDER AND REASONS

Before the Court are defendants' motions to dismiss[1] in part plaintiffs'

first amended complaint.[2]  For the following reasons, the Court grants in part

and denies in part each motion.


## I.    BACKGROUND

Source Production & Equipment Co., Inc. ("SPEC") and its affiliates

bring this trade-secret misappropriation and unfair competition action

against Kevin J. Schehr, Isoflex USA, Isoflex Radioactive LLC, and Richard

McKannay, Jr.[3]  SPEC is a supplier of industrial and medical radiography

---

[1]    R. Docs. 44, 45.
[2]    R. Doc. 33.
[3]    The amended complaint also names 10 "John Does" as defendants.

equipment and radioactive isotope materials.[4]  Schehr is a former executive officer at SPEC.  According to the complaint, Schehr began working for SPEC in 1995 and held various positions at the company until his termination in July of 2016.[5]  Plaintiffs allege that over the course of his employment, Schehr signed several confidentiality agreements regarding SPEC's trade secrets.[6]  These trade secrets include technologies used to manufacture containers for shipping radioactive material.[7]

According to the complaint, Schehr unsuccessfully attempted to acquire an ownership interest in SPEC in 2012 and 2014.[8]  Plaintiffs further allege that Schehr's resentment toward SPEC and its owner, Richard Dicharry, following these attempts prompted Schehr to engage in conduct intended to undermine SPEC and benefit Schehr and others affiliated with Schehr.[9]  To this end, Schehr allegedly made several misrepresentations to Dicharry that he knew to be false, caused SPEC to default on the terms of a sale agreement, negotiated business contracts against Dicharry's wishes, filed for and claimed ownership rights to patents developed using SPEC's

---

[4]     R. Doc. 33 at 8 ¶ 19.
[5]     *Id.* at 14 ¶ 34.
[6]     *Id.* at 15-17 ¶¶ 37-45.
[7]     *Id.* at 11-12 ¶¶ 30-32.
[8]     *Id.* at 17-18 ¶¶ 46-48.
[9]     *Id.* at 18 ¶ 48.

resources, and provided false financial information in order to inflate his personal bonuses, among several other alleged transgressions.[10]

SPEC terminated Schehr's employment on July 10, 2016.[11] Plaintiffs allege that after his termination, Schehr did not immediately return his company-issued laptop, despite SPEC's demand that he do so.[12] Plaintiffs further allege that once the laptop was returned, a forensic analysis revealed that Schehr emailed a number of SPEC's confidential and proprietary files to his personal email accounts.[13] According to plaintiffs, the analysis also showed that minutes after his termination, Schehr attached two external hard drives to the laptop and subsequently deleted 5,086 files from the laptop.[14] Plaintiffs allege that Schehr continues to possess other storage media belonging to SPEC, including thumb drives and CDs.[15]

Finally, plaintiffs allege that both before and after his termination, Schehr conspired with Isoflex USA and McKannay, the managing director of Isoflex USA, to establish Isoflex Radioactive. Plaintiffs allege that in creating Isoflex Radioactive, defendants misappropriated plaintiffs' trade secrets and

---

[10]     *Id.* at 19-33 ¶¶ 50-99.
[11]     *Id.* at 33 ¶ 101.
[12]     *Id.* at 36 ¶ 110.
[13]     *Id.* at 36 ¶ 111.
[14]     *Id.* at 36-37 ¶¶ 111-113.
[15]     *Id.* at 37 ¶ 115.

confidential information.[16]   This misappropriation, according to plaintiffs, will allow Isoflex Radioactive to compete with plaintiffs in the market for radioactive materials.[17]

In their amended complaint, plaintiffs assert against all defendants claims for violations of the federal Defend Trade Secrets Act ("DTSA"), the Louisiana Uniform Trade Secrets Act ("LUTSA"), and the Louisiana Unfair Trade Practices Act ("LUTPA"), as well as for conversion.[18]   Against Schehr individually, plaintiffs assert claims for violation of the Computer Fraud and Abuse Act ("CFAA"), breach of legal duty, breach of contract, and fraud.[19]

Isoflex USA, Isoflex Radioactive, and McKannay now move to dismiss plaintiffs' DTSA, LUTSA, conversion, and LUTPA claims.[20]   Schehr also moves to dismiss plaintiffs' conversion claim.[21]   Plaintiffs filed a consolidated response in opposition,[22] and defendants filed replies.[23]

---

[16]   *Id.* at 2-3 ¶¶ 2-3.
[17]   *Id.* at 25 ¶ 69, 45 ¶ 143.
[18]   *Id.* at 43-50 ¶¶ 136-166, 56-57 ¶¶ 187-194, 59-60 ¶¶ 201-207.
[19]   *Id.* at 50-59 ¶¶ 167-186, 195-200.
[20]   R. Docs. 44, 45.
[21]   R. Doc. 44.
[22]   R. Doc. 46.
[23]   R. Docs. 49, 52.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.*  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 257.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face

of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

## III. DISCUSSION

### A. Failure to State DTSA and LUTSA Claims

#### 1. DTSA

Isoflex USA, Isoflex Radioactive, and McKannay first argue that the amended complaint fails to allege sufficient claims under the DTSA and LUTSA. To state a claim under the DTSA, a plaintiff must allege (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1); *see also RealPage, Inc. v. Enter. Risk Control, LLC*, No. 16-737, 2017 WL 3313729, at *9 (E.D. Tex. Aug. 3, 2017).

The DTSA came into effect on May 11, 2016. *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e), 130 Stat. 376, 381-82. Thus, plaintiffs' DTSA claim covers only misappropriation that occurred after that date. The DTSA's recent effective date also means that few courts have applied the statute to trade secrets claims. But the definitional sections of

the DTSA and Uniform Trade Secrets Act ("UTSA") are very similar. *Compare* 18 U.S.C. §§ 1836, 1839, *with* Uniform Trade Secrets Act § 1 (amended 1985). Moreover, both the House and Senate committee reports suggest that the DTSA largely conforms with state trade secrets law. *See* H. Rep. No. 114-529, at 14 (2016) (noting that the DTSA "is not intended to alter the balance of current trade secret law or alter specific court decisions" on misappropriation); S. Rep. No. 114-220, at 10 (2016) (same). Thus, existing state law on trade secrets informs the Court's application of the DTSA.

As a threshold matter, plaintiffs must allege the existence of a trade secret. A "trade secret" under the DTSA includes scientific and technical information that "the owner thereof has taken reasonable measures to keep . . . secret" and "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

The Court finds that plaintiffs have alleged sufficient facts to show the existence of trade secrets. In their amended complaint, plaintiffs list a number of technologies associated with containers for shipping radioactive materials.[24] These technologies include how to produce specialized

---

insulation material, dimensional tolerances for components of plaintiffs' shipping containers, and methods and processes for producing a selenium alloy.[25]  As manufacturing processes, these technologies are subject to trade secret protection.  *See Phillips v. Frey*, 20 F.3d 623, 628 (5th Cir. 1994) (noting that under Texas law, a "method of manufacturing" is a trade secret if it "give[s] the owner a competitive advantage").  Plaintiffs further assert that they keep these technologies secret by securing their physical facilities and limiting access to their electronic data.[26]  These policies are reasonable measures to maintain secrecy.  *See Reingold v. Swiftships, Inc.*, 126 F.3d 645, 650 (5th Cir. 1997) (holding that plaintiff reasonably maintained secrecy of ship mold by limiting its disclosure to third parties). Finally, plaintiffs assert that maintaining the secrecy of these technologies affords them a competitive advantage.[27]  By misappropriating these technologies, defendants allegedly will be able to compete with plaintiffs without investing the time and resources required to develop the technologies independently.[28] The secrecy of plaintiffs' technologies therefore has independent economic value.  *See id.* (holding that ship mold's secrecy had independent economic

---

[25]     *Id.* at 11-12 ¶¶ 30-32.
[26]     *Id.* at 13 ¶ 33.
[27]     *Id.* at 13 ¶ 32.
[28]     *Id.* at 13 ¶ 32, 25 ¶ 69, 45 ¶ 143.

value because of the time and resources plaintiff expended in constructing it).

The Court further finds that plaintiffs' trade secrets are related to products used in foreign commerce. Specifically, plaintiffs allege that they use their trade secrets to supply radiography equipment and radioactive materials to customers around the world.[29]

Plaintiffs must also allege some form of misappropriation. The statute defines "misappropriation" as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>>
>>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>>
>>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>>
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the

---

[29] *Id.* at 8 ¶ 21.

secrecy of the trade secret or limit the use of the trade
secret; or

(iii) before a material change of the position of the person,
knew or had reason to know that—

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired
by accident or mistake[.]

18 U.S.C. § 1839(5). The statute further defines improper means as including "breach or inducement of a breach of a duty to maintain secrecy." *Id.* § 1839(6)(A).

Defendants first contend that plaintiffs allege only use of trade secrets, not acquisition of trade secrets by improper means.[30] But the amended complaint clearly alleges that Isoflex USA, Isoflex Radioactive, and McKannay both acquired and used plaintiffs' trade secrets.[31] Thus, plaintiffs may sufficiently plead a DTSA claim by alleging plausible facts in support of either the defendants' acquisition or their use of trade secrets.

Defendants next contend that plaintiffs' vague and conclusory allegations do not suffice to show either wrongful acquisition or use.[32] Plaintiffs' sole allegation relating to defendants' use of the trade secrets is that Isoflex USA and Isoflex Radioactive have used these trade secrets to

---

[30] R. Doc. 45-1 at 4-5.
[31] R. Doc. 33 at 45-46 ¶ 146.
[32] R. Doc. 44-1 at 9; R. Doc. 45-1 at 6.

compete unfairly against plaintiffs.[33]  This conclusory allegation is no more than a formulaic recitation of an element of plaintiffs' DTSA claim.  *See Twombly*, 550 U.S. at 555.  Accordingly, plaintiffs have failed to allege sufficient facts in support of defendants' use of trade secrets.

Nevertheless, the Court finds that plaintiffs have alleged sufficient facts to support a plausible claim of misappropriation by wrongful acquisition. The essence of plaintiffs' wrongful acquisition allegation is that Schehr improperly conveyed trade secrets to SPEC's competitors, which accepted these secrets knowing that Schehr is a former employee of SPEC.  Courts have found that competitors' acquisition of trade secrets in similar factual scenarios constitutes misappropriation. *See, e.g.*, *In re TXCO Res., Inc.*, 475 B.R. 781, 818-20 (Bankr. W.D. Tex. 2012) (finding that defendant improperly discovered trade secrets by accepting competitor's confidential information from an individual it knew to be competitor's former employee); *Uncle B's Bakery, Inc. v. O'Rourke*, 920 F. Supp. 1405, 1429, 1441 (N.D. Iowa 1996) (enjoining defendant from acquiring competitor's trade secrets from competitor's former employee); *PepsiCo, Inc. v. Redmond*, No. 94-6838, 1996 WL 3965, at *1 (N.D. Ill. Jan. 2, 1996) (same). Likewise, the

---

[33]  R. Doc. 33 at 39-40 ¶ 124.

Restatement (Third) of Unfair Competition illustrates acquisition by improper means using the following facts:

> *A*, a large manufacturing company, employs *B* as an engineer. Angered by a termination of the employment, *B* makes unauthorized photocopies of engineering drawings depicting trade secrets used in the machines that manufacture *A*'s most successful product. *B* offers to provide the photocopies to *C*, a competing manufacturer. *C* accepts the photocopies from *B* with knowledge that *B* is a former employee of *A*. *C* has acquired *A*'s trade secrets by improper means.

Restatement (Third) of Unfair Competition § 43 cmt. B, illus. 4 (Am. Law. Inst. 1995). The Court therefore finds that defendants' conduct, as alleged by plaintiffs, qualifies as misappropriation by acquisition under the DTSA.

Furthermore, ample factual content in the amended complaint supports plaintiffs' misappropriation allegation. Plaintiffs assert that Schehr copied trade secrets from his company-issued laptop onto external hard drives shortly after his termination.[34] They also allege that Schehr emailed confidential and proprietary files on SPEC's computer network to his personal email account.[35] According to plaintiffs, a forensic analysis conducted after Schehr's termination supports these assertions.[36]

---

[34]   *Id.* at 37 ¶ 114.
[35]   *Id.* at 36 ¶ 111.
[36]   *Id.*

12

Plaintiffs further allege that Isoflex USA employed or engaged Schehr following Schehr's termination.[37] Schehr then allegedly conspired with Isoflex USA and McKannay to form Isoflex Radioactive.[38] Through Isoflex Radioactive, defendants allegedly plan to compete with plaintiffs by building shipping containers for radioactive materials using plaintiffs' technology.[39] According to plaintiffs, Isoflex Radioactive has even advertised itself as "a manufacturer and supplier of radiographic NDT equipment and replacement sources."[40]

In response to these allegations, Isoflex USA and McKannay insist that they have neither employed nor engaged Schehr.[41] At the motion to dismiss stage, however, the Court must accept plaintiffs' allegations as true. *See Lormand*, 565 F.3d at 244. Moreover, plaintiffs present several facts connecting Schehr with Isoflex USA and McKannay: Schehr talked with McKannay in person in June 2016 shortly before his termination; Schehr called McKanny shortly after Schehr's termination; and Schehr has an Isoflex email address.[42]

---

[37]    *Id.* at 2 ¶ 1.
[38]    *Id.* at 2 ¶ 1.
[39]    *Id.* at 25 ¶ 69, 45 ¶ 143.
[40]    *Id.* at 39 ¶ 123.
[41]    R. Doc. 45-1 at 6.
[42]    R. Doc. 33 at 27 ¶ 75, 35 ¶ 108, 39 ¶ 123.

Isoflex USA and McKannay next argue that even if they did employ Schehr, plaintiffs' claim would still fail.[43]  Defendants cite *Bayco Products, Inc. v. Lynch*, 10-1820, 2011 WL 1602571, at *5 (N.D. Tex. Apr. 28, 2011), where the plaintiff merely alleged "that a former employee entered the employment of a competitor."  The court held that under Texas law, this fact "does not of itself support a plausible claim that the employee shared proprietary information."  *Id.*  Here, plaintiffs allege more than Schehr's employment by Isoflex USA; plaintiffs allege a concerted attempt to compete with plaintiffs using plaintiffs' own trade secrets.

Taken together, the facts alleged in the amended complaint allow the Court to draw the reasonable inference that Isoflex USA, Isoflex Radioactive, and McKannay acquired trade secrets that they knew or had reason to know were "acquired by improper means."  18 U.S.C. § 1839(5)(A); *Iqbal*, 556 U.S. at 678.  Accordingly, plaintiffs allege a plausible claim for trade secret misappropriation under the DTSA.

### 2.    LUTSA

LUTSA provides for injunctive relief against "[a]ctual or threatened misappropriation" of trade secrets.  La. Rev. Stat. § 51:1432(A).  LUTSA also permits a complainant to recover damages for actual loss caused by the

---

[43]    R. Doc. 45-1 at 6.

misappropriation of a trade secret. *See* La. Rev. Stat. § 51:1433. In order to recover damages under LUTSA, a complainant must prove (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) actual loss caused by the misappropriation. *See id.*; *Comput. Mgmt. Assis. Co. v. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000).

The definition of "trade secret" provided by LUTSA is essentially identical to that provided by the DTSA. *Compare* La. Rev. Stat. § 51:1431(4), *with* 18 U.S.C. § 1839(3). Manufacturing methods and processes are generally protectable under LUTSA, as they are under the DTSA. *See* La. Rev. Stat. § 51:1431(4). Additionally, under LUTSA plaintiffs exerted reasonable effort to keep their technologies secret. *See* La. Rev. Stat. § 51:1431 cmt. f ("Reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on a 'need to know basis,' and controlling plant access."). Finally, the secrecy of these technologies has independent economic value under LUTSA because of the resources plaintiffs expended on their development. *See Reingold*, 126 F.3d at 650.

LUTSA also defines "misappropriation" in the same way as does the DTSA. *Compare* La. Rev. Stat. § 51:1431(2), *with* 18 U.S.C. § 1839(5). No Louisiana case law addresses the exact scenario in this case, where plaintiffs'

competitors allegedly acquired but did not use trade secrets from plaintiffs' ex-employee. But one Louisiana appellate court did address a similar situation in *South East Auto Dealers Rental Ass'n, Inc. v. EZ Rent To Own, Inc.*, 980 So. 2d 89 (La. App. 4 Cir. 2008). There, the plaintiff sought an injunction to prevent a former client from disclosing trade secrets to a competitor. *Id.* at 99-100. The court held that the plaintiff was entitled "to protection from misappropriation of its trade secrets," because the defendant was "operating in conjunction with Rent T Own, [plaintiff's] competitor, who could potentially acquire [plaintiff's] trade secrets." *Id.* at 101. Based on *South East Auto Dealers*, as well as the UTSA case law cited earlier, the Court finds that defendants' acquisition of trade secrets qualifies as misappropriation under LUTSA. Accordingly, plaintiffs allege a plausible claim for trade secret misappropriation under LUTSA.

## A.   Preemption of Conversion and LUTPA Claims

### 1.   *Conversion*

Defendants next argue that plaintiffs' conversion and LUTPA claims are preempted by LUTSA. LUTSA "displaces conflicting tort, restitutionary, and other laws of this state pertaining to civil liability for misappropriation of a trade secret." La. Rev. Stat. § 51:1437(A); *see also Reingold v. Swiftships, Inc.*, 210 F.3d 320, 322 (5th Cir. 2000). Nevertheless, LUTSA is not a

comprehensive remedy and "does not apply to duties imposed by law that are not dependent upon the existence of a trade secret." *Defcon, Inc. v. Webb*, 687 So. 2d 639, 643 (La. App. 2 Cir. 1997) (citing La. Rev. Stat. § 51:1437 cmt.); *see also* La. Rev. Stat. § 51:1437(B) ("This Chapter does not affect: . . . contractual or other civil liability or relief that is not based upon misappropriation of a trade secret.").

Although Louisiana courts have not interpreted the extent of LUTSA's preemption provision, federal courts have addressed this provision, as well as nearly identical provisions adopted by other states. *See, e.g.*, *Reingold*, 210 F.3d at 322; *Brand Servs., LLC v. Irex Corp.*, No. 15-5712, 2017 WL 3024245, at *2 (E.D. La. July 17, 2017). Generally, these courts have found that a claim is not preempted as long as it is not based on trade secret misappropriation. *See Reingold*, 210 F.3d at 322; *Brand Servs.*, 2017 WL 3024245, at *2; *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.,* No. 14-847, 2016 WL 900577, at *6 (W.D. Tex. Mar. 2, 2016). Thus, whether LUTSA preempts plaintiffs' conversion claim depends on whether this claim alleges the conversion only of trade secrets.

The Court finds that LUTSA preempts plaintiffs' conversion claim against Isoflex USA, Isoflex Radioactive, and McKannay. Plaintiffs allege that these defendants wrongfully possess plaintiffs' confidential and

proprietary information.[44]    This allegation falls into the heartland of misappropriation covered by LUTSA.  *See Brand Servs.*, 2017 WL 3024245, at *2.  The amended complaint contains no suggestion that these defendants possess any other property belonging to plaintiffs, or infringed legal duties not dependent on the existence of a trade secret.  Because LUTSA preempts plaintiffs' conversion claim against Isoflex USA, Isoflex Radioactive, and McKannay, this claim must be dismissed.

Whether LUTSA preempts plaintiffs' conversion claim against Schehr, on the other hand, is a closer question.  Plaintiffs contend that Schehr converted physical property, including thumb drives and CDs.[45]   Some federal courts have found that the UTSA does not preempt conversion claims for physical property.  *See Lifesize, Inc. v. Chimene*, No. 16-1109, 2017 WL 1532609, at *12-13 (W.D. Tex. Apr. 26, 2017) (conversion claim for laptop not preempted to extent claim seeks recovery for value of property itself); *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474-75 (D. Colo. 1996) ("Because plaintiff's claim also seeks recovery of the physical items stolen, including blueprints and drawings, which would not be the subject of a misappropriation claim under the UTSA, plaintiff's conversion claim is not

---

[44]    R. Doc. 33 at 57 ¶ 192.
[45]    *Id.* at 37-38 ¶¶ 115-16, 56 ¶ 190; R. Doc. 46 at 12-13.

entirely preempted."). Other courts have found preemption because the "value" of physical property containing trade secrets (including computers and CDs) is derived primarily from the information contained within it. *See Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 661 (E.D. Tenn. 2004) (finding conversion claim for physical items preempted because "the physical property [allegedly] stolen derived its primary, if not entire, value from the trade secrets contained therein"); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 922 (N.D. Ill 2001) (conversion claim preempted because although physical items "exist in tangible form, their value is primarily from the information contained within that form").

The Court finds that LUTSA does not preempt plaintiffs' conversion claim against Schehr to the extent plaintiffs seek to recover physical property or its value. Louisiana law imposes no *de minimis* bar on damages claims. *See Sonnier v. U.S. Cas. Co.*, 165 So. 2d 3, 5 (La. 1964) ("The common law doctrine of '*de minimis non curat lex*' is not embodied in the corpus of the law of this state . . . ."); *see also Bauer v. Dean Morris, L.L.P.*, No. 08-5013, 2011 WL 1303814, at *7-8 (E.D. La. Mar. 30, 2011) (citing *Sonnier* for this proposition). Even if the thumb drives and CDs at issue derive their value primarily from the information contained within them, they clearly have some value beyond that information. Plaintiffs do not lose their right to

recover that value simply because the physical items also contain trade secrets. Accordingly, to the extent plaintiffs seek to recover the physical value of their thumb drives and CDs from Schehr, their conversion claim is not preempted. *See Lifesize, Inc*, 2017 WL 1532609, at *13. To the extent plaintiffs seek to recover the value of the trade secrets contained within this physical property, their conversion claim is preempted.

### 2. LUTPA

Defendants also move to dismiss plaintiffs' LUTPA claim as preempted by LUTSA. The Fifth Circuit has explicitly rejected this preemption argument. *See Comput. Mgmt. Assis.*, 220 F.3d at 405 (finding that LUTSA did not preempt plaintiff's LUTPA claim because LUTSA and LUTPA "provide parallel remedies for similar conduct"). Furthermore, Louisiana state courts recognize that the same challenged conduct can give rise to both LUTSA and LUTPA claims. *See Bihm v. Deca Sys., Inc.*, No. 2016-0356, 2017 WL 3405176, at *9 (La. App. 1 Cir. Aug. 8, 2017) ("[C]laims of violations under both acts are frequently pled and tried together . . . ."). The Court therefore finds that LUTSA does not preempt plaintiffs' LUTPA claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss with respect to plaintiffs' conversion claim against Isoflex USA, Isoflex Radioactive, and McKannay, as well as plaintiffs' conversion claim against Schehr to the extent plaintiffs seek to recover the value of their trade secrets. The Court otherwise DENIES defendants' motions to dismiss. The Court DISMISSES WITH PREJUDICE plaintiffs' conversion claim against Isoflex USA, Isoflex Radioactive, and McKannay, as well as plaintiffs' conversion claim against Schehr to the extent plaintiffs seek to recover the value of their trade secrets.

New Orleans, Louisiana, this __29th__ day of August, 2017

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE