UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOURCE PRODUCTION &                                CIVIL ACTION
EQUIPMENT CO., INC., ET AL.

VERSUS                                             NO. 16-17528

KEVIN J. SCHEHR, ISOFLEX USA,                      SECTION "R" (1)
ISOFLEX RADIOACTIVE LLC,
RICHARD H. McKANNAY, JR., AND
JOHN DOES 1-10

## ORDER AND REASONS

Plaintiff Source Production & Equipment Co., Inc. and counterclaim-defendants Richard Dicharry and Sandra Kusy each move to dismiss defendant Kevin Schehr's counterclaims.[1]  For the following reasons, the Court grants in part and denies in part the motions.


I.      BACKGROUND

Source Production & Equipment Co., Inc. (SPEC) and its affiliates brought this trade-secret misappropriation and unfair competition action against Kevin Schehr, Isoflex USA, Isoflex Radioactive LLC, and Richard

---

[1]      R. Docs. 76, 82, 86, 87.

McKannay, Jr.[2]  SPEC is a supplier of industrial and medical radiography equipment and radioactive isotope materials.[3]  Richard Dicharry is SPEC's president and owner.[4]  Schehr was an executive officer of SPEC until July 7, 2016, when he was replaced by Sandra Kusy.[5]  Three days later, on July 10, Schehr was terminated.[6]

Schehr's relationship with Dicharry and SPEC deteriorated during the months leading up to Schehr's termination.  For example, according to Schehr, Dicharry had promised to give him a 10% ownership interest in SPEC if Schehr facilitated the completion of the design of a new radiography system (Radiography Contract).[7]  Schehr alleges that the design was completed, but that two weeks before Schehr's termination Dicharry unreasonably refused to sign off on the new design.[8]  SPEC and Dicharry also allegedly agreed to form a new company with Schehr and Dennis Chedraui (NEWCO Agreement).[9]  Although the parties to the agreement allegedly

---

[2]    R. Doc. 33.  A more in-depth discussion of the facts underlying plaintiffs' complaint can be found in the Court's order dated August 29, 2017.  *See* R. Doc. 53.
[3]    R. Doc. 33 at 8 ¶ 19.
[4]    R. Doc. 61 at 14 ¶ 68.
[5]    *Id.* at 2 ¶¶ 6-7.
[6]    *Id.*
[7]    *Id.* at 15 ¶ 73.
[8]    *Id.* at 16 ¶ 77.
[9]    *Id.* at 17 ¶ 82.

signed a letter of intent, and Dicharry and SPEC verbally obligated themselves to the terms of the NEWCO Agreement, Schehr asserts that Dicharry and SPEC failed to fulfill their obligations under the agreement.[10] According to Schehr, Kusy caused Dicharry and SPEC to breach these contracts by providing Dicharry with false information about a conference Schehr attended and a conspiracy between Schehr and Chedraui.[11]

Schehr alleges that upon his termination, SPEC seized a thumb drive and pictures belonging to him.[12] SPEC allegedly obtained the password for Schehr's personal email account from this thumb drive and accessed the account on November 10, 2016.[13] Schehr further alleges that Dicharry and Kusy both made defamatory statements about Schehr after his termination.[14]

Plaintiffs filed suit on December 12, 2016,[15] and filed an amended complaint on April 4, 2017.[16] The Court granted in part and denied in part defendants' motion to dismiss on August 29.[17] On September 12, Schehr answered the amended complaint and filed counterclaims against SPEC.[18]

---

[10]   *Id.* at 18 ¶¶ 87-88.
[11]   R. Doc. 66 at 5 ¶¶ 17, 20.
[12]   R. Doc. 61 at 13 ¶ 62.
[13]   *Id.* at 10-11 ¶¶ 45-54.
[14]   *Id.* at 4-9.
[15]   R. Doc. 1.
[16]   R. Doc. 33.
[17]   R. Doc. 53.
[18]   R. Docs. 60-61.

Schehr then amended his counterclaims to add Dicharry, Kusy, and unknown insurers of SPEC as counterclaim-defendants.[19]  Schehr asserts counterclaims for defamation, invasion of privacy, and revendicatory relief against all counterclaim-defendants; breach of contract or detrimental reliance against SPEC, Dicharry, and the insurers; unpaid wages against SPEC and the insurers; and intentional interference with a contract against Kusy.  SPEC, Dicharry, and Kusy now move to dismiss certain counterclaims.[20]

## II.    LEGAL STANDARD

The Court applies the same test to a motion to dismiss a counterclaim as it does to a motion to dismiss a complaint.  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  A court must accept all well-pleaded

---

[19]     R. Doc. 66.
[20]     R. Docs. 76, 82, 86, 87.

4

facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

## III. DISCUSSION

SPEC, Dicharry, and Kusy move to dismiss Schehr's counterclaims for defamation and invasion of privacy. Dicharry and Kusy move to dismiss the

counterclaim for revendicatory relief. SPEC and Dicharry move to dismiss the counterclaim for breach of contract or detrimental reliance. Finally, Kusy moves to dismiss the counterclaim for intentional interference with a contract. The Court addresses each counterclaim in turn.

## A. Defamation

Under Louisiana law, "[i]n order to prevail in a defamation action, a plaintiff must necessarily prove four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Fitzgerald v. Tucker*, 737 So. 2d 706, 715 (La. 1999). "In other words, a plaintiff must prove 'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'" *Id.* (quoting *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997)).

Schehr's defamation claim alleges three sets of defamatory statements. First, Kusy and Dicharry, acting in their capacity as SPEC employees, allegedly defamed Schehr to other SPEC employees.[21] Second, Kusy and Dicharry, again acting in their capacity as SPEC employees, allegedly made defamatory statements about Schehr to Keith Frazier, a former SPEC

---

[21]     R. Doc. 61 at 4-6 ¶¶16-26.

employee.[22]  Third, Dicharry authorized SPEC to file letters with regulatory agencies concerning violations of environmental regulations; according to Schehr, these letters falsely asserted that Schehr was responsible for these violations.[23]

SPEC, Dicharry, and Kusy first argue that the allegedly defamatory statements made to other SPEC employees do not satisfy the publication requirement under Louisiana law.  Louisiana appellate courts have held that "an intra-corporate communication among officers or agents of the same corporation, in connection with their duties for the corporation, are a communication of the corporation," not a publication to a third party. *Wisner v. Harvey*, 694 So. 2d 348, 350 (La. App. 1 Cir. 1996) (citing *Commercial Union Ins. Co. v. Melikyan*, 424 So. 2d 1114, 1115 (La. App. 1 Cir. 1982)); *accord Doe v. Grant*, 839 So. 2d 408, 416 (La. App. 4 Cir. 2003); *Bell v. Rogers*, 698 So. 2d 749, 756 (La. App. 2 Cir. 1997).  This intra-corporate communication rule is based on *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196 (La. 1980).  The plaintiff in *Cangelosi*, who was a cashier, alleged that her supervisors falsely accused her of altering a check.  *Id.* at 197.  This accusation took place during a meeting with the

---

[22]  *Id.* at 4 ¶ 17, 6 ¶ 27.
[23]  *Id.* at 6-8 ¶¶ 28-37.

plaintiff's supervisors. *Id.* Because the only people present were the plaintiff and "supervisory personnel essential to the investigation," the Louisiana Supreme Court held that statements made by these supervisors during the meeting were not published to a third party. *Id.* at 198.

Schehr argues that *Cangelosi* limits the intra-corporate communication rule to statements made by supervisors to other supervisors.[24] According to Schehr, Kusy defamed Schehr at two company-wide meetings—not just among other officers. Thus, Schehr argues that the intra-corporate communication rule does not apply. Because state law provides the rule of decision for this counterclaim, the Court must apply the law as interpreted by the state's highest court. *See FDIC v. Abraham*, 137 F.3d 264, 267-68 (5th Cir. 1998). When there is no ruling by the state's highest court, a federal court must make an *Erie* guess as to how the state's highest court would decide the issue. *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 468 (5th Cir. 2004).

Based on the state appellate court cases cited earlier, the Court finds that the Louisiana Supreme Court would not limit the intra-corporate communication rule to statements made by supervisors to other supervisors. Federal courts in this Circuit are in accord. In an unpublished decision, the

---

[24] R. Doc. 81 at 9.

Fifth Circuit noted that "an intra-corporate communication among employees within the course and scope of their employment" does not satisfy the publication requirement. *Ioppolo v. Rumana*, 581 F. App'x 321, 329 (5th Cir. 2014). The court applied the intra-corporate communication rule to a professional organization's distribution of a professional misconduct report to its entire membership—not just the organization's leadership. *Id.* District courts in this Circuit have also applied the intra-corporate communication rule to statements made to non-supervisors within an organization. *See, e.g.*, *Walter v. BP Am., Inc.*, No. 12-177, 2014 WL 1796676, at *34 (E.D. La. May 6, 2014) ("[A]ny statements exchanged between BP employees during the two investigations of plaintiff's conduct and in conjunction with the termination of his employment are intracorporate communications, which do not constitute publication to a third party under Louisiana defamation law."); *Marshall v. Circle K Corp.*, 715 F. Supp. 1341, 1343 n.2 (M.D. La. 1989) (granting summary judgment to defendant because there was "no evidence in the record to indicate that the [allegedly defamatory statement] was circulated outside the defendant corporation"). Indeed, Schehr does not point to any court that has adopted its proposed limitation on the scope of *Cangelosi*.

The Court finds that, based on the intra-corporate communication rule, Schehr has not alleged publication of Dicharry's and Kusy's allegedly defamatory statements to other SPEC employees. Kusy allegedly defamed Schehr by telling SPEC employees at companywide meetings that SPEC would not give Christmas bonuses in 2016 because of Schehr's embezzlement.[25] Dicharry's allegedly defamatory statement to other SPEC employees consisted of an accusation that Schehr sabotaged a package.[26] By Schehr's own allegations, these statements "were made within the course and scope of their duties as employees of SPEC."[27] Such communications do not constitute publication to a third party. *See Wisner*, 694 So. 2d at 350. Thus, Schehr fails to state a defamation claim based on statements made by Dicharry and Kusy to other SPEC employees.

Regarding the second set of allegedly defamatory statements, SPEC and Dicharry do not contest that Schehr states a claim for defamation based on statements made to Frazier, a former SPEC employee.[28] Kusy fails to address this basis for defamation, apparently assuming that it does not apply

---

[25] R. Doc. 61 at 4 ¶¶ 16, 18.
[26] *Id.* ¶ 17.
[27] R. Doc. 8 at ¶ 39.
[28] R. Doc. 76-1 at 8 n.2; R. Doc. 86-1 at 9 n.2.

to her.[29]  Schehr's counterclaim does state that Kusy (and Dicharry) told Frazier in the fall of 2016 that Schehr had sabotaged a package.[30]  The paragraph in which this allegation appears does not state that Frazier was a *former* employee.  But a later paragraph, involving allegedly defamatory statements made by Dicharry (but not Kusy) to Frazier, does state that Frazier was a former SPEC employee.[31]  Frazier may have left SPEC between when these allegedly defamatory statements were made.  But at the motion to dismiss stage, Schehr is entitled the benefit of a doubt, and the Court must draw all reasonable inferences in his favor.  The Court finds it reasonable to infer that Frazier was a former employee at both times when Dicharry and Kusy made allegedly defamatory statements to him.  Indeed, both sets of statements necessarily were made after Schehr's termination in July 2016.  Thus, Schehr states a claim for defamation against SPEC, Dicharry, and Kusy based on statements made to Frazier.

Regarding the third set of allegedly defamatory statements, SPEC and Dicharry argue that SPEC's letters to regulatory agencies are conditionally

---

[29]  Kusy states: "Schehr's counterclaim for defamation against Ms. Kusy relies solely upon statements made by Ms. Kusy to SPEC employees . . . ."  R. Doc. 87-1 at 5.

[30]  R. Doc. 61 at 4 ¶ 17.

[31]  *Id.* at 6 ¶ 27.  According to Schehr, Dicharry defamed him by attributing his termination to theft and embezzlement from SPEC.  *Id.* at 5 ¶ 20.

privileged.[32]   Under Louisiana law, "privilege is a defense to a defamation action."  *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 681 (La. 2006).  As such, dismissal of the counterclaim is appropriate only if the conditional privilege "appears clearly on the face of the pleadings."  *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  The doctrine derives from the policy consideration "that sometimes, . . . in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory information to others without incurring liability."  *Id.*  Louisiana courts engage in a two-step process to determine whether a conditional privilege exists.  *Id.* at 682.  "First, it must be determined whether the attending circumstances of a communication occasion a qualified privilege.  The second step of the analysis is a determination of whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be examined."  *Id.* (citation omitted).   SPEC and Dicharry point to a conditional privilege for "statement[s] to a state agency with a legitimate interest in the subject matter [that are] relevant to the subject matter of the [agency's] inquiry."  *Fisher v. ASI Fed. Credit Union*, 223 So. 3d 779, 784 (La. App. 5 Cir. 2017).  Similarly, the Louisiana Supreme Court has recognized a conditional privilege for

---

[32]     R. Doc. 76-1 at 5; R. Doc. 86-1 at 6.

"communications of alleged wrongful acts to the officials authorized to protect the public from such acts." *Kennedy*, 935 So. 2d at 683.

The Court finds that this conditional privilege does not so clearly apply to SPEC's allegedly defamatory letters to regulatory agencies as to justify dismissal under Rule 12(b)(6). Notifying the Nuclear Regulatory Commission and the Louisiana Department of Environmental Quality of noncompliance with environmental regulations would seem to be conditionally privileged under Louisiana law; such notification would be reasonably necessary to protect the environment and the public.

But Schehr alleges that Dicharry told the agencies that Schehr deliberately ordered violations of a used radiography source import regulation.[33] Schehr alleges both the falsity of this statement and Dicharry's and SPEC's knowledge, or reckless disregard, of its falsity.[34] Specifically, Schehr alleges that Dicharry himself, not Schehr, was responsible for ensuring compliance with environmental regulations.[35] This factual content does not necessarily establish knowledge, or reckless disregard, of the statement's falsity. But it does support the plausible inference that if the statement in the letters were untrue, then because of Dicharry's

---

[33]     R. Doc. 61 at 6-7 ¶ 29.
[34]     *Id.* at 7 ¶ 32.
[35]     *Id.* ¶¶ 30-31.

responsibilities, Dicharry and SPEC either knew the statement was untrue or they were in reckless disregard of its falsity. Thus, Schehr's allegations support a plausible inference that the allegedly defamatory statements in SPEC's letters to regulatory agencies were made in bad faith, and no conditional privilege clearly appears on the face of the counterclaim. Schehr states a claim for defamation against SPEC and Dicharry based on allegedly defamatory statements made in SPEC's letters to regulatory agencies.

## B. Invasion of Privacy

Schehr's invasion of privacy counterclaim alleges that a SPEC employee accessed Schehr's private email account without his permission on November 10, 2016.[36] Schehr asserts violations of both Louisiana common law and the Louisiana Personal Online Account Privacy Protection Act, La. R.S. § 51:1951 *et seq.*[37]

Dicharry and Kusy argue that the common law invasion of privacy counterclaim against them should be dismissed because their alleged involvement in accessing Schehr's email account is speculative.[38] Schehr alleges that his email account was accessed "on a computer on SPEC's

---

[36]    *Id.* at 10-11 ¶¶ 45-54.
[37]    *Id.* at 9 ¶ 44.
[38]    R. Doc. 86-1 at 11 n.3; R. Doc. 87-1 at 7 n.1. SPEC does not seek to dismiss Schehr's common law invasion of privacy counterclaim. R. Doc. 76-1 at 9 n.2.

premises by a SPEC employee, including but not limited to Mr. Dicharry and/or Ms. Kusy."[39]  Given Dicharry's and Kusy's leadership roles in SPEC, and their alleged relationship with Schehr, it is not speculative to infer that one or both of them accessed Schehr's email account from SPEC's offices. Moreover, the case cited by Dicharry and Kusy—*Christensen v. WMA Consumer Services, Inc.*, No. 03-1545, 2003 WL 22174240 (E.D. La. Sept. 5, 2003)—concerned heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  Thus, the Court will not dismiss Schehr's common law invasion of privacy counterclaim against SPEC, Dicharry, and Kusy.

SPEC, Dicharry, and Kusy next argue that Schehr fails to state a claim for statutory invasion of privacy because the Personal Online Account Privacy Protection Act applies only to employers and educational institutions.[40]  While the Act clearly applies only to employers and educational institutions, *see* La. R.S. §§ 15:1953-54, Schehr argues that the Act provides continuing protection to employees even after their termination.[41]  Schehr's argument lacks support in the statutory text.  The Act prohibits employers from accessing the personal online account of an employee or applicant for employment under certain circumstances.  *Id.* §

---

[39]    R. Doc. 61 at 11 ¶ 54.
[40]    R. Doc. 76-1 at 8; R. Doc. 86-1 at 10; R. Doc. 87-1 at 7.
[41]    R. Doc. 81 at 10.

15:1953.  But the Act does not mention former employees.  To the contrary, one part of the Act's definition of "personal online account" explicitly refers to accounts made "by a *current* employee, applicant for employment," or others covered by the Act (namely, students).  *Id.* § 15:1592(4) (emphasis added).[42]  Because Schehr was not an employee of SPEC in November 2016 when his email account allegedly was accessed without his permission, he fails to state a claim under the Personal Online Account Privacy Protection Act.

## C.    Revendicatory Relief

Under Louisiana law, "[t]he owner of a thing is entitled to recover it from anyone who possesses or detains it without right" by means of a revendicatory action.  La. Civ. Code art. 526 & cmt.  An owner can seek to

---

[42]    In full, this definition reads:
  "Personal online account" means an online account that the employee, applicant for employment, student, or prospective student uses exclusively for personal communications unrelated to any business purpose of the employer or educational institution.  A personal online account does not extend to any account or profile created, serviced, maintained, used, or accessed by a current employee, applicant for employment, student, or prospective student for either business purposes of the employer or educational institution or to engage in business-related communications.
La. R.S. § 15:1592(4).

recover property only from those who possess it.  *See Gibbs v. Harris*, 799 So. 2d 665, 670 (La. App. 2 Cir. 2001).

Schehr's counterclaim for revendicatory relief asserts that SPEC seized and continues to possess a thumb drive and pictures belonging to Schehr.[43] As with Schehr's invasion of privacy counterclaim, Dicharry and Kusy argue that the counterclaim for revendicatory relief lacks specific allegations against them.[44]  Indeed, Schehr does not allege that either Dicharry or Kusy currently possesses his thumb drive and pictures.  Schehr merely alleges that "SPEC and its agents and/or employees continue to improperly detain and possess" these things.[45]  This allegation does not even name Dicharry and Kusy, and fails to state a claim for revendicatory relief against them.  Thus, Schehr's counterclaim for revendicatory relief against Dicharry and Kusy must be dismissed.

### D.    Breach of Contract and Detrimental Reliance

To state a claim for breach of contract under Louisiana law, a plaintiff must allege "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to

---

[43]    R. Doc. 61 at 13 ¶¶ 60-64.
[44]    R. Doc. 86-1 at 11; R. Doc. 87-1 at 8.  SPEC does not seek to dismiss Schehr's counterclaim for revendicatory relief.
[45]    R. Doc. 61 at 13 ¶ 63.

perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 4 Cir. 2011). To state a claim for detrimental reliance, a party must allege: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005). The doctrine is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Id.* But claims of detrimental reliance are "not favored in Louisiana," and "must be examined carefully and strictly." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir. 2007).

Schehr alleges three instances of breach of contract or detrimental reliance. First, Schehr alleges that Dicharry did not give Schehr a 10% ownership interest in SPEC as required under the Radiography Contract.[46] Second, Schehr alleges that Dicharry and SPEC did not fulfill their obligations under the NEWCO Agreement.[47] Third, Dicharry allegedly promised to name Schehr as a beneficiary in his will, which led Schehr to choose not to take over his father's business.[48]

---

[46]      *Id.* at 15-16 ¶¶ 73-80.
[47]      *Id.* at 17-18 ¶¶ 82-88.
[48]      *Id.* at 18 ¶ 90.

Schehr's allegations regarding the Radiography Contract make out a claim for breach of contract, but not detrimental reliance. According to Schehr, Dicharry promised to give him a 10% ownership interest in SPEC in exchange for Schehr's facilitating the design of a new radiography system.[49] Schehr alleges that the design team completed a prototype of the new system, but Dicharry unreasonably refused to sign off on it at a meeting two weeks before Schehr's termination, and refused to give Schehr the promised ownership interest.[50] These facts suffice to support the inference that Dicharry breached an obligation to Schehr. *See Knecht v. Bd. of Trs. for State Colls. & Univs. & Nw. State Univ.*, 591 So. 2d 690, 695 (La. 1991) (approving of the principle "that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit").

SPEC and Dicharry's arguments to the contrary are meritless. First, they argue that Schehr fails to establish the completion of the new radiography system, noting that the design team completed only a prototype.[51] But it is not Schehr's burden at the motion to dismiss stage to

---

[49]    *Id.* at 15 ¶ 73.
[50]    *Id.* ¶¶ 77, 80.
[51]    R. Doc. 76-1 at 10; R. Doc. 86-1 at 16.

establish the fulfillment of his obligation under the Radiography Contract. It is enough to allege, as he does, that he did in fact facilitate the completion of the design of the new radiography system. Second, SPEC and Dicharry argue that Schehr fails to show how Dicharry breached the Radiography Contract, and which provision of the contract Dicharry breached.[52] But Schehr clearly alleges that Dicharry breached a key term of the contract by not giving him a 10% ownership interest in SPEC. Thus, Schehr states a claim for breach of contract based on the Radiography Contract.

Schehr does not allege that he changed his position because of the Radiography Contract. For this reason, Dicharry's alleged breach of this contract does not give rise to a detrimental reliance claim.

Schehr's allegations regarding the NEWCO Agreement do not state a claim for either breach of contract or detrimental reliance. While Schehr does allege that Dicharry and SPEC verbally obligated themselves to the terms of the NEWCO Agreement,[53] Schehr does not allege how Dicharry and SPEC then breached the agreement. The vague assertion that "Mr. Dicharry and SPEC have failed to fulfill their obligations under . . . the NEWCO Agreement"[54] does not raise a right to relief for breach of contract above the

---

[52]   R. Doc. 76-1 at 12; R. Doc. 86-1 at 17.
[53]   R. Doc. 61 at 18 ¶ 87.
[54]   *Id.* ¶ 88.

speculative level. *See Twombly*, 550 U.S. at 555. Schehr also fails to allege that he changed his position because of the NEWCO Agreement, and therefore fails to make out a detrimental reliance claim on this basis.

Finally, Schehr's allegations regarding Dicharry's promise to name him a beneficiary in his will do not state a claim for either breach of contract or detrimental reliance. Under Louisiana law, contracts regarding a living person's succession are not enforceable. *See* La. Civ. Code art. 1976 ("The succession of a living person may not be the object of a contract other than an antenuptial agreement."). A Louisiana court of appeal has held that because a claimant may not rely on a written contract regarding another's succession, the claimant "certainly is not justified in relying on only her oral promise." *Kibbe v. Lege*, 604 So. 2d 1366, 1371 (La. App. 3 Cir. 1992). Thus, even if Schehr did rely to his detriment on Dicharry's promise to name him a beneficiary in his will, this reliance was not justified. *See id.*

In sum, the only valid basis for Schehr's breach of contract claim is SPEC's and Dicharry's alleged breach of the Radiography Contract. Schehr does not state a valid claim for detrimental reliance on any basis.

### E.    Intentional Interference with a Contract

Schehr's counterclaim for intentional interference with a contract asserts that Kusy interfered with Schehr's employment contract with SPEC,

the Radiography Contract, and the NEWCO Agreement.[55]  Louisiana law recognizes a narrow cause of action for intentional interference with a contract.  In *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989), the Louisiana Supreme Court held that an action for tortious interference with a contract could be maintained against a corporate officer if a plaintiff had a contract or legally protected interest with the officer's corporation, the officer knew of the contract, and the officer intentionally and without justification caused the corporation to breach the contract and damage the plaintiff.  *Id.* at 234.  Louisiana courts have not expanded the limited scope of *Spurney* to other situations.  *See Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 395 (5th Cir. 2012) (discussing "the limited nature of Louisiana's claim for tortious interference with a contract").

Schehr's counterclaim for intentional interference with a contract fails to state a claim for two reasons.  First, Schehr does not allege that Kusy was an officer of SPEC when she allegedly interfered with these contracts.  According to Schehr, Kusy became an officer of SPEC only on July 7, 2016—three days before Schehr's termination—when she replaced him as General Manager, Vice-President, and Director.[56]  Thus, Kusy was not an officer

---

[55]     R. Doc. 66 at 4-5 ¶¶ 12-20.
[56]     R. Doc. 61 at 2 ¶ 7; R. Doc. 66 at 4 ¶ 12.

when Dicharry and SPEC allegedly breached the Radiography Contract two weeks before Schehr's termination. Second, as explained earlier, Schehr does not sufficiently allege how Dicharry and SPEC breached the NEWCO Agreement. Nor does Schehr explain how SPEC breached his employment contract. To infer that Kusy interfered with these contracts after July 7 and that this interference caused Dicharry and SPEC to breach these contracts in some unspecified way would be pure speculation. Because Schehr's allegations do not raise a right to relief for intentional interference with a contract above the speculative level, the counterclaim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the motions to dismiss Schehr's counterclaims. The counterclaim for revendicatory relief against Dicharry and Kusy and the counterclaim for intentional interference with a contract against Kusy are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this __28th__ day of December, 2017.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE