UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SOURCE PRODUCTION & EQUIPMENT CO., INC., ASPECT TECHNOLOGY LIMITED, SPECMED, LLC, SPEC MED INTELLECTUAL PROPERTY, LLC AND SPEC INTELLECTUAL PROPERTY, LLC | CIVIL ACTION<br><br>NO. 16-17528<br><br>SECTION M (1) |
| VERSUS | |
| KEVEN J. SCHEHR, ISOFLEX USA, ISOFLEX RADIOACTIVE LLC, RICHARD H. MCKANNAY, JR., AND JOHN DOES 1-10 | |

**<u>ORDER & REASONS</u>**

Before the Court are:

(1) a motion for summary judgment filed by plaintiff-in-counterclaim Isoflex USA ("IUSA"),[1] to which defendant-in-counterclaim Source Production & Equipment Co., Inc. ("SPEC) responds in opposition,[2] and in further support of which IUSA replies;[3] and

(2) SPEC's cross-motion for summary judgment on IUSA's counterclaim,[4] to which IUSA responds in opposition,[5] and in further support of which SPEC replies.[6]

Having considered the parties' memoranda, the pleadings, and the applicable law, the Court issues this Order & Reasons.

---

[1] R. Doc. 154.
[2] R. Doc. 181.
[3] R. Doc. 234.
[4] R. Doc. 253.
[5] R. Doc. 263.
[6] R. Doc. 270.

1

## I. BACKGROUND

This matter concerns the collection of amounts allegedly due on an open account.[7] The relevant facts underlying IUSA's open-account claim against SPEC are largely undisputed.[8] For many years, IUSA served as an intermediary or broker to SPEC for materials SPEC needed.[9] SPEC would issue purchase orders to IUSA, and IUSA would in turn order the materials from third-party providers without requiring up-front payment from SPEC.[10] In the normal course of dealings between the parties, IUSA typically did not require payment from SPEC until thirty days after delivery.[11]

In 2016, SPEC fell behind on its payments to IUSA for materials that had been delivered.[12] As a result, in August 2016, the parties reached an agreement whereby SPEC would pay down its account balance owed to IUSA at a rate of $17,500 per week.[13] SPEC stopped making payments to IUSA on January 11, 2017.[14] SPEC contends that as of that date it had satisfied its open-account obligation to IUSA for materials that were actually delivered.[15]

On February 15, 2017, Richard H. McKannay Jr. ("McKannay"), ISUA's managing director, sent SPEC a letter demanding payment for amounts IUSA claimed were still owed.[16] "Exhibit A" to the letter referenced eight items for which IUSA was demanding payment from SPEC for a total outstanding balance of $614,597.52.[17] Included in "Exhibit A" were demands

---

[7] IUSA's open-account claim against SPEC is raised as a counterclaim in the context of a broader case between multiple parties that includes claims for trade-secret misappropriation, violations of the Computer Fraud Abuse Act, fraud, violations of the Louisiana Unfair Trade Practices Act, and breaches of fiduciary duties and contract. None of the other claims – or the facts underlying those claims – is relevant to the open-account issue. The facts of the broader case can be found at *Source Prod. & Equip. Co. v. Schehr*, 2017 WL 3721543, at *1-2 (E.D. La. Aug. 29, 2017), and *Source Prod. & Equip. Co. v. Schehr*, 2017 WL 6623994, at *1 (E.D. La. Dec. 28, 2017).
[8] R. Docs. 154-4 & 181-4.
[9] R. Doc. 181-4 at 1.
[10] Id. at 2-3.
[11] *Id.* at 3-4.
[12] *Id.* at 3.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] R. Doc. 58-1 at 1.
[17] *Id.* at 2.

for payment for SPEC's orders of: Enriched Ir-191 Discs made in July 2013 and July and August 2014; Enriched Fe-56 made in January 2014; and Iridium NA Discs made in March and November 2014.[18] IUSA claims that it has been holding these products waiting for SPEC to request delivery.[19] Also included on "Exhibit A" is a commission that SPEC allegedly owes IUSA for the "Sale: of 4 Spec150 Systems" in August 2016.[20] Further, "Exhibit A" lists three amounts of $80,595 each for three orders of Ir-192 that SPEC's president, Richard D. Dicharry ("Dicharry"), refused on August 22, 2016.[21] The three Ir-192 orders are listed under separate purchase orders numbered 70008457, 70008459, and 70008460.[22]

SPEC refused to pay for the items listed in "Exhibit A" contending that it does not owe IUSA anything for products that were never delivered.[23] SPEC contends that McKannay expressly offered Dicharry the opportunity to cancel the existing purchase orders for the Ir-192 in 2016, which Dicharry accepted.[24] SPEC also contends that it does not owe IUSA for the Enriched Ir-191, Enriched Fe-56, or Iridium NA Discs because IUSA never delivered the materials to SPEC nor sought payment for them prior to McKannay's February 15, 2017 letter.[25] SPEC informed IUSA that it would accept shipment of these three materials if IUSA would agree to payment within thirty days of delivery, but IUSA refused SPEC's proposal.[26] Instead, IUSA wanted a guaranteed, up-front payment before delivering the three materials.[27] Further, SPEC declined to pay the commission listed on "Exhibit A" because SPEC contends that the parties do not have an agreement for SPEC to pay any such commission to IUSA.[28]

---

[18] *Id.*
[19] R. Doc. 234-1 at 1.
[20] R. Doc. 58-1 at 2.
[21] *Id.*
[22] *Id.*
[23] R. Doc. 181-4 at 3-5.
[24] *Id.* at 4.
[25] *Id.* at 5.
[26] *Id.*
[27] *Id.*
[28] *Id.*

On September 19, 2017, IUSA filed the instant counterclaim against SPEC seeking payments that it alleges are due on the open account.[29] IUSA alleges that it "procured various products (e.g., DU inserts, Ir-192, enriched Ir-191 Discs, enriched Fe-56, Iridium NA discs) and performed services (e.g., arranging the sale by SPEC of radiographic systems to Beijing Deyan Xingye Co. Ltd) per written purchase orders issued by SPEC and other agreements between IUSA and SPEC."[30] IUSA also alleges that it made a written demand to SPEC on February 15, 2017, that SPEC has refused to pay, and as a result, "SPEC currently owes IUSA $614,597.52 on *open account*."[31] IUSA contends that it "has fulfilled the legal requirements for recovery under Louisiana's *open account* statute, La. R.S. 9:2781, and therefore SPEC is liable to IUSA for the amount due and all reasonable attorney's fees for the prosecution and collection of such claims."[32] IUSA further alleges that SPEC's failure to pay IUSA resulted in IUSA's having to enter into a settlement with the producer of the Ir-192, Production Association Mayak ("PAM"), in the amount of $99,322.50, which "resulted in the loss of the relationship between IUSA and PAM and the loss of future profits to IUSA."[33] IUSA seeks judgment for the $614,597.52 on the open account, the $99,322.5 it paid to PAM, and for lost profits, together with attorney's fees pursuant to La. R.S. 9:2781, and "[a]ny and all equitable relief IUSA is entitled to [by] law, equity, contract, or custom."[34]

## II.   PENDING MOTIONS

IUSA argues that it is entitled to summary judgment on its open-account claim against SPEC because it has proved that it demanded payment and was not paid within fifteen days.[35] IUSA contends that the current sum of SPEC's unpaid accounts totals $377,538.70, which

---

[29] R. Doc. 58 at 44-45.
[30] *Id.* at 44.
[31] *Id.* at 44 (emphasis added).
[32] *Id.* (emphasis added).
[33] *Id.*
[34] *Id.* at 45.
[35] R. Doc. 154-1 at 6-7.

4

includes the Enriched Ir-191 ($73,424.70), Enriched Fe-56 ($37,500), Iridium NA Discs ($21,700), and three orders of Ir-192 ($80,595 each).[36] IUSA states that Dicharry's cancellation of the Ir-192 delivery in August 2016 triggered SPEC's default on its obligation to purchase the Ir-192 from PAM, and, as a result, IUSA entered into a settlement with PAM whereby IUSA was obligated to pay $99,233.50 to PAM for the cancelled orders.[37] Thus, IUSA now seeks $135,616.47 from SPEC for the Ir-192 – the $99,233.50 settlement amount plus $36,266.25 in lost profits – instead of $241,775, which it characterizes as amounts that otherwise would have been due on the open account.[38] IUSA argues that it permitted SPEC to cancel the "deliveries" of the Ir-192, not the "purchase order."[39] Alternatively, IUSA argues that, if the Court does not find that an open account existed, SPEC is liable for breach of contract for failing to pay for certain materials and services, which has damaged SPEC in the amount of $271,280.17.[40]

SPEC opposes IUSA's motion and files a cross-motion for summary judgment on IUSA's open-account and contract claims.[41] SPEC agrees that it had an open account with IUSA.[42] However, SPEC argues that it does not owe anything to IUSA on the open account because IUSA never delivered the products at issue, and there is no evidence that SPEC and IUSA had a contract that required SPEC to pay a commission to IUSA.[43]

## III. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[36] *Id.* at 2.
[37] *Id.* at 3.
[38] *Id.*
[39] R. Doc. 234 at 3-4.
[40] R. Doc. 154-1 at 7.
[41] R. Docs. 181 & 253.
[42] *Id.* at 1-2 & R. Doc. 253-1 at 1-2.
[43] *Id.* at 2-9 & R. Doc. 253-1 at 2-8.

5

to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.

2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Open Account

Louisiana law defines an "open account" as:

> any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. …

La. R.S. 9:2781(D). "When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant." *Id.* 9:2781(A).

To prevail on a claim for open account, the plaintiff-creditor must first establish a *prima facie* case by showing that the record of the account was kept in the course of business. *Cline v. George Kellette & Sons, Inc.*, 685 So. 2d 206, 208 (La. App. 1996) (citations omitted).[44] The plaintiff-creditor must also show proof of actual delivery or "'that books were kept in the normal course of business and indicate that merchandise has been sold and delivered.'" *Id.* (quoting *Entron v. Callais Cablevision*, 307 So. 2d 787, 793-94 (La. App. 1975)). Once the plaintiff-creditor establishes a *prima facie* case, the burden shifts to the defendant-debtor to disprove the existence of the account or its correctness, or to prove entitlement to certain credits. *Id.* (citations omitted). The amount due on an open account is a question of fact. *Id.* (citations omitted).

Here, IUSA has not met its burden of establishing a *prima facia* case for an open account because it has not proved that the products for which it seeks payment – the Enriched Ir-191, Enriched Fe-56, Iridium NA Discs, and three orders of Ir-192 – were delivered. Indeed, IUSA admits that they have not been.[45] Thus, there is no claim for payment on the open account pertaining to such materials.

However, IUSA has established a *prima facie* case of open account on its claim for a commission related to its having arranged SPEC's sale of radiographic systems to Beijing Deyan Xingye Co. Ltd ("BDX"). IUSA demonstrates through invoices kept in the ordinary course of business that it delivered the service of brokering the deal between SPEC and BDX.[46] SPEC does not deny that it owed a commission to IUSA for that sale, but SPEC contends that the commission was factored into other invoices and already paid.[47] IUSA argues that SPEC is misreading the invoice which it contends "clearly shows" that BDX paid $53,743.18 to SPEC, of

---

[44] In this non-diversity case, the parties do not dispute that Louisiana law applies to the open-account and breach-of-contract issues.

[45] R. Doc. 152-2 at 2 & R. Doc. 234-1 at 1.

[46] R. Doc. 58-1 at 23-28.

[47] R. Doc. 181 at 8.

8

which $47,345 was due to SPEC and $3,139 was due to IUSA. Because there is a disputed issue of material fact regarding whether IUSA received this payment, the Court cannot grant summary judgment to IUSA on its open-account claim regarding the $3,139 commission, but the Court also denies summary judgment to SPEC on this claim.

### C. Breach of Contract

IUSA argues that the Court should award it $271,380.17 in damages for SPEC's breach of contract in the event that the Court does not find that SPEC is liable on IUSA's open-account claim.[48] IUSA presents its breach-of-contract claim as an alternative "in the event this Court finds that no 'open account' exists."[49] But the parties do not dispute the existence of an open account, and the Court holds only that no claim for payment on this open account is due (perhaps other than the commission, which remains in dispute), not that no open account existed.

In support of its breach-of-contract claim, IUSA argues that "IUSA and SPEC were involved in a commercial business relationship whereby IUSA agreed to provide SPEC with certain materials and services on an agreed upon rate and SPEC agreed to compensate IUSA," and that SPEC failed to pay for certain materials and services, which damaged IUSA.[50] IUSA makes no effort to distinguish this "commercial business relationship" from that of the open account both parties say existed between them. Other than the purchase orders and invoices denoting the open account, IUSA points to no written instrument said to constitute a contract between SPEC and IUSA, and it does not specify any terms or conditions of any alleged contract as would show that IUSA was entitled to payment for products never delivered to SPEC. Hence, because IUSA has alleged no contractual relationship other than the open account, its breach-of-contract claim fails.

---

[48] R. Doc. 154-1 at 7.
[49] R. Doc. 263 at 9.
[50] R. Doc. 154-1 at 7.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that IUSA's motion for summary judgment on its counterclaim against SPEC (R. Doc. 154) is DENIED.

IT IS FURTHER ORDERED that SPEC's cross-motion for summary judgment on IUSA's counterclaim against it (R. Doc. 253) is DENIED in part, as to IUSA's open-account claim regarding the $3,139 commission, and GRANTED in all other respects.

New Orleans, Louisiana, this 24th day of April, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE