UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOURCE PRODUCTION &
EQUIPMENT CO., INC., ASPECT
TECHNOLOGY LIMITED,
SPECMED, LLC, SPEC MED
INTELLECTUAL PROPERTY, LLC
AND SPEC INTELLECTUAL
PROPERTY, LLC

CIVIL ACTION

NO. 16-17528

SECTION M (1)

VERSUS

KEVIN J. SCHEHR, ISOFLEX USA,
ISOFLEX    RADIOACTIVE    LLC,
RICHARD H. MCKANNAY, JR., AND
JOHN DOES 1-10

## ORDER & REASONS

Before the Court are several motions filed by defendants Kevin Schehr and Isoflex

Radioactive, LLC ("IsoRad") (together "IsoRad Defendants") and/or Isoflex USA ("IUSA") and

Richard H. McKannay, Jr. (together "IUSA Defendants," and collectively with the IsoRad

Defendants, "Defendants") seeking summary judgment on plaintiffs' trade-secret

misappropriation claims for failure to specify the trade secrets at issue,[1] failure to prove

misappropriation of any purported trade secrets,[2] and failure to prove damages.[3]  Plaintiffs

Source Production & Equipment Co., Inc. ("SPEC"), Aspect Technology Limited ("ATL"),

Specmed, LLC ("Specmed"), Spec Med Intellectual Property, LLC ("SMIP"), and Spec

Intellectual Property, LLC ("SPI") (collectively, "Plaintiffs") respond in opposition.[4]

Defendants and Plaintiffs filed several replies in further support of, or opposition to, the

---

[1] R. Doc. 140.
[2] R. Docs. 162 & 163.
[3] R. Doc. 155.
[4] R. Docs. 142 & 186.

1

motions.[5]  On August 15, 2019, the Court held oral argument on the motions.  Having considered the parties' memoranda, the evidence in the record on summary judgment, counsels' statements at oral argument, and the applicable law, the Court issues this Order & Reasons.

## I.  BACKGROUND

This matter concerns the alleged theft of trade secrets and breaches of fiduciary duty and contract by a business's former employee.  The Court summarized the factual background of this case in a prior ruling on Defendants' motion to dismiss certain claims raised in Plaintiffs' first amended complaint:[6]

> Source Production & Equipment Co., Inc. ("SPEC") and its affiliates bring this trade-secret misappropriation and unfair competition action against Kevin J. Schehr, Isoflex USA, Isoflex Radioactive LLC, and Richard McKannay, Jr. SPEC is a supplier of industrial and medical radiography equipment and radioactive isotope materials.  Schehr is a former executive officer at SPEC. According to the complaint, Schehr began working for SPEC in 1995 and held various positions at the company until his termination in July of 2016.  Plaintiffs allege that over the course of his employment, Schehr signed several confidentiality agreements regarding SPEC's trade secrets.  These trade secrets include technologies used to manufacture containers for shipping radioactive material.
>
> According to the complaint, Schehr unsuccessfully attempted to acquire an ownership interest in SPEC in 2012 and 2014.  Plaintiffs further allege that Schehr's resentment toward SPEC and its owner, Richard Dicharry, following these attempts prompted Schehr to engage in conduct intended to undermine SPEC and benefit Schehr and others affiliated with Schehr.  To this end, Schehr allegedly made several misrepresentations to Dicharry that he knew to be false, caused SPEC to default on the terms of a sale agreement, negotiated business contracts against Dicharry's wishes, filed for and claimed ownership rights to patents developed using SPEC's resources, and provided false financial information in order to inflate his personal bonuses, among several other alleged transgressions.
>
> SPEC terminated Schehr's employment on July 10, 2016.  Plaintiffs allege that after his termination, Schehr did not immediately return his company-issued laptop, despite SPEC's demand that he do so.  Plaintiffs further allege that once

[5] R. Docs.  173, 232, 226, 229, 280, 290, 293 & 298.
[6] This matter was initially assigned to a different section of this Court but was realloted to this section upon confirmation of the undersigned.

the laptop was returned, a forensic analysis revealed that Schehr emailed a number of SPEC's confidential and proprietary files to his personal email accounts. According to plaintiffs, the analysis also showed that minutes after his termination, Schehr attached two external hard drives to the laptop and subsequently deleted 5,086 files from the laptop. Plaintiffs allege that Schehr continues to possess other storage media belonging to SPEC, including thumb drives and CDs.

Finally, plaintiffs allege that both before and after his termination, Schehr conspired with Isoflex USA and McKannay, the managing director of Isoflex USA, to establish Isoflex Radioactive. Plaintiffs allege that in creating Isoflex Radioactive, defendants misappropriated plaintiffs' trade secrets and confidential information. This misappropriation, according to plaintiffs, will allow Isoflex Radioactive to compete with plaintiffs in the market for radioactive materials.

In their amended complaint, plaintiffs assert against all defendants claims for violations of the federal Defend Trade Secrets Act ("DTSA"), the Louisiana Uniform Trade Secrets Act ("LUTSA"), and the Louisiana Unfair Trade Practices Act ("LUTPA"), as well as for conversion. Against Schehr individually, plaintiffs assert claims for violation of the Computer Fraud and Abuse Act ("CFAA"), breach of legal duty, breach of contract, and fraud.

*Source Prod. & Equip. Co. v. Schehr*, 2017 WL 3721543, at *1-2 (E.D. La. Aug. 29, 2017)

(footnotes citing record omitted).[7]

The list of trade secrets that Plaintiffs claim Defendants misappropriated has evolved over the course of this litigation. On February 18, 2019, in their latest recitation of the purported trade secrets at issue, Plaintiffs claim that Defendants misappropriated:

a) The process for mixing and producing the insulation material utilized in Plaintiffs' Aspect Containers;[8]

b) The dimensional tolerances for the components utilized in the Aspect Containers;

…

f) Plans, drawings, and research regarding the development of a new radiography system, sometimes referred to as the "RDD JTube Radiography System";

---

[7] The Court granted the motion to dismiss as to Plaintiffs' conversion claim against IUSA, IsoRad, and McKannay, as well as Plaintiffs' conversion claim against Schehr to the extent they sought to recover the value of their trade secrets; and otherwise denied the motion. *Source Prod. & Equip. Co.*, 2017 WL 3721543, at *7.

[8] Aspect Containers are Plaintiffs' proprietary product for shipping radioactive material.

g)      Plans, drawings, and research regarding the development of the Se-120 device (based upon intellectual property related to the former "Viking" radiography system sold to SPEC by Gilligan);

h)      Methods and processes for producing medical High Does Rate ("HDR") Afterloader Sources;

i)      Methods and processes for producing and encapsulating a Selenium product called "SPECalloy";

j)      The composition and process and procedure related to the manufacture of a wear-resistant connector for source assemblies;

…

l)      Plans, drawings, and research for the design and development of a mini hotcell;

m)      Confidential information regarding SPEC's financial condition; and

n)      Confidential information regarding SPEC's business relationship with Qualitek.[9]

Up to that point in time, Plaintiffs had identified some of the purported trade secrets that appear on the list, but not others. Plaintiffs filed their initial complaint on December 16, 2016, and filed their first amended complaint on April 4, 2017.[10] In their first amended complaint, Plaintiffs allege there are several features of their Aspect Containers that are not disclosed in public filings, and thus are trade secrets that, if known, would allow competitors to quickly and cheaply fabricate, and obtain government approval for, similar containers.[11] In their first

---

[9] R. Docs. 140-10 & 148-4. At oral argument, Plaintiffs' counsel conceded that Plaintiffs have abandoned their claims related to the following purported trade secrets identified in the February 18, 2019 document: (c) shielded metal arc welding (SMAW) and gas tungsten arc welding (GTAW) techniques and processes specifically used in the manufacture of Aspect Containers; (d) methods and processes of heat treating S-tubes; (e) research regarding the development of a new radiation survey system; and (k) plans, drawings, and research regarding the development of a two-part, non-welded source assembly.

[10] R. Docs. 1 & 33.

[11] R. Doc. 33 at 11-12.

amended complaint, Plaintiffs specify that their trade secrets include the items identified above by letters (a), (b), (f), (h), and (i).[12]

On January 19, 2018, the IUSA Defendants propounded their first set of discovery requests on Plaintiffs, which included interrogatories asking Plaintiffs to specifically identify each trade secret they contend was misappropriated by McKannay or IUSA.[13]  In their February 28, 2018 response, Plaintiffs claimed that they could not provide the requested detail without a protective order, and then reiterated the same purported trade secrets identified in the first amended complaint, while adding the newly-identified purported trade secret (g).[14]

On June 21, 2018, the IsoRad Defendants propounded their first set of discovery requests on Plaintiffs, which included interrogatories asking Plaintiffs to specifically identify each trade secret they contend was misappropriated by Schehr.[15]  Plaintiffs responded on August 6, 2018, listing the same purported trade secrets as stated in their February 28, 2018 responses to the IUSA Defendants' interrogatories, but did not provide further detail regarding the alleged misappropriation.[16]

On February 8, 2019, the parties attended a discovery conference with the magistrate judge at which Defendants expressed their frustration with Plaintiffs' failure to identify with specificity their purported trade secrets.  The magistrate judge ordered Plaintiffs to "identify with particularity for the defendants the specific trade secrets plaintiffs claim were misappropriated."[17]

---

[12] *Id.* at 11-13.
[13] R. Doc. 140-4 at 10.
[14] R. Doc. 140-5 at 6-7.
[15] R. Docs. 140-6 at 6-7; 146-7 at 8.
[16] R. Doc. 140-8 at 4-7; R. Doc. 140-9 at 4-7.
[17] R. Doc. 132.

Plaintiffs produced the February 18, 2019 identification of trade secrets list (quoted above) in response to that order.[18]  This list added for the first time alleged trade secrets (j), (l), (m), and (n).[19]  Plaintiffs stated that they believe Schehr was in possession of the purported trade secrets due to his file-downloading activities after his termination.[20]  Generally, Plaintiffs think that Schehr has used or will use the purported trade secrets because IsoRad has technical drawings for a radioactive material transport container intended to compete with Plaintiffs' Aspect Container.[21]  These drawings were produced to Plaintiffs in discovery on January 9, 2019.[22]  Plaintiffs surmise that Schehr has shared the purported trade secrets because, they insist, he is incapable of operating 3D CAD software and "Plaintiffs do not believe that he could have created the drawings acting alone."[23]

## II.  PENDING MOTIONS

After receiving Plaintiffs' February 18, 2019 list of trade secrets, Defendants filed the pending motions for summary judgment on Plaintiffs' trade-secret misappropriation claims.  In the first motion, Defendants argue that Plaintiffs failed to timely identify their trade secrets with specificity.[24]  Plaintiffs oppose the motion arguing that they have sufficiently identified the trade secrets at issue.[25]  Plaintiffs attach to their opposition a chart constituting an updated list of trade secrets in which they identify by Bates number, for the first time, SPEC documents that purportedly contain the alleged trade secrets.[26]

---

[18] R. Doc. 140-10.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] R. Doc. 140.
[25] R. Docs. 142 & 186.
[26] R. Doc. 142-4.

In their other motions for summary judgment on Plaintiffs' trade-secret misappropriation claims, Defendants argue that Plaintiffs failed to prove that Defendants misappropriated, used, or shared the purported trade secrets, and failed to prove damages associated with the alleged misappropriation.[27]   Plaintiffs oppose the motions arguing that there are disputed issues of material fact that preclude summary judgment on these issues.[28]   As evidence of misappropriation, Plaintiffs specified for the first time the documents that Schehr downloaded after his termination that Plaintiffs claim contain their trade secrets.[29]

## III. LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).   "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*.   A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.   *Id*. at 323.   If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.   *Id*. at 324.

---

[27] R. Docs. 155, 162 & 163.
[28] R. Docs. 142 & 186.
[29] R. Doc. 186-1.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant

will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## B. DTSA and LUTSA

Plaintiffs assert claims against Defendants under both the federal and Louisiana trade secrets statutes, DTSA and LUTSA, which are substantially similar. To prevail on a DTSA claim, a plaintiff must prove: (1) the existence of a trade secret; (2) a misappropriation of the trade secret by another; and (3) the trade secret's relationship to a product or service used or intended for use in interstate or foreign commerce.[30] 18 U.S.C. § 1836(b)(1). Similarly, to prevail on a LUTSA claim, "'a complainant must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation.'" *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000) (quoting *Reingold v. Swiftships, Inc.,* 126 F.3d 645, 648 (5th Cir. 1997)).

### 1. Identification and Existence of Trade Secrets

To prevail on a trade-secret misappropriation claim the plaintiff "'must identify the trade secrets and carry the burden of showing that they exist.'" *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2018 WL 3197696, at *14 (C.D. Cal. June 25, 2018) (quoting *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)).[31] DTSA defines a "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program

---

[30] DTSA went into effect on May 11, 2016. *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e), 130 Stat. 376, 381-82. Thus, Plaintiffs' DTSA claim covers only misappropriation that occurred after that date.

[31] These cases interpret California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426, *et seq.*, which is substantially similar to both DTSA and LUTSA.

devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –

    **(A)** the owner thereof has taken reasonable measures to keep such information secret; and

    **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). LUTSA's definition of "trade secret" is nearly identical.[32] "A trade secret 'is one of the most elusive and difficult concepts in the law to define.'" *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 613 (5th Cir. 2011) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978)). "Whether something is a trade secret is a question of fact." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 796 (E.D. La. 2012) (citations omitted).

    **a. Plaintiffs' Identification of Trade Secrets**

Although it is not necessary for a plaintiff to disclose in detail in a complaint the allegedly misappropriated trade secrets, the plaintiff must plead sufficient facts to put the defendant on notice of what is alleged to have been misappropriated. *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1043-44 (S.D. Cal. 2017) (citations and quotations omitted). "A plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special

---

[32] LUTSA defines a "trade secret" as:
information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
La. R.S. 51:1431(4).

knowledge of those persons skilled in the trade.'" *Mfg. Automation*, 2018 WL 3197696, at *14

(quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998)). To that

end, "[t]he identification must clearly refer to trade secret material." *Dow Chem. Can. Inc. v.*

*HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012) (citing *Imax*, 152 F.3d at 1167). Such a

"pleading requirement … prevents a plaintiff from taking unfair advantage of the [Uniform

Trade Secrets Act] and proceeding on a flimsy basis at the outset of a litigation only to tailor its

identification of trade secrets to the discovery it receives." *Yeiser Research*, 281 F. Supp. 3d at

1044 (quotation omitted).

Of the ten allegedly misappropriated trade secrets that Plaintiffs currently claim are at

issue, five – identified by letters (g), (j), (l), (m), and (n) – were not referenced in the first

amended complaint. Plaintiffs first identified alleged trade secret (g) as being at issue in January

2018.[33] Although Plaintiffs waited until more than a year into the litigation to reveal that they

claimed the plans, drawings, and research regarding the development of the Se-120 device as a

misappropriated trade secret, the parties engaged in discovery for more than a year after that

revelation, until March 2019. Thus, Defendants have had plenty of time to develop issues related

to the purported Se-120 trade secret through the discovery process.

In contrast, Plaintiffs identified alleged trade secrets (j), (l), (m), and (n) for the first time

on February 18, 2019, one day before Defendants' expert reports were due, and just one month

before the close of discovery.[34] This eleventh-hour-trade-secrets identification is highly

prejudicial to the Defendants who did not have sufficient time to explore through discovery any

issues concerning these alleged trade secrets, nor to have those issues addressed by an expert.

Such a late identification of purported trade secrets amounts to trial by ambush and is exactly the

---

[33] R. Doc. 33.
[34] R. Doc. 102.

type of tailoring of trade-secret identification to discovery that earlier identification is designed to prevent. As a result, Defendants' motion for summary judgment for failure to identify trade secrets with specificity (R. Doc. 140) is GRANTED as to alleged trade secrets (j), (l), (m), and (n), and Plaintiffs' trade-secret claims as to those items are DISMISSED WITH PREJUDICE.

### b. Existence of Trade Secrets – Secrecy

Information qualifies as a trade secret only if it is secret. 18 U.S.C. § 1839(3); La. R.S. 51:1431(4). Public disclosure obviously destroys secrecy and trade-secret protection. *See, e.g., Johns Manville Corp. v. Knauf Insulation, LLC*, 2017 WL 4222621, at *6 (D. Colo. Sept. 22, 2017). Thus, it is axiomatic that information that is part of a patent or published patent application, even a foreign one, cannot be protected as a trade secret. *MetriColor LLC v. L'Oreal S.A.*, 2018 WL 5099496, at *5 (C.D. Cal. Aug. 15, 2018) (quoting *Bladeroom Grp. Ltd v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015)); *Attia v. Google LLC*, 2019 WL 1259162, at *5 (N.D. Cal. Mar. 19, 2019) (finding that trade secrets were extinguished as of the date that the patent applications were published), *appeal docketed*, No. 19-15771 (9th Cir. Apr. 17, 2019); 1 MELVIN F. JAGER, TRADE SECRETS LAW § 6:6 (2019).

It is undisputed that alleged trade secrets (i) and (g) are the subjects of published patent applications pending in the United States, and alleged trade secret (f) is the subject of a patent pending in Europe.[35] Plaintiffs acknowledge that the information disclosed in these patent applications is not eligible for trade-secret protection.[36] But, Plaintiffs argue that they are claiming trade-secret protection related to matters that are not disclosed in the patent applications.

---

[35] Agreement of Plaintiffs' and Defendants' counsel on the record at oral argument.
[36] Statements of Plaintiffs' counsel on the record at oral argument.

To identify what those allegedly undisclosed trade secrets are, Plaintiffs point to eleven documents that Schehr downloaded after he was terminated from SPEC.[37]   Most of these documents include technical information about the RDD J Tube – alleged trade secret (f), Se-120 device – alleged trade secret (g), and SPECalloy – alleged trade secret (i).  However, Plaintiffs do not present the Court with any comparison of the publicly-available information, on the one hand, and the documents obtained by Schehr, on the other, to explain or demonstrate how those documents contain information amounting to trade secrets that are not disclosed in the patent applications.  As such, Plaintiffs do not clearly refer the Court to tangible trade-secret material, but rather refer the Court to documents they allege, without further identification, to contain trade secrets that may not be disclosed in the patent application.  *See Imax*, 152 F.3d at 1167 (holding that trade-secret claimant failed to identify allegedly secret information about patented projector system undisclosed by patent).

A plaintiff must do more than identify a technology or document allegedly containing a potential trade secret "and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002).  This is especially true in a case such as this one where the trade-secret claim involves sophisticated, highly technical issues that the district court or jury, on its own, is unlikely to have the expertise required to discern exactly what constitutes a trade secret. *See Imax*, 152 F.3d at 1167.  It is the plaintiff's burden to prove that a trade secret exists and identify what information is known to the trade and which is not.  *IDX Sys.*, 285 F.3d at 383-84 ("unless the plaintiff engages in a serious effort to pin down the secrets a court cannot do its job").  Plaintiffs have failed to carry that burden as to alleged trade secrets (f), (g), and (i). Therefore, Defendants' motions for summary judgment on Plaintiffs' trade-secret

---

[37] R. Doc. 186-1 at 5-4.

misappropriation claims (R. Docs. 162 & 163) are GRANTED as to alleged trade secrets (f), (g), and (i), and Plaintiffs' trade-secret misappropriation claims as to those items are DISMISSED WITH PREJUDICE.[38]

### c. Existence of Trade Secrets – Dimensional Tolerances

Plaintiffs identify the dimensional tolerances for the components utilized in the Aspect Containers as alleged trade secret (b) above. As evidence of misappropriation, Plaintiffs contend that Schehr downloaded four proprietary design drawings that show the shape, dimensions, and dimensional tolerances, along with some materials of construction, of the container components.[39] In light of this contention, the Court will broadly read the term "dimensional tolerances," as included in Plaintiffs' list of identified trade secrets, to encompass all of the information shown on the drawings. Defendants argue that the container's dimensions, shape, and materials of construction are not trade secrets because they are publicly disclosed or easily ascertainable through reverse engineering.[40] Further, Defendants argue that Plaintiffs proffered expert, Lawrence R. Jacobi, admitted in his report that Defendants did not copy Plaintiffs' dimensional tolerances.[41]

Although some of the shapes, dimensions, and materials of construction used in the Aspect Containers may be in the public domain, the combination of characteristics together can constitute a trade secret. *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 410-11 (6th Cir. 2007) ("A trade secret can exist in a combination of characteristics and components, each of

---

[38] Defendants argue that alleged trade secret (a) – the process for mixing and producing the insulation material utilized in Plaintiffs' Aspect Containers – does not constitute a trade secret because the mixing instructions are published by the manufacturer of Kaolite. Plaintiffs argue that the trade secret is their special way of mixing the Kaolite that differs from the manufacturer's instructions. There is no need to discuss whether Plaintiffs' recipe for mixing Kaolite is a trade secret because Plaintiffs have not proved that Defendants misappropriated such information. *See* Section III(B)(2)(a), *infra*.

[39] R. Doc. 186-1 at 5.

[40] R. Doc. 290 at 6-10.

[41] R. Doc. 280-7 at 7-8.

which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.") (quoting *3M v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001)); *Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 9 (D.D.C. 2004) ("[I]t is widely accepted that a trade secret can exist in a combination of characteristics each of which, by itself, is in the public domain, and even if all of the information about those characteristics is publicly available, a unique combination of that information, which adds value to the information, may qualify as a trade secret.") (citations and quotation marks omitted), *aff'd*, 173 F. App'x 825 (Fed. Cir. 2006). Moreover, "it is well settled that detailed manufacturing drawings and tolerance data are prima facie trade secrets." *Mike's Train House*, 472 F.3d at 410 (citing *A.H. Emery Co. v. Marcan Prods.*, 389 F.2d 11, 16 (2d Cir. 1968)).

With respect to Defendants' argument about reverse engineering, "[a] process or device may be a trade secret … even when others can gain knowledge of" it by studying the product or other publicly-available information. *Berge v. Republic Nat'l Inc.*, 2018 WL 2267095, at *2 (N.D. Tex. May 17, 2018) (citing *Phillips v. Frey*, 20 F.3d 623, 629 (5th Cir. 1994)). "Although trade secret law does not offer protection against discovery by fair and honest means such as independent invention, accidental disclosure, or 'reverse engineering,' protection will be awarded to a trade secret holder against [misappropriation] by those to whom the secret has been confided under either express or implied restriction of nondisclosure or by one who has gained knowledge by improper means." *Phillips*, 20 F.3d at 629 (citations omitted).

In this case, Plaintiffs allege that Schehr improperly downloaded, after his termination, four drawings that constitute trade secrets. Even if certain information contained on the drawings is in the public domain and other aspects can be reverse engineered, the compilation in

the drawings can constitute a trade secret and Schehr allegedly obtained the documents in an improper manner. Thus, with respect to alleged trade secret (b), Plaintiffs have identified a potential trade secret that was allegedly misappropriated.

### d. Existence of Trade Secrets – HDR Afterloader Sources

Plaintiffs contend that Schehr downloaded three documents containing the methods and processes for producing medical HDR Afterloader Sources, which is identified alleged trade secret (h).[42] Those documents appear to contain such information, and there is no evidence demonstrating that the contents of these documents were publicly available. Therefore, to withstand summary judgment, Plaintiffs have met their burden of showing that the documents may contain trade secrets related to the HDR Afterloader Sources.

### 2. Misappropriation of Trade Secrets

Once a plaintiff establishes that it has a trade secret, the plaintiff must prove that the defendant misappropriated it to maintain a cause of action under DTSA or LUTSA. 18 U.S.C. § 1836(b)(1); *Computer Mgmt. Assistance*, 220 F.3d at 403. DTSA defines "misappropriation" as:

> **(A)** acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> **(B)** disclosure or use of a trade secret of another without express or implied consent by a person who –
>
>> **(i)** used improper means to acquire knowledge of the trade secret;
>>
>> **(ii)** at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was –
>>
>>> **(I)** derived from or through a person who had used improper means to acquire the trade secret;
>>>
>>> **(II)** acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

---

[42] R. Doc. 186-1.

> **(III)** derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> **(iii)** before a material change of the position of the person, knew or had reason to know that –
>
> > **(I)** the trade secret was a trade secret; and
> >
> > **(II)** knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5). LUTSA's definition of "misappropriation" is nearly identical.[43] Further, the DTSA defines "improper means" as including "breach or inducement of a breach of a duty to maintain secrecy." *Id.* § 1839(6)(A). To sustain a trade-secret action under LUTSA's "'use' prong of the statutory definition of 'misappropriation,' a plaintiff must necessarily demonstrate that the defendant received some sort of unfair trade advantage." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1325 (5th Cir. 1994). Whether a trade secret has been misappropriated is a question of fact. *Pontchartrain Med. Labs, Inc. v. Roche Biomed. Labs., Inc.*, 677 So. 2d 1086, 1091 (La. App. 1996).

---

[43] "Misappropriation" is defined as:

(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(b) disclosure or use of a trade secret of another without express or implied consent by a person who:
> (i) used improper means to acquire knowledge of the trade secret; or
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
> > (aa) derived from or through a person who had utilized improper means to acquire it;
> > (bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> > (cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

La. R.S. 51:1431(2).

### a. Acquisition by Improper Means

The genesis of Plaintiffs' trade-secret misappropriation claim is Schehr's downloading of files from his SPEC-issued laptop immediately after his termination.[44] In his affidavit, Schehr admits that on July 10 and 11, 2016, he downloaded many documents from that laptop onto an external hard drive but claims that most of those documents were personal in nature.[45] Schehr states that, after his termination, he did not have access to the database on which SPEC saves its work instructions and production drawings.[46] On July 13 or 14, 2016, Schehr gave the laptop to his prior counsel who made a copy of the laptop on another external hard drive and then returned the laptop to SPEC on July 18, 2016.[47] Both hard drives have remained in defense counsel's possession since July 2016.[48]

In the course of discovery, Schehr produced documents to Plaintiffs that were presumably downloaded by Schehr from his SPEC-issued laptop on July 10 and 11, 2016. Steven Johnson, SPEC's technical director, states in his declaration that he reviewed the documents Schehr produced and matched them to Plaintiff's purportedly misappropriated trade secrets.[49] Johnson identifies three documents containing the methods and processes for producing medical HDR Afterloader Sources (listed as alleged trade secret (h) above), and four documents constituting production drawings of the Aspect Containers (listed as alleged trade secret (b) above).[50] Both DTSA's and LUTSA's definitions of "misappropriation" include the

---

[44] Plaintiffs do not allege that any of the other Defendants downloaded Plaintiffs' trade-secret-containing documents. Rather, Plaintiffs' trade-secret misappropriation claims against IsoRad, IUSA, and McKannay are premised on their alleged collective use, together with Schehr, of the alleged trade secrets downloaded by Schehr.

[45] R. Doc. 162-5 at 3-4.

[46] *Id.* at 4.

[47] *Id.* at 5.

[48] *Id.* at 5-6.

[49] R. Doc. 186-1.

[50] *Id.* at 5. Johnson also identifies documents Schehr produced that relate to alleged trade secrets (f), (g), (i), (j), (l), and (n) above. The Court will not discuss these documents because Plaintiffs' claims related to these categories are dismissed for other reasons.

acquisition of a trade secret by someone who knows or has reason to know that it was acquired by improper means. Schehr's production of these documents in discovery raises genuine questions of fact regarding whether he acquired them by improper means by downloading them after his termination.

With respect to alleged trade secret (a) – the process for mixing and producing the insulation material utilized in Plaintiffs' Aspect Containers – Johnson cites a single document downloaded by Schehr.[51] The referenced document is an email string that does not contain Plaintiffs' allegedly secret recipe for mixing Kaolite. Therefore, Plaintiffs have not carried their burden of demonstrating that Schehr misappropriated SPEC's process for mixing and producing Kaolite. As such, Defendants' motions for summary judgment on Plaintiffs' trade-secret misappropriation claims (R. Docs. 162 & 163) are GRANTED with respect to item (a) as to all Defendants, and Plaintiffs' trade-secret misappropriation claims as to that item are DISMISSED WITH PREJUDICE.

### b. Disclosure or Use

#### i. HDR Afterloader Sources

Plaintiffs alleged that Schehr must have disclosed to the other Defendants the information related to the HDR Afterloader Sources because McKannay wrote a letter to the president of AccuBoost discussing IUSA's interest in developing the technology and stating that IUSA has the knowledge to manufacture the product. Plaintiffs contend that the knowledge McKannay alludes to must be their trade secrets.[52]

At oral argument, Plaintiffs' counsel admitted that Plaintiffs have no evidence that any Defendant made commercial use of their purported trade secrets related to the HDR Afterloader

---

[51] Identified as Bates number Schehr.0992.101878-97.
[52] *Id.* at 9-10.

Sources. Further, in his letter to AccuBoost's president, McKannay specifically states that IUSA does not have information regarding, or interest in using, Plaintiffs' intellectual property to develop the HDR Afterloader Sources. There is no evidence before the Court refuting this statement. Because Plaintiffs' trade-secret misappropriation claims against IsoRad, IUSA, and McKannay are premised on use, and there is no evidence of use with respect to the HDR Afterloader Sources, IsoRad, IUSA, and McKannay's motions for summary judgment (R. Docs. 162 & 163) are GRANTED with respect to alleged trade secret (h), and such trade-secret misappropriation claims are DISMISSED WITH PREJUDICE.

### ii. Aspect Container Drawings

Plaintiffs contend that Schehr disclosed the Aspect Container production drawings to the other Defendants, and that all of the Defendants used the drawings in concert to create production drawings of a radioactive material transport container that will compete with Plaintiffs' Aspect Container. Plaintiffs contend that Schehr must have used, and shared with the other Defendants, Plaintiffs' purported trade-secret drawings because Schehr is incapable of creating the container drawings on his own.[53]

Plaintiffs support this argument with the opinions of their purported nuclear engineering expert, Lawrence R. Jacobi.[54] Jacobi reviewed 58 drawings, along with a six-page design criteria document, produced by IsoRad that were created by Schehr.[55] Jacobi states that the drawings are all marked "draft," but in his opinion the "the drawings suggest a level of dimensional precision that is incompatible with conceptual-stage, first draft drawings [because] [t]he degree of detail in these drawings suggests a more mature design."[56] Jacobi opines that, because he thinks the

---

[53] R. Doc. 140-10.
[54] R. Doc. 280-7.
[55] Id. at 7.
[56] Id.

transport container depicted in IsoRad's drawings has the same dimensions as Plaintiffs' Aspect Container and because IsoRad does not have test reports and design analyses for the materials selected to support its "mature" design, "IsoRad had a template of a mature design, perhaps one that had been misappropriated from SPEC."[57]

Jacobi includes charts in his report that compare side-by-side the dimensions of IsoRad's container and the Aspect Container. Although the numbers are different, Jacobi opines that the dimensions of the two containers are "virtually identical."[58] Jacobi also opines that IsoRad's "top plate-*square*" is "virtually identical" to Plaintiffs' "slant-*ring*" because they "share similar geometry and dimensions."[59] Jacobi opines that "there are no publicly available SPEC drawings or specifications that could have provided the degree of detail required to replicate the Aspect 12 container and inner shields" and "[i]t is not reasonable that the design for [IsoRad's] container can go from conceptual design to production drawings in less than 6 months."[60] Jacobi admits, though, that the dimensional tolerances of the component parts of the two devices are different.[61]

Jacobi's opinion that IsoRad's container designs are evidence of trade-secret misappropriation is based on the flawed premise that IsoRad's container designs are mature production drawings. There is no evidence in the record to support this assumption. Indeed, it is contradicted by IsoRad's deposition testimony that the drawings are preliminary, not finalized production drawings, which explains why there are no test reports or design analyses.[62] Further, Jacobi's opinion that IsoRad's container drawings must have been misappropriated because they are "virtually identical" to the Aspect Container drawings is belied by a comparison of the

---

[57] *Id.* at 8-9.
[58] *Id.* at 9-15.
[59] *Id.* at 13 (emphasis added).
[60] *Id.* at 17.
[61] *Id.* at 7-8.
[62] R. Doc. 290-2 at 13.

publicly-available information on eight other radioactive material transport containers, which shows that all such devices have microscopically similar dimensions.[63]  There is nothing so strikingly similar about the IsoRad drawings and the Aspect Container drawings to suggest that trade-secret misappropriation was the only way that IsoRad could have created its drawings considering all of the publicly-available information about similar devices.

Jacobi's opinion is thus grounded on a faulty premise – namely, that IsoRad's drawings are mature designs – as well as the faulty assumption that Schehr retained a copy of Plaintiffs' drawings notwithstanding his uncontradicted sworn statement that he did not.[64]  "[T]he factual predicate of an expert's opinion must find some support in the record, and … mere 'theoretical speculations' lacking a basis in the record will not create a genuine issue of fact. … Moreover, where an expert's opinion is predicated on factual assumptions, those assumptions must also find some support in the record." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (citing *Penn. Dental Ass'n v. Med. Serv. Ass'n*, 745 F.2d 248, 262 (3d Cir. 1984); *Shaw v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990)).  Because Jacobi's opinions are predicated on facts and assumptions that are not supported by the summary-judgment record, they are not sufficiently probative as to create a genuine issue of material fact.  *Borges ex rel. S.M.B.W v. Serrano-Isern*, 605 F.3d 1, 8 (1st Cir. 2010).  There is no evidence to support Plaintiffs' allegation that Schehr and the other Defendants used Plaintiffs' drawings to create IsoRad's.  Therefore, IsoRad, IUSA, and McKannay's motions for summary judgment on Plaintiffs' trade-secret misappropriation claims (R. Docs. 162 & 163) are GRANTED with respect to the alleged trade secret (b), and such trade-secret misappropriation claims are DISMISSED WITH PREJUDICE.

---

[63] R. Doc. 280-11 at 5.
[64] R. Doc. 162-5 at 5.

### 3. Damages

DTSA and LUTSA both provide for damages and injunctive relief. As to damages, both statutes provide that a plaintiff may recover damages for the actual loss caused by the misappropriation of the trade secret, as well as damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss. 18 U.S.C. § 1836(b)(3)(B)(i); La. R.S. 51:1433.[65] For a plaintiff to recover damages on a trade-secret misappropriation claim, "[t]he defendant must have actually put the trade secret to some commercial use [because] [t]he law governing protection of trade secrets essentially is designed to regulate unfair business competition, and is not a substitute for criminal laws against theft or other civil remedies for conversion." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974).

A court may also grant injunctive relief, either in lieu of or in addition to damages, to prevent an actual or threatened misappropriation of a trade secret on terms that the court deems reasonable. 18 U.S.C. § 1836(b)(3)(A); La. R.S. 51:1432. DTSA further specifies that a court cannot enjoin "a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows," nor can an injunction "otherwise conflict with an applicable State law prohibiting restraints on the practice of a lawful profession, trade, or business." 18 U.S.C. § 1836(b)(3)(A). Indeed, a former employee necessarily uses in his new employment his memory, experience, expertise, and skills developed during his former

---

[65] DTSA permits a plaintiff to recover exemplary damages in an amount not more than two times the amount of any general damages awarded if the trade secret is willfully and maliciously misappropriated. 18 U.S.C. § 1836(b)(3)(C). Further, both federal and Louisiana trade-secret misappropriation law provides for an award of attorney's fees if the trade secret is willfully and maliciously misappropriated. 18 U.S.C. § 1836(b)(3)(D); La. R.S. 51:1434.

employment, which is permitted under the law. *JJ Plank Co., LLC v. Bowman*, 2018 WL 4291751, at *9 (W.D. La. Sept. 7, 2018) (citations omitted).

Plaintiffs admit that they have no evidence to demonstrate that Schehr used commercially any of the allegedly misappropriated trade secrets related to the HDR Afterloader Sources. Further, as explained above, there is no evidence that Schehr used commercially any of Plaintiffs' purported trade-secret design drawings, especially considering that IsoRad's drawings are in the beginning stages, not final production drawings. As such, Plaintiffs have no evidence of damages related to either of Schehr's alleged misappropriation of Plaintiffs' as-yet undismissed trade secrets.

The costs Plaintiffs incurred to obtain a forensic analysis of Schehr's SPEC-issued laptop are not damages compensable under DTSA or LUTSA. The DTSA and LUTSA provide for damages for the actual loss caused by trade-secret misappropriation, which requires commercial use. *Univ. Computing*, 504 F.2d at 539. Forensic analysis of a computer is not a loss caused by commercial use. Thus, Plaintiffs are not entitled to any damages, compensatory or exemplary, for Schehr's alleged trade-secret misappropriation.

Regardless of the availability of damages, Plaintiffs contend they are entitled to proceed on their trade-secret misappropriation claims to seek an injunction preventing Schehr from using any of the trade secrets that he allegedly misappropriated. It is undisputed that Schehr gave the laptop to his attorney, who returned it to SPEC more than three years ago. Plaintiffs have no evidence that Schehr has personally retained any material containing Plaintiffs' HDR Afterloader Sources trade secrets or the Aspect Container production drawings. The possible exception is information stored on the hard drives that are in the possession of Schehr's counsel, who has agreed to destroy those hard drives at the close of this litigation. Because the Court cannot

enjoin Schehr from using his memory and experience to compete with Plaintiffs, any injunctive relief appears, at this time, to be limited to ensuring the destruction of the hard drives in defense counsel's possession, to the extent they include information related to the HDR Afterloader Sources trade secrets or the Aspect Container production drawings. Because limited injunctive relief may be available to Plaintiffs, Schehr is not entitled to summary judgment on Plaintiffs' trade-secret misappropriation claims related to the HDR Afterloader Sources information or the Aspect Container production drawings for failure to prove damages, and that motion for summary judgment (R. Doc. 155) is DENIED.

### C. LUTPA

LUTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" La. R.S. 51:1405(A). A person who sustains "any ascertainable loss of money or movable property, corporeal or incorporeal" as a result of a LUTPA violation may bring a private action to recover actual damages, and if such damages are awarded, reasonable attorney's fees and costs. *Bihm v. Deca Sys., Inc.*, 226 So. 3d 466, 483 (La. App. 2017) (citing La. RS. 51:1409(A)). To prevail on a LUTPA claim, a plaintiff must prove: (1) it possessed knowledge or information not generally known, (2) communication of this knowledge or information by the plaintiff to the defendant under an express or implied agreement limiting its use or disclosure by the defendant, and (3) use or disclosure by the defendant of the information to the injury of the plaintiff. *Id*. at 482 (citing *Engineered Mech. Servs., Inc. v. Langlois*, 464 So. 2d 329, 334 (La. App. 1984)). Because Plaintiffs have presented no evidence that any of the Defendants used or disclosed the alleged trade secrets, Plaintiffs' LUTPA claims as they relate to trade secrets are DISMISSED WITH PREJUDICE.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment on Plaintiffs' trade-secret misappropriation claims for failure to specify the trade secrets (R. Doc. 140) is GRANTED as to the trade secrets identified by letters (j), (l), (m), and (n), and those claims are DISMISSED WITH PREJUDICE.  The motion is otherwise DENIED.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment on Plaintiffs' trade-secret misappropriation claims for failure to prove misappropriation (R. Docs. 162 & 163) are GRANTED as to the trade secrets identified by letters (a), (f), (g), and (i) and Plaintiffs' claims under DTSA, LUTSA, and LUTPA related to those trade secrets are DISMISSED WITH PREJUDICE.  The IsoRad Defendants' motion (R. Doc. 162) is DENIED as to Schehr with respect to the trade secrets identified by letters (b) and (h).

IT IS FURTHER ORDERED that IsoRad's motion for summary judgment on Plaintiffs' trade-secret misappropriation claims (R. Doc. 162) is GRANTED, and Plaintiffs' DTSA, LUTSA, and LUTPA claims against IsoRad, as related to trade secrets, are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the IUSA Defendants' motion for summary judgment on Plaintiffs' trade-secret misappropriation claims (R. Doc. 163) is GRANTED, and Plaintiffs' DTSA, LUTSA, and LUTPA claims against the IUSA Defendants, as related to trade secrets, are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Schehr's motion for summary judgment on Plaintiffs' trade-secret misappropriation claims for failure to prove damages (R. Doc. 155) is DENIED with respect to alleged trade secrets (b) and (h). The motion was rendered moot as to all other Defendants because the Court found that there is no evidence that they misappropriated any of Plaintiffs' alleged trade secrets.

New Orleans, Louisiana, this 30th day of September, 2019.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE