UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOURCE PRODUCTION &
EQUIPMENT CO., INC., ASPECT
TECHNOLOGY LIMITED,
SPECMED, LLC, SPEC MED
INTELLECTUAL PROPERTY, LLC
AND SPEC INTELLECTUAL
PROPERTY, LLC

CIVIL ACTION

NO. 16-17528

SECTION M (1)

VERSUS

KEVEN J. SCHEHR, ISOFLEX USA,
ISOFLEX RADIOACTIVE LLC,
RICHARD H. MCKANNAY, JR., AND
JOHN DOES 1-10

## **ORDER & REASONS**

Before the Court is a motion by defendant Kevin Schehr for partial summary judgment on the Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030, claims brought by plaintiffs Source Production & Equipment Co., Inc. ("SPEC"), Aspect Technology Limited ("ATL"), Specmed, LLC ("Specmed"), Spec Med Intellectual Property, LLC ("SMIP"), and Spec Intellectual Property, LLC ("SPI") (collectively "Plaintiffs").[1] Plaintiffs respond in opposition,[2] and Schehr replies in further support of the motion.[3] On October 10, 2019, the Court heard oral argument on the motion.[4] Having considered the parties' memoranda, the statements made at oral argument, the record, and the applicable law, the Court finds that Schehr is entitled to summary judgment dismissing Plaintiffs' CFAA claims for injunctive relief and monetary damages related to lost data, but not Plaintiffs' CFAA claim for monetary damage related to the forensic evaluation of the affected computer.

---

[1] R. Doc. 164.
[2] R. Doc. 188.
[3] R. Doc. 227.
[4] R. Doc. 313.

# I.    BACKGROUND[5]

This matter concerns the alleged theft of trade secrets, breaches of fiduciary duty and contract, and violation of the CFAA by a business's former employee. SPEC is a supplier of industrial medical radiography equipment and radioactive isotope materials.[6] Schehr is a former executive of SPEC, who worked at the company in various positions from 1995 until his termination on July 10, 2016.[7] When he was terminated, Schehr did not immediately return his SPEC-issued laptop, and on July 10 and 11, 2016, he downloaded many documents from that laptop onto an external hard drive.[8] On July 13 or 14, 2016, Schehr gave the laptop to his prior counsel who made a copy of the laptop on another external hard drive and then returned the laptop to SPEC on July 18, 2016.[9] Both hard drives have remained in defense counsel's possession since July 2016.[10] Plaintiffs allege that forensic analysis of the computer showed that Schehr attached two external hard drives to the laptop and subsequently deleted 5,086 files from the laptop.[11] Since his termination, Schehr has not had access to the database on which SPEC saves its work instructions and production drawings.[12] In their amended complaint, Plaintiffs alleged that Schehr's post-termination actions involving his SPEC-issued laptop violated the CFAA.[13]

---

[5] A more complete factual background is included in this Court's August 29, 2017 Order & Reasons addressing defendants' motion to dismiss certain claims raised in Plaintiffs' first amended complaint (R. Doc. 53), and this Court's September 30, 3019 Order & Reasons addressing defendants' motion for summary judgment on Plaintiffs' trade secrets claims (R. Doc. 312).

[6] R. Doc. 53 at 1-2.

[7] *Id.* at 2.

[8] R. Doc. 162-5 at 3-4.

[9] *Id.* at 5.

[10] *Id.* at 5-6.

[11] R. Doc. 33 at 36-37.

[12] R. Doc. 162-5 at 4.

[13] R. Doc. 33 at 50-51. At oral argument, Plaintiffs' counsel conceded that Plaintiffs' CFAA claim is limited to Schehr's post-termination actions and does not encompass any pre-termination actions by Schehr.

## II.    PENDING MOTION

Schehr moves for summary judgment on Plaintiffs' CFAA claims arguing that Plaintiffs cannot seek injunctive relief and their damages are limited to the cost of the post-termination forensic examination of the laptop, not including costs attributable to litigation.[14]   Schehr contends that injunctive relief is unavailable to Plaintiffs because the CFAA empowers courts to enjoin a defendant from accessing a plaintiff's computer systems in the future, and Schehr undisputedly no longer has access to Plaintiffs' computer systems.[15]   Schehr argues that the CFAA cannot be used as a surrogate trade-secrets statute to enjoin the use of any improperly accessed information, and even if it could, there is no evidence that Schehr has retained or used any of Plaintiffs' documents obtained from the post-termination download.[16]   With respect to damages, Schehr argues that Plaintiffs have no evidence to support any monetary damages aside from the cost of the post-termination forensic examination, exclusive of litigation costs.[17]

Plaintiffs argue that they are entitled to both injunctive and monetary relief on their CFAA claims.   Although Plaintiffs concede that Schehr no longer has access to their computer systems, they argue that the CFAA should be read to enjoin the use of any information obtained as a result of a CFAA violation.[18]   As to monetary damages, Plaintiffs agree that they are entitled to recover the cost of the forensic examination, but quibble with Schehr over the amount.[19]   Further, Plaintiffs' argue that they should be compensated for the value of the files that Schehr allegedly deleted and made inaccessible to Plaintiffs.[20]   However, Plaintiffs' counsel admitted at oral argument that Plaintiffs have no evidence demonstrating the content of the files that were

---

[14] R. Doc. 164-1.
[15] *Id.* at 9-10.
[16] *Id.*
[17] *Id.* at 15.
[18] R. Doc. 188.
[19] *Id.* at 23-24.
[20] *Id.* at 20-23.

allegedly deleted, the value of such information, or any concrete physical, digital, or monetary loss Plaintiffs' sustained as a result of Schehr's deleting the files.

## III.    ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).  The substantive law identifies which facts are material. *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50;

*Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## B. Computer Fraud Abuse Act

CFAA prohibits unauthorized access to protected computers for the purpose of obtaining information, causing damage, or perpetrating fraud. 18 U.S.C. § 1030(a)(2), (a)(4) & (a)(5). A "protected computer" is "a computer which is used in or affecting interstate or foreign commerce

or communication." *Id.* § 1030(e)(2)(B). Any computer connected to the internet qualifies as a "protected computer." *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 521 (E.D. La. 2018) (collecting cases). The CFAA provides a civil cause of action to obtain compensatory damages and injunctive or other equitable relief to "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA]" if the conduct involves one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). 18 U.S.C. § 1030(g). Those factors include "loss to 1 or more persons during any 1-year period ... aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I).

The CFAA defines "loss" as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

*Id.* at § 1030(e)(11). This definition of loss includes: (1) the reasonable costs incurred in connection with responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages resulting from an interruption of service. *Complete Logistical Servs*, 350 F. Supp. 3d at 522 (citations omitted). "In sum, '[l]oss' includes the direct costs of responding to the violation in the first portion of the definition, and consequential damages resulting rom interruption of service in the second." *Id.* (quotation marks and citation omitted).

### 1. Injunctive Relief

The Supreme Court has explained that "[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Specifically, the "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* (citations omitted). In the context of an alleged CFAA violation, "[t]he scope of injunctive relief is dictated by the extent of the violation established, and an injunction must be narrowly tailored to remedy the specific action necessitating the injunction." *Fiber Sys. Int'l., Inc. v. Roehrs*, 470 F.3d 1150, 1159 (5th Cir. 2006) (quotation marks and citations omitted).

In this case, it is undisputed that Schehr no longer has access to Plaintiffs' computer systems, and there is no danger that he poses a future threat to the security of the systems.[21] Thus, Plaintiffs seek a permanent injunction preventing Schehr from using any of SPEC's proprietary information he may have downloaded from the laptop on July 10 and 11, 2016. This Court can issue such an injunction only if: (1) injunctive relief under the CFAA is available to prohibit the use of information obtained from a past violation of the statute; and (2) Plaintiffs prove that Schehr possesses and has the potential to use Plaintiffs' confidential information obtained from a violation of the statute.

At the district court level in *Fiber Systems International, Inc. v. Roehrs*, 2005 WL 8160776 (E.D. Tex. Mar. 1, 2005), although there was no evidence of the defendants' ongoing or potential future unauthorized access to a protected computer, plaintiff Fiber Systems International, Inc. ("FSI") argued that it continued to suffer "irreparable harm from the defendants' continued possession and use of its information" that defendants obtained from a past violation of the CFAA. *Id.* at 4. The district court denied injunctive relief to FSI holding that "[t]he CFAA definition of damage does not encompass ongoing harm from misuse of

---

[21] At the hearing on the motion, Schehr's counsel acknowledged and affirmed their obligation to destroy the two hard drives at the close of this litigation. Hence, no injunction is required to order relief already in place.

proprietary information obtained in violation of the statute." *Id*. at *5. The district court explained that FSI's theory of the case would turn the CFAA, which is aimed at preventing computer hacking, into a surrogate trade-secrets statute with lower proof requirements than the states' civil remedies for trade-secret misappropriation. *Id.* Further, the district court explained that even under a relatively broad reading of the CFAA, "a plaintiff still must prove it is suffering ongoing unauthorized access, or ongoing damage from prior violations, to be entitled to injunctive relief." *Id.*

On appeal, the Fifth Circuit found that it was unnecessary to "address the question of whether an injunction may issue against the use of the information obtained through a past violation of [the CFAA]." *Fiber Sys., Int'l*, 470 F.3d at 1159. The court explained that FSI sought to enjoin defendants from using FSI's trade secrets that they allegedly obtained by violation the CFAA and the jury determined that defendants did not steal any trade secrets; thus, "the requested injunction would be improper under the CFAA." *Id.*

Like FSI, Plaintiffs here seek to use the CFAA to enjoin Schehr from using trade secrets that he allegedly obtained by violating the statute. Assuming, without deciding, that the CFAA authorizes a court to enjoin the future use of improperly obtained information, such an injunction would be improper in this case because Plaintiffs have not proved that Schehr possesses and has the potential to use Plaintiffs' confidential information obtained from a CFAA violation. It is undisputed that Schehr gave the laptop to his attorney, who returned it to SPEC more than three years ago. Plaintiffs have no evidence that Schehr has personally retained any of their confidential information. Schehr's attorneys possess the hard drives and have stated on the record multiple times that they will destroy those hard drives at the close of this litigation. Schehr is bound by his attorneys' representations that he will never again posses the information he downloaded in July 2016. *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (observing

that in "our system of representative litigation … each party is deemed bound by the acts of his lawyer-agent"). Therefore, there is no threat of future access or use to enjoin, so Plaintiffs are not entitled to injunctive relief under the CFAA.

## 2. Monetary Damages

Plaintiffs seek to recovery two type of monetary damages related to Schehr's alleged CFAA violation: (1) approximately $33,000 in damages that Plaintiffs contend are related to the forensic evaluation of the laptop; and (2) compensatory damages related to the loss of information that Schehr allegedly deleted. Schehr concedes that the costs of the forensic evaluation are recoverable under the CFAA, but argues that the amount is not more than $12,776.62, because the other costs Plaintiffs seek are not recoverable since they are not related to him or are properly classified as litigation costs. Because there is a genuine issue of material fact regarding the amount recoverable, Schehr's motion for summary judgment is denied as to monetary damages related to the forensic examination. But Schehr is entitled to summary judgment with respect to damages related to allegedly lost information. Plaintiffs have presented no evidence on this summary judgment record demonstrating the nature of the data they allegedly lost, the value of that data, or any monetary damages that they sustained as a result of that alleged loss. The best they came up with was that it could have happened, which, of course, is speculative and certainly not enough to withstand summary judgment.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Schehr's motion for partial summary judgment seeking dismissal of Plaintiffs' CFAA claims (R. Doc. 164) is GRANTED as to Plaintiffs' claim for injunctive relief and monetary damages for allegedly lost data. The motion is DENIED as to Plaintiffs' claim for monetary damages related to the forensic evaluation of the laptop.

New Orleans, Louisiana, this 23rd day of October, 2019.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE