UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SOURCE PRODUCTION & EQUIPMENT CO., INC., ASPECT TECHNOLOGY LIMITED, SPECMED, LLC, SPEC MED INTELLECTUAL PROPERTY, LLC AND SPEC INTELLECTUAL PROPERTY, LLC | CIVIL ACTION<br><br>NO. 16-17528<br><br>SECTION M (1) |
| VERSUS | |
| KEVEN J. SCHEHR, ISOFLEX USA, ISOFLEX RADIOACTIVE LLC, RICHARD H. MCKANNAY, JR., AND JOHN DOES 1-10 | |

## ORDER & REASONS

Before the Court are two motions by defendant Kevin Schehr for partial summary judgment on the fraud, breach of legal duties, and Louisiana Unfair Trade Practices Act ("LUTPA") claims brought against him by plaintiffs Aspect Technology Limited ("ATL"), Specmed, LLC ("Specmed"), Spec Med Intellectual Property, LLC ("SMIP"), and Spec Intellectual Property, LLC ("SPI") (collectively "Plaintiffs").[1] Plaintiffs respond in opposition,[2] and Schehr replies in further support of the motions.[3] On October 10, 2019, the Court heard oral argument on the motions.[4] Having considered the parties' memoranda, the statements made at oral argument, the record, and the applicable law, the Court finds that Schehr is entitled to summary judgment dismissing Plaintiffs' fraud, breach of legal duties, and LUTPA claims related to the shipment and labeling of the Strontium-89 ("Sr-89"), Schehr's 2015 bonus, and Schehr's cashing in of his paid time off ("PTO").

---

[1] R. Docs. 152 & 160.
[2] R. Doc. 190.
[3] R. Docs. 231 & 233.
[4] R. Doc. 313.

## I. BACKGROUND[5] & PENDING MOTIONS

This matter concerns the alleged theft of trade secrets, breaches of fiduciary duty and contract, fraud, and other wrongs allegedly committed by a business's former employee. SPEC is a supplier of industrial medical radiography equipment and radioactive isotope materials.[6] SPEC is an S-corporation that is wholly owned by Richard Dicharry and his wife.[7] Schehr is a former executive of SPEC, who was hired in 1995 and worked in various positions during his tenure with the company.[8] From 2008, until his termination on July 10, 2016, Schehr was SPEC's vice president and an officer of the other plaintiff companies.[9] The facts pertinent to the pending motions involve three discrete events: (1) a shipment of liquid Sr-89; (2) Schehr's 2015 bonus; and (3) Schehr's cash-in of PTO.[10]

### A. The Sr-89 Shipment

On November 20, 2014, Richard McKannay, the managing director of Isoflex USA ("IUSA"), wrote to Schehr to propose a business opportunity for SPEC and/or Specmed regarding Sr-89.[11] McKannay explained that IUSA was interested in importing Sr-89 to the United States from Russia using SPEC's Louisiana radioactive materials ("RAM") license and listing SPEC as the end-user on the Russian forms, relabeling the Sr-89 as a product of the U.S.A., and re-exporting it to China.[12] IUSA would act as SPEC's forwarding agent and handle

---

[5] A more complete factual background is included in this Court's August 29, 2017, Order & Reasons addressing defendants' motion to dismiss certain claims raised in Plaintiffs' first amended complaint (R. Doc. 53), and this Court's September 30, 3019 Order & Reasons addressing defendants' motion for summary judgment on Plaintiffs' trade secrets claims (R. Doc. 312).
[6] R. Doc. 53 at 1-2.
[7] R. Doc. 160-1 at 2 & 9.
[8] R. Doc. 53 at 2.
[9] R. Doc. 152-1 at 2.
[10] In their opposition memorandum Plaintiffs discuss Schehr's use of SPEC's line of credit to fund operating expenses as another act of deception and concealment by Schehr. R. Doc. 190 at 9-10. However, Schehr's supposed improper use of SPEC's line of credit is not identified in the operative complaint as a specific act forming the basis for Plaintiffs' fraud or breach of fiduciary duty claim, so can hardly be said to have been pleaded with the requisite degree of particularity or notice. *See* R. Doc. 33 at 52-5 & 57-59. Thus, the Court will not discuss the line of credit as the basis of a separate claim.
[11] R. Doc. 152-6 at 28-30.
[12] *Id.*

the sourcing, sales coordination, and collection, and would pay up-front any fees related to amending SPEC's RAM license.[13] McKannay stated that he thought this would provide a "straight forward revenue stream [to SPEC] allowing it to leverage on its RAM licensing absent any offsetting expenses."[14] He proposed that IUSA would pay SPEC a minimum of $5,000 per month, and possibly more, based on a proposed formula.[15] That same day, Schehr forwarded McKannay's email to John Munro, who was a vice president of SPEC and Specmed, asking Munro to look at the proposal and "see if it is something we [*i.e.*, SPEC and Specmed] may want to do."[16]

On December 18, 2014, Kelley Richardt, SPEC's regulatory manager, updated SPEC's RAM license to permit SPEC to distribute approved seal sources, unsealed pellets, and special form Sr-89.[17] At Schehr's request, on March 4, 2015, Richardt sent IUSA the updated version of SPEC's RAM license.[18]

On May 16, 2015, McKannay emailed Nathan Gorbach, SPEC's shipping manager, with instructions for the upcoming test shipment of Sr-89.[19] Schehr and Munro were copied on the email.[20] On May 26, 2015, Patrick Hardy of IUSA emailed Schehr and Munro informing them that the Sr-89 test shipment departed from Russia and was due to arrive in New Orleans on May 28, 2015.[21]

On May 28, 2015, Steven Johnson of SPEC issued a product testing report finding that SPEC's Type-A liquid package container met all requirements for transporting the Sr-89.[22] That

---

[13] *Id.*
[14] *Id.* at 29.
[15] *Id.* at 30.
[16] R. Docs. 152-6 at 31 & 36-43.
[17] R. Doc. 152-5 at 33-40.
[18] R. Doc. 152-6 at 35-43.
[19] *Id.* at 52-54.
[20] *Id.*
[21] *Id.* at 55-56.
[22] *Id.* at 62-66.

3

same day, Richardt asked Schehr whether the Sr-89 was in a liquid form and for information about its sealed source.[23] Schehr confirmed to Richardt that the Sr-89 was in liquid form and that the Type-A package was tested for normal conditions.[24] Richardt responded that SPEC's RAM license allowed for the shipment of Sr-89 in the form of "sealed sources, unsealed pellets and special form."[25]

On June 2, 2015, McKannay emailed to Gorbach, copying Schehr and Munro, a product specification certification for the liquid Sr-89 for Richardt to sign.[26] Richardt signed the form and Gorbach emailed it back to IUSA on June 5, 2015.[27] On June 16, 2015, Richardt requested that SPEC's RAM license be updated to allow for the possession of Sr-89 in liquid or normal form.[28]

After Scheher was terminated in July 2016, SPEC made self-disclosures related to the transportation of the liquid Sr-89, one to the United States Census Bureau and the other to the Nuclear Regulatory Commission ("NRC").[29] On March 3, 2017, the Census Bureau wrote to SPEC informing it that the case was closed and that SPEC's filing of incorrect electronic export information was "due to personnel oversight and a misinterpretation of the definitions of 'domestic' and 'foreign' described in the Foreign Trade Regulations."[30] On November 16, 2018, the NRC wrote to SPEC and informed SPEC that the NRC viewed the importation of the Sr-89 from Russia to be a significant violation constituting an "escalated enforcement action that may subject [SPEC] to increased inspection effort."[31] The NRC did not impose any civil penalties

---

[23] *Id.* at 61.
[24] *Id.* at 60.
[25] *Id.*
[26] R. Doc. 152-7 at 8-15.
[27] *Id.* at 16-25.
[28] *Id.* at 36.
[29] R. Doc. 33 at 41-42.
[30] R. Doc. 152-7 at 46.
[31] *Id.* at 47-48.

4

because SPEC had a clean record for two years, but informed SPEC that any future significant violations could result in a civil penalty.[32]

The foregoing facts are not in dispute.

Plaintiffs allege that Schehr's involvement in the Sr-89 deal constituted a breach of fiduciary duty by Schehr, "exposing SPEC to significant regulatory risk which SPEC is mitigating with two separate voluntary self-disclosure filings since Schehr's termination."[33] Schehr argues that he is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim related to the Sr-89 deal.[34] First, Schehr argues that the claim is prescribed because other members of SPEC and Specmed's managements teams, namely Munro and Richardt, knew about the plan more than two years before this suit was filed.[35] Schehr also argues that the claim lacks merit because Richardt, as the regulatory manager who reported directly to Dicharry, was responsible for ensuring regulatory compliance.[36] Further, Schehr argues that Plaintiffs have not, and cannot, demonstrate that they sustained any damages related to the Sr-89 because the regulatory investigations were closed without the imposition of any penalties.[37]

Plaintiffs argue that the claim is not prescribed because they did not know about Schehr's alleged misdeeds until after he was terminated.[38] Plaintiffs also argue that Schehr was Richardt's supervisor and Plaintiffs had to retain counsel to deal with the regulatory violations, for which they could have been, and still might be, subjected to fines.[39]

---

[32] *Id.*
[33] R. Doc. 33 at 52-23.
[34] R. Doc. 152.
[35] R. Doc. 152-1 at 20-21.
[36] *Id.* at 21-22.
[37] *Id.* at 22.
[38] R. Doc. 190 at 23.
[39] *Id.* at 23-24.

### B. Schehr's 2015 Bonus

SPEC's fiscal year ran from October 1 to September 30.[40] Throughout the year, SPEC's internal accounting department would prepare monthly financial summaries explaining the company's financial picture for that month and year-to-date.[41] Schehr would review and approve each summary, but he never changed any summary.[42] Thereafter, SPEC's director of finance and administration, Michael Sanchez, would leave the financial summary on Dicharry's office chair in an envelope marked "confidential."[43] Dicharry, on occasion, personally approached Sanchez to request current company financials, which Sanchez would provide to him upon request.[44] Sanchez never denied Dicharry access to SPEC's financial information.[45]

Toward the end of each fiscal year, Schehr requested a bonus from Dicharry based on SPEC's financial performance, which Dicharray had the discretion to approve in whatever amount he saw fit.[46] Thus, in September of both 2013 and 2014, Schehr had requested and was paid a bonus based on financial statements prepared by SPEC's accounting department in the month of September.[47] On November 6, 2015, Schehr emailed Dicharray to request a bonus for the 2015 fiscal year. Using a SPEC profit and loss ("P&L") statement generated by SPEC's accounting department on September 25, 2015, Schehr represented that SPEC earned profits of $1,347,380 for the 2015 fiscal year and requested a bonus of $67,250, which represented 5% of profits.[48]

The foregoing facts are undisputed.

---

[40] R. Doc. 33 at 29.
[41] R. Doc. 160-5 at 4-8.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] R. Doc. 33 at 29-30.
[47] R. Doc. 160-5 at 1-2, 48-53.
[48] *Id.* at 65-77.

SPEC alleges that Schehr's bonus request based on the September 25, 2015 P&L statement constituted a breach of fiduciary duty and fraud because there were more up-to-date financial statements showing lower profits on which Schehr should have based his bonus request.[49] Schehr argues that he is entitled to summary judgment on Plaintiffs' breach of fiduciary duty and fraud claims related to his 2015 bonus because the claims are prescribed and meritless. Schehr argues that he was unaware of the other P&L statements, and believed that he had relied on the most recent financial data in requesting the bonus.[50]

Plaintiffs argue that the claims are subject to a two-year prescriptive period because they are based on Schehr's alleged intentional misrepresentation, of which Dicharry was not aware until after Schehr's termination in July 2016.[51] Because Schehr received more recent financial statements before making his 2015 bonus request, Plaintiffs further argue that Schehr intentionally misrepresented the financial situation to secure a larger bonus and that Dicharry reasonably relied on Schehr, which Schehr knew he would because Dicharry was semi-retired.[52]

### C. Schehr's Cash-In of PTO

In 2016, Schehr, a 20-year employee of SPEC, was earning 14.7 hours of PTO per month in accordance with SPEC's policy outlined in its employee handbook.[53] Pursuant to SPEC's employee handbook, an employee could "cash in" unused PTO hours in excess of two days by notifying SPEC's comptroller of the election.[54] At the beginning of 2016, Schehr had "banked" approximately 602.16 PTO hours.[55] In April and June of 2016, Schehr opted to cash in 160 hours of accrued PTO in the amount of $12,307.68.

The foregoing facts are undisputed.

---

[49] R. Doc. 33 at 31-33, 52-54 & 57-59.
[50] R. Doc. 160-1 at 7.
[51] R. Doc. 190 at 15-17.
[52] *Id.* at 18-20.
[53] R. Doc. 160-5 at 17-19.
[54] *Id.* at 20.
[55] *Id.* at 123-27.

Plaintiffs allege that Schehr's cash-in of accrued PTO was a breach of fiduciary duty and fraud because Schehr denied the benefit to other employees in the same time frame.[56] Schehr argues that he is entitled to summary judgment dismissing Plaintiffs' breach of fiduciary duty and fraud claims related to cashing in his accrued PTO because the accrued PTO was an earned benefit and the cash-in was done in compliance with company policy.[57] Schehr also argues that there is no evidence that he cashed in his PTO with any intention to harm SPEC.[58] Plaintiffs argue that summary judgment is not warranted because there remain disputed issues of fact about whether Schehr acted in bad faith by cashing in his PTO when SPEC was in a financially precarious position.[59]

## II. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the

---

[56] R. Doc. 33 at 52-54 & 57-59. Plaintiffs also allege that Schehr fraudulently inflated his PTO to obtain compensation to which he was not entitled. But Plaintiffs have submitted no evidence on this summary-judgment record to prove that Schehr inflated his accrued PTO.
[57] R. Doc. 160-1 at 21.
[58] *Id*. at 22.
[59] R. Doc. 190 at 21.

moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some

metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Prescription

The prescriptive periods for Plaintiffs' claims against Schehr as an officer and member of SPEC are set forth in La. R.S. 12:1502. Pursuant to section 1502(C), there is a one-year prescriptive period for any action for a corporate officer's breach of fiduciary duty that begins to run at the later of "the date of the alleged act, omission, or neglect" or "the date that the alleged act, omission, or neglect is discovered or should have been discovered," but such an action may not "be brought more than three years from the date of the alleged act, omission, or neglect." However, section 1502(D) provides a two-year prescriptive period for any action for a corporate officer's intentional tortious misconduct, intentional breach of a duty of loyalty, or acts or omission committed in bad faith or involving fraud that begins to run from the later of "the date of the alleged act or omission" or "the date the alleged act or omission is discovered or should have been discovered," but such an action shall not be brought more than three years from the date of the alleged act or omission.

Assuming, without deciding, that the two-year prescriptive period of section 1502(D) applies, as opposed to a one-year period, plaintiffs' breach of fiduciary duty and fraud claims related to the Sr-89 deal are prescribed. This suit was filed on December 16, 2016, and Plaintiffs knew or should have known about the pertinent alleged acts or omissions more than two years prior to that date. It is undisputed that Schehr forwarded McKannay's initial email to Munro on

November 20, 2014. Munro was a vice president and officer of SPEC and Specmed, whose knowledge can be imputed to these plaintiff entities. Thus, Plaintiffs' breach of fiduciary duty and fraud claims concerning the Sr-89 deal are prescribed.[60]

**C. Breach of Fiduciary Duty, LUTPA & Fraud**

Plaintiffs allege Schehr breached a fiduciary duty owed to them, violated LUTPA, and committed fraud with respect to the manner in which he requested his bonus in 2015 and his cash-in of accrued PTO in 2016.

Under Louisiana law, to establish a breach of fiduciary duty claim a plaintiff must demonstrate: "(1) existence of a fiduciary duty, (2) a violation of that duty by the fiduciary, and (3) damages resulting from the violation." *U.S. Small Bus. Admin. v. Beaulieu*, 75 F. App'x 249, 252 (5th Cir. 2003) (citations omitted). "[W]hether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties." *Omega Ctr. for Pain Mgmt., L.L.C v. Omega Inst. of Health, Inc.*, 975 So. 2d 48, 51 (La. App. 2007).

An employee owes a duty of fidelity to his employer. *ODECO Oil & Gas Co. v. Nunez*, 532 So. 2d 453, 462 (La. App.1988). "An employee is duty bound not to act in antagonism or opposition to the interest of the employer." *Harrison v. CD Consulting, Inc.*, 934 So. 2d 166, 170 (La. App. 2006). A person "who is under contract or other legal obligation to represent or act for another in any particular business or line of business must be loyal and faithful to the interest of such other in respect to such business or purpose." *Id.* (citing *Boncosky Services, Inc. v. Lampo*, 751 So. 2d 278, 287 (La. App. 1999)). Generally, "an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has

---

[60] With respect to Plaintiffs' breach of fiduciary duty and fraud claims related to Schehr's 2015 bonus, Schehr argues that the one-year prescriptive period applies, whereas Plaintiffs advocate for the two-year prescriptive period. The Court will not address which prescriptive period applies because Schehr is entitled to summary judgment on the merits of these claims.

11

engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit." *Id.* (citations omitted). "Therefore, the question of whether or not an employee has breached his or her fiduciary duty is necessarily folded into the question of whether or not an employee has acted in violation of LUTPA." *Global Oil Tools, Inc. v. Barnhill*, 2012 WL 5866139, at *15 (E.D. La. Nov. 19, 2012) (citing *Restivo v. Haner Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 534 (E.D. La. 2007)).

LUTPA provides a civil cause of action to recover actual damages to "[a]ny person who suffers any ascertainable loss of money or movable property … as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. R.S. 51:1409. Section 1405(A) declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Courts determine "on a case-by-case basis" what conduct constitutes an "unfair trade practice" and "have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1059 (La. 2010) (holding that actions of employees did not fall within ambit of LUTPA) (quotation, ellipsis, and citations omitted). A trade practice that amounts to fraud, deceit, or misrepresentation is "deceptive" for purposes of LUTPA. *Total Safety v. Rowland*, 2014 WL 6485641, at * 4 (E.D. La. Nov. 18, 2014) (citations omitted).[61]

---

[61] Additionally, "LUTPA recognizes a claim for breach of fiduciary duty that rests on the misappropriation of information that is confidential but not a trade secret." *CheckPoint Fluidic Sys. Int'l Ltd. v. Guccione*, 888 F. Supp. 2d 780, 795 (E.D. La. 2012) (citing *Defcon, Inc. v. Webb*, 687 So. 2d 639, 642-43 (La. App. 1997)). An employer may recover under LUTPA when "'a former employee breaches his duty not to use his former employer's confidential information.'" *Id.* (quoting *L-3 Commc'ns Westwood Corp. v. Robichaux*, 2008 WL 577560, at *5 (E.D. La. Feb. 29, 2008)). To prevail on a breach of fiduciary duty claim based on a breach of confidence, a plaintiff must prove: (1) that it possesses knowledge or information that is not generally known; (2) that it communicated the knowledge or information to the defendant under an express or implied agreement limiting the defendant's use or disclosure of the information; and (3) that the defendant used or disclosed the knowledge or information in violation of the confidence, to the injury of the plaintiff. *Defcon*, 687 So. 2d at 643 (citing *Engineered Mech. Servs., Inc. v. Langlois*, 464 So. 2d 329, 334 (La. App. 1984)). Plaintiffs' LUTPA claims against Schehr concerning his alleged improper use of confidential information are not addressed in the motions presently

Similarly, Louisiana Civil Code article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." To succeed on a claim of fraudulent misrepresentation the plaintiff must prove: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Agrifund, LLC v. Radar Ridge Planting Co.*, --- So. 3d ---, 2019 WL 2311212, at *8 (La. App. July 17, 2019) (holding that allegations of fraud were insufficient) (citations omitted).

Plaintiffs cannot prevail on their breach of fiduciary duty, LUTPA, or fraud claims related to Schehr's 2015 bonus because they cannot prove that Schehr was dishonest or that Dicharry justifiably relied on Schehr's representation. When Schehr requested from Dicharry his bonus for the 2015 fiscal year, Schehr used a September 25, 2015 P&L statement produced by SPEC's accounting department. It is undisputed that Schehr did not alter the statement and provided a copy of it to Dicharry. Plaintiffs argue that Schehr had access to and should have used a more recent P&L statement that reflected lower profits. Schehr claims that he was unaware of the newer P&L statements, and thus did not intend to deceive Dicharry by using the September 25, 2015 P&L statement. Indeed, Schehr was following the same procedure as was used in years past when he would request his bonus using unaudited financial information from the end of the fiscal year, including, particularly, a September P&L prepared by SPEC's accounting department. Thus, Plaintiffs have presented no evidence, only suppositions, on this summary-judgment record that Schehr intended to deceive Dicharry in making the request for his 2015 bonus.

However, even if Schehr were aware of the other P&L statements, Dicharry did not justifiably rely on any *sub silentio* intimation by Schehr that the September 25, 2015 P&L

---

before the Court, and this Court has already dismissed Plaintiffs' LUTPA claims related to trade secrets (R. Doc. 312).

statement was the most recent one. Dicharry, as the owner of the company, had unfettered access to the company's financial information and could have requested updated P&L statements at any time. Sanchez testified that he always provided Dicharry with copies of the P&L statements; thus, Dicharry presumably had the newer statements when Schehr requested the bonus. Further, Dicharry could have requested updated statements from Sanchez if he had any concern that Schehr was not using the most updated numbers in his bonus request. Moreover, Dicharry was aware that Schehr's bonus requests in past years had been based on interim, unaudited P&L statements produced in September, so in 2015, when the bonus request was delayed to November, Dicharry could have asked for a November P&L had he desired to deviate from the company's past practice of using a September P&L for calculating Schehr's bonus. For these reasons, Plaintiffs cannot prevail on their breach of fiduciary duty, LUTPA, and fraud claims related to Schehr's 2015 bonus, and Schehr is entitled to summary judgment on these claims.

Further, Plaintiffs cannot prevail on their breach of fiduciary duty, LUTPA, or fraud claims related to Schehr's cashing in his accrued PTO because Schehr did not misrepresent any facts in connection with the transaction. Schehr had more than 600 hours of accrued PTO and cashed in 160 hours of it. These numbers are supported by SPEC's documents. Plaintiffs complain that Schehr did not inform Dicharry that he was cashing in his PTO, but the employee handbook states that he had to inform the comptroller, not Dicharry. Although Plaintiffs insinsuate that SPEC was in a precarious financial position and Schehr should not have cashed in his PTO because he was not allowing other employees to do so, there is no evidence on this summary-judgment record to support Plainitffs dire assertions (1) that SPEC was in a precarious financial condition,[62] or (2) that other employees could not cash in their accrued PTO by

---

[62] Plaintiffs' citation of Schehr's testimony about using a line of credit to cover operating expenses and timing payments to certain suppliers and vendors is inadequate to raise the specter that SPEC's financial condition

14

following the company procedure outlined in the employee handbook. Regardless, Plaintiffs point to no authority to establish that cashing in the earned benefit of PTO even in such circumstances rises to the level of a breach of duty, a deceptive practice, or fraud. Thus, Plaintiffs have presented no evidence on this summary-judgment record to show that Schehr breached a fiduciary duty, violated LUTPA, or committed fraud in connection with cashing in his accrued PTO, and Schehr is entitled to summary judgment on these claims.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Schehr's motion for partial summary judgment seeking dismissal of Plaintiffs' breach of fiduciary claim related to the Sr-89 deal (R. Doc. 152) is GRANTED and that claim is dismissed with prejudice.

IT IS FURTHER ORDERED that Schehr's motion for partial summary judgment seeking dismissal of Plaintiffs' breach of fiduciary duty, intentional misrepresentation, and fraud claims related to his 2015 bonus and cashing in his PTO (R. Doc. 160) is GRANTED, and those claims are dismissed with prejudice.[63]

New Orleans, Louisiana, this 1st day of November, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

was precarious. Instead, these business practices are common tools for navigating business cycles, and no other evidence indicates that SPEC's business fortunes were unusual in any way.

[63] Schehr also moves for summary judgment on these claims to the extent they are based on theories of unjust enrichment and disgorgement. R. Doc. 160-1 at 23-24. Plaintiffs do not address this in their opposition. *See* R. Doc. 190. Therefore, these claims are deemed abandoned and are DISMISSED with prejudice.