UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOURCE PRODUCTION &
EQUIPMENT CO., INC., ASPECT
TECHNOLOGY LIMITED,
SPECMED, LLC, SPEC MED
INTELLECTUAL PROPERTY, LLC
AND SPEC INTELLECTUAL
PROPERTY, LLC

CIVIL ACTION

NO. 16-17528

SECTION M (1)

VERSUS

KEVIN J. SCHEHR, ISOFLEX USA,
ISOFLEX RADIOACTIVE LLC,
RICHARD H. MCKANNAY, JR., AND
JOHN DOES 1-10

## ORDER & REASONS

Before the Court is a supplemental motion by defendants Isoflex USA ("IUSA") and Richard H. McKannay, Jr. ("McKannay") for summary judgment on plaintiffs' Louisiana Unfair Trade Practices Act ("LUTPA") claim against them.[1] Plaintiffs Source Production & Equipment Co., Inc. ("SPEC"); Aspect Technology Limited; SpecMed, LLC; Spec Med Intellectual Property, LLC; and SPEC Intellectual Property, LLC (collectively, "Plaintiffs") respond in opposition.[2] IUSA and McKannay reply in further support of the motion.[3] Also before the Court is SPEC's final motion for partial summary judgment on IUSA's counterclaim (except as to the BDX commission).[4] IUSA responds in opposition,[5] and SPEC replies in further support of the

---

[1] R. Doc. 326.
[2] R. Doc. 334.
[3] R. Doc. 351.
[4] R. Doc. 322. Plaintiff's final motion for partial summary judgment was also directed at claims between Plaintiffs, defendants Kevin J. Schehr and Isoflex Radioactive, LLC, and counterclaim defendant Sandra Kusy. Because those parties have reached a settlement (R. Doc. 345), the motion is moot as to the issues involving those parties.
[5] R. Docs. 330 & 332.

1

motion.⁶ Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motions.

I.   **BACKGROUND**

The crux of this matter concerned the alleged theft of trade secrets and confidential information, and breaches of fiduciary duty and contract, by Plaintiffs' former employee, Kevin J. Scheher, and Scheher's alleged use of the trade secrets and confidential information, in concert with IUSA and McKannay, to compete with Plaintiffs. The Court summarized the factual background of this case in a prior ruling on Defendants' motion to dismiss certain claims raised in Plaintiffs' first amended complaint:⁷

> Source Production & Equipment Co., Inc. ("SPEC") and its affiliates bring this trade-secret misappropriation and unfair competition action against Kevin J. Schehr, IsoflexUSA, Isoflex Radioactive LLC ["IsoRad"], and Richard McKannay, Jr. SPEC is a supplier of industrial and medical radiography equipment and radioactive isotope materials. Schehr is a former executive officer at SPEC. According to the complaint, Schehr began working for SPEC in 1995 and held various positions at the company until his termination in July of 2016. Plaintiffs allege that over the course of his employment, Schehr signed several confidentiality agreements regarding SPEC's trade secrets. These trade secrets include technologies used to manufacture containers for shipping radioactive material.
>
> According to the complaint, Schehr unsuccessfully attempted to acquire an ownership interest in SPEC in 2012 and 2014. Plaintiffs further allege that Schehr's resentment toward SPEC and its owner, Richard Dicharry, following these attempts prompted Schehr to engage in conduct intended to undermine SPEC and benefit Schehr and others affiliated with Schehr. To this end, Schehr allegedly made several misrepresentations to Dicharry that he knew to be false, caused SPEC to default on the terms of a sale agreement, negotiated business contracts against Dicharry's wishes, filed for and claimed ownership rights to patents developed using SPEC's resources, and provided false financial information in order to inflate his personal bonuses, among several other alleged transgressions.

---

⁶ R. Doc. 349.
⁷ This matter was initially assigned to a different section of this Court but was realloted to this section upon confirmation of the undersigned.

> SPEC terminated Schehr's employment on July 10, 2016. Plaintiffs allege that after his termination, Schehr did not immediately return his company-issued laptop, despite SPEC's demand that he do so. Plaintiffs further allege that once the laptop was returned, a forensic analysis revealed that Schehr emailed a number of SPEC's confidential and proprietary files to his personal email accounts. According to plaintiffs, the analysis also showed that minutes after his termination, Schehr attached two external hard drives to the laptop and subsequently deleted 5,086 files from the laptop. Plaintiffs allege that Schehr continues to possess other storage media belonging to SPEC, including thumb drives and CDs.
>
> Finally, plaintiffs allege that both before and after his termination, Schehr conspired with Isoflex USA and McKannay, the managing director of Isoflex USA, to establish Isoflex Radioactive. Plaintiffs allege that in creating Isoflex Radioactive, defendants misappropriated plaintiffs' trade secrets and confidential information. This misappropriation, according to plaintiffs, will allow Isoflex Radioactive to compete with plaintiffs in the market for radioactive materials.
>
> In their amended complaint, plaintiffs assert against all defendants claims for violations of the federal Defend Trade Secrets Act ("DTSA"), the Louisiana Uniform Trade Secrets Act ("LUTSA"), and the Louisiana Unfair Trade Practices Act ("LUTPA"), as well as for conversion. Against Schehr individually, plaintiffs assert claims for violation of the Computer Fraud and Abuse Act ("CFAA"), breach of legal duty, breach of contract, and fraud.

*Source Prod. & Equip. Co. v. Schehr*, 2017 WL 3721543, at *1-2 (E.D. La. Aug. 29, 2017) (footnotes citing record omitted).[8]

This litigation has been pending for over three years, and the claims have been greatly narrowed by this Court's rulings on motions for summary judgment and by settlements between some of the parties.[9] At this point, Plaintiffs' only remaining claims are LUTPA claims against McKannay and IUSA related to the allegedly improper use of Plaintiffs' "confidential information" ("confidential-information LUTPA claims"). In their operative complaint,[10] Plaintiffs do not describe with any particularity the allegedly misused "confidential information."

---

[8] The Court granted the motion to dismiss as to Plaintiffs' conversion claim against IUSA, IsoRad, and McKannay, as well as Plaintiffs' conversion claim against Schehr to the extent they sought to recover the value of their trade secrets; and otherwise denied the motion. *Source Prod. & Equip. Co.*, 2017 WL 3721543, at *7.
[9] *See* R. Docs. 247, 248, 278, 311, 312, 315 & 316.
[10] *See* R. Doc. 33.

However, after being ordered by this Court to specify their remaining claims, Plaintiffs contend that their LUTPA claims against IUSA and McKannay are based on the following events:

    a)    Schehr's causing SPEC to experience loss of income from the High Tech distributorship.

    b)    Schehr's placing the depleted uranium ("DU") shields order through IUSA and McKannay when SPEC was financially vulnerable;

    c)    Schehr's disclosing confidential information about SPEC's finances (regarding amounts owed by Qualitek to SPEC and SPEC's generally poor financial condition) to IUSA and McKannay in contravention of Schehr's confidentially agreement, which McKannay then used as leverage against SPEC;

    d)    Holding Schehr out as an agent of IUSA (through email accounts and otherwise), and operating IsoRad as an alter ego of IUSA;

    e)    Schehr's disclosing confidential information about SPEC's relationship with Gilligan (specifically related to the status of the alleged contractual obligations between SPEC and Gilligan, including allegations that SPEC was in breach of its obligations to Gilligan) to IUSA and McKannay in contravention of Schehr's confidentiality agreement, which McKannay then attempted to use as leverage against SPEC;

    f)    Schehr's allowing IsoRad to usurp SPEC's distributor relationships (specifically with respect to High Tech);

    g)    Schehr's seeking to expedite approval of IsoRad's radioactive-materials license so that IsoRad could take delivery of the DU shields that Schehr ordered through IUSA while at SPEC for the benefit of IsoRad;

    h)    Working together to introduce a fraudulent transfer of assets from Qualitek to NDT Texas, which took possession of the DU shields that are fabricated to specifications of the Aspect Containers; and

    i)    Attempting to expand into the HDR Afterloader market using SPEC's contracts and confidential information regarding the product specifications/know-how/business plans for manufacturing and selling HDR Afterloader sources.[11]

---

[11] R. Doc. 321 at 7-10.

On the other side of the litigation, IUSA asserted a counterclaim against SPEC for payment on an open account.[12] The relevant facts underlying IUSA's open-account claim against SPEC are largely undisputed.[13] For many years, IUSA served as an intermediary or broker to SPEC for materials SPEC needed.[14] SPEC would issue purchase orders to IUSA, and IUSA would in turn order the materials from third-party providers without requiring up-front payment from SPEC.[15] In the normal course of their dealings, IUSA typically did not require payment from SPEC until thirty days after delivery.[16]

In 2016, SPEC fell behind on its payments to IUSA for materials that had been delivered.[17] As a result, in August 2016, the parties reached an agreement whereby SPEC would pay down its account balance owed to IUSA at a rate of $17,500 per week.[18] SPEC stopped making payments to IUSA on January 11, 2017.[19]

On February 15, 2017, McKannay, ISUA's managing director, sent SPEC a letter demanding payment for amounts IUSA claimed were still owed.[20] An exhibit to the letter referenced eight items for which IUSA was demanding payment from SPEC with a total outstanding balance of $614,597.52.[21] The DU inserts ($237,058.82) is the first item listed on the exhibit, with a note that SPEC refused the items because Dicharry denied the validity of the order.[22] SPEC refused to pay for the items listed in the exhibit contending that it does not owe IUSA anything for products that were never delivered.[23]

---

[12] R. Doc. 58 at 44-45.
[13] R. Docs. 154-4 & 181-4.
[14] R. Doc. 181-4 at 1.
[15] *Id*. at 2-3.
[16] *Id.* at 3-4.
[17] *Id.* at 3.
[18] *Id.*
[19] *Id.*
[20] R. Doc. 58-1 at 1.
[21] *Id.* at 2.
[22] *Id.*
[23] R. Doc. 181-4 at 3-5.

On September 19, 2017, IUSA filed its counterclaim against SPEC seeking payments that it alleges are due on the open account.[24] IUSA alleges that it "procured various products (e.g., DU inserts, Ir-192, enriched Ir-191 discs, enriched Fe-56, Iridium NA discs) and performed services (e.g., arranging the sale by SPEC of radiographic systems to Beijing Deyan Xingye Co. Ltd ["BDX commission"]) per written purchase orders issued by SPEC and other agreements between IUSA and SPEC."[25] IUSA also alleges that it made a written demand to SPEC on February 15, 2017, that SPEC has refused to pay, and as a result, SPEC currently owes IUSA "$614,597.52 on the *open accounts*."[26] IUSA contends that it "has fulfilled the legal requirements for recovery under Louisiana's *open account* statute, La. R.S. 9:2781, and therefore, SPEC is liable to IUSA for the amount due and all reasonable attorney's fees for the prosecution and collection of such claims."[27] IUSA further alleges that SPEC's failure to pay IUSA resulted in IUSA's having to enter into a settlement with the producer of the Ir-192, Production Association Mayak ("PAM"), in the amount of $99,322.50, which "resulted in the loss of the relationship between IUSA and PAM and the loss of future profits to IUSA."[28] IUSA seeks judgment for the $614,597.52 on the open accounts, the $99,322.50 it paid to PAM, and lost profits, together with attorney's fees pursuant to La. R.S. 9:2781, and "[a]ny and all equitable relief IUSA is entitled to b[y] law, equity, contract, or custom."[29]

IUSA and SPEC previously filed cross-motions for summary judgment on ISUA's open-account claims related to the Ir-192, enriched Ir-191 discs, enriched Fe-56, Iridium NA discs, and BDX commission.[30] None of the moving papers discussed the DU inserts.[31] In ruling on

---

[24] R. Doc. 58 at 44-45.
[25] *Id.* at 44.
[26] *Id.* (emphasis added).
[27] *Id.* (emphasis added).
[28] *Id.*
[29] *Id.* at 45.
[30] R. Docs. 154 & 253.
[31] *See id.*

these cross-motions, the Court noted that the existence of an open account was undisputed. *Source Prod. & Equip. Co. v. Schehr*, 2019 WL 1856949, at *2-3 (E.D. La. Apr. 24, 2019). The Court denied IUSA's motion as to the Ir-192, enriched Ir-191 discs, enriched Fe-56, Iridium NA discs because IUSA never delivered the materials to SPEC. The Court also denied IUSA's and SPEC's motions as to the BDX commission because there was a disputed issue of material fact regarding whether IUSA received the money. *Id*. at *4. Further, the Court held that IUSA could not prevail on a breach-of-contract claim because it did not allege any contractual relationship with SPEC other than the open account. *Id*. at *5.

IUSA and McKannay and Plaintiffs now move for summary judgment on the remaining claims between them (other than the BDX commission).

## II.  LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point

to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. IUSA and McKannay's Motion for Summary Judgment

IUSA and McKannay argue that they are entitled to summary judgment on Plaintiffs' confidential-information LUTPA claims for several reasons.[32] First, IUSA and McKannay argue that Plaintiffs cannot show that: (1) they ever possessed any of Plaintiffs' confidential information; (2) they ever used Plaintiffs' confidential information in a manner that rises to the level of "unfair trade practices" prohibited by LUTPA; or (3) Plaintiffs suffered any ascertainable loss caused by the alleged unfair trade practices.[33] Next, IUSA and McKanny argue that all of Plaintiffs' confidential-information LUTPA claims are delinquent because they were not delineated in the operative complaint, and that Plaintiffs have never disputed that their LUTPA claims against IUSA and McKannay are premised on trade-secret misappropriation.[34] Moreover, IUSA and McKannay argue that Plaintiffs have not alleged, and have no evidence, that IUSA or McKannay ever owed a fiduciary duty or duty of confidentiality to Plaintiffs, which is required under LUTPA.[35] Further, IUSA and McKannay contend that Plaintiffs have not pleaded, and cannot prove, any type of ascertainable loss caused by any of the alleged confidential-information-based unfair trade practices.[36] Finally, IUSA and McKannay offer

---

[32] R. Doc. 326-1 at 3-28.
[33] *Id.* at 4-5.
[34] *Id.* at 5-6 & 7.
[35] *Id.* at 6.
[36] *Id.* at 8-9.

arguments as to why Plaintiffs cannot maintain a LUTPA claim as to each of the pieces of allegedly misused confidential information.[37]

In their opposition, Plaintiffs argue that their confidential-information LUTPA claims were asserted timely in the operative complaint and IUSA and McKannay never moved for summary judgment on such claims, thereby limiting the prior motion to the trade-secrets LUTPA claims.[38] Plaintiffs also argue that IUSA and McKannay owed a duty of confidentiality to SPEC by signing a confidentiality and non-disclosure agreement. Moreover, according to Plaintiffs, IUSA and McKannay cannot benefit from Schehr's breaching his own duties of confidentiality to Plaintiffs, and Schehr's actions can be imputed to IUSA and McKannay under the theory of apparent agency.[39] Plaintiffs then discuss incidents related to Qualitek, the DU inserts, and Gilligan that they claim evidence IUSA and McKannay's use of their confidential information in violation of LUTPA.[40] Finally, without offering any proof of their damages, Plaintiffs contend that they are "entitled to present evidence to a jury regarding [their] losses due to [IUSA and McKannay's] unfair and unscrupulous acts."[41]

At the outset, the Court acknowledges IUSA and McKannay's surprise at having to defend against LUTPA claims concerning "confidential information" after the Court disposed of Plaintiffs' trade-secret claims against them. Early on in the litigation, the Court did observe that "[t]he amended complaint contains no suggestion that these defendants [IUSA, McKannay, and IsoRad] possess any other property belonging to plaintiffs, or *infringed legal duties not dependent on the existence of a trade secret*." *Source Prod. & Equip. Co.*, 2017 WL 3721543, at *6 (emphasis added). Following its disposition of the trade-secrets claims, which had been the

---

[37] *Id.* at 11-26.
[38] R. Doc. 334 at 4-6.
[39] *Id.* at 6-9.
[40] *Id.* at 9-15.
[41] *Id.* at 16.

10

focus of the litigation, the Court itself was surprised to learn that Plaintiffs believed other claims against IUSA and McKannay survived. Throughout this litigation, Plaintiffs have used their vague pleading to pivot from failed allegations to reformulated ones based on the thin reed that they were "disclosed in and a topic of discovery between the parties."[42] The Court has tried on several occasions to get Plaintiffs to explain the complete basis for their case.[43] To the Court's dismay, Plaintiffs may have used these opportunities to alter the theory of their case. Thus, while Plaintiffs long left uncontradicted IUSA and McKannay's understandable expressions of their belief "that the only basis for Plaintiffs' unfair competition claim is trade secret misappropriation,"[44] the Court will nevertheless address Plaintiffs' current position that IUSA and McKannay engaged in unfair trade practices with respect to confidential information other than trade secrets.

LUTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A). A person who sustains "any ascertainable loss of money or movable property, corporeal or incorporeal" as a result of a LUTPA violation may bring suit to recover actual damages and, if such damages are awarded, reasonable attorney's fees and costs. *Bihm v. Deca Sys., Inc.*, 226 So. 3d 466, 483 (La. App. 2017) (citing La. R.S. 51:1409(A)). To prevail on a LUTPA claim directed to the allegedly wrongful use of confidential information, a plaintiff must prove: (1) it possessed knowledge or information not generally known, (2) communication of this knowledge or information by the plaintiff to the defendant under an express or implied agreement limiting its use or disclosure by

---

[42] R. Doc. 334 at 3.
[43] *See* R. Docs. 132, 275, 314, 317, 319.
[44] R. Doc. 351 at 4. In their responses to IUSA and McKannay's statement of material facts recounting Plaintiffs' failure, time and again, to dispute their assertions that Plaintiffs' LUTPA claims were premised solely on trade-secret misappropriation, Plaintiffs repeatedly recite that "[t]his is argument, not fact." R. Doc. 334-1 at 4-7. Perhaps, but Plaintiffs' failure to correct this characterization of their claims, until after their trade-secret claims had been dismissed, was at best artful.

the defendant, and (3) use or disclosure by the defendant of the information to the injury of the plaintiff. *Id*. at 482 (citing *Engineered Mech. Servs., Inc. v. Langlois*, 464 So. 2d 329, 334 (La. App. 1984)).

Even if items included on Plaintiffs' list actually constitute information not generally known and that IUSA and McKannay possessed knowledge of it, Plaintiffs' confidential-information LUTPA claim fails because there is no evidence to support the second or third prongs of the cause of action. There is no evidence that *Plaintiffs* communicated any of the alleged confidential information to IUSA or McKannay under an express or implied non-disclosure agreement.[45] Indeed, Plaintiffs' allegations are to the contrary, specifically, that Schehr, not Plaintiffs, gave the information to IUSA and McKannay.[46]

Reading Plaintiffs' opposition to summary judgment together with their response to IUSA and McKannay's statement of material facts, Plaintiffs have narrowed their LUTPA claims to three – those involving Qualitek, the DU shields, and Gilligan.[47] First, Plaintiffs complain that IUSA was "mercenary" in using its knowledge of Qualitek's debt to SPEC to price its offer to purchase the Qualitek accounts receivable held by SPEC at roughly the same amount. In return, IUSA was to receive a global distributorship in that all of SPEC's future sales to Qualitek would be made through IUSA and it would be SPEC's primary supplier of isotopes.

---

[45] Plaintiffs, for the first time in this litigation, point to a 2011 non-disclosure agreement, but that agreement applies only to information SPEC disclosed to IUSA between February 9, 2011, and February 9, 2016. None of the "confidential information," upon which Plaintiffs bottom their confidential-information LUTPA claims, was disclosed to IUSA during that period but was supposedly disclosed by Schehr after he left SPEC in July 2016. For this reason, Plaintiffs' confidential-information LUTPA claims fail. Still, the Court addresses herein additional reasons for dismissal of these claims.

[46] Schehr's conduct cannot be imputed to IUSA and McKannay. Under Plaintiffs' latest theory, apparent agency, they must demonstrate that (1) IUSA or McKannay, as principal, acted to manifest Schehr's authority as agent to an innocent third party, and (2) the third party's reasonable reliance on Schehr's manifested authority. *See Boulos v. Morrison*, 503 So. 3d 1, 3 (La. 1987). Plaintiffs present no summary-judgment evidence to support either prong of this test. Thus, Schehr alone is responsible to Plaintiffs for his actions.

[47] Accordingly, the balance of Plaintiffs' LUTPA claims (as listed *supra*) are dismissed with prejudice. As to each of them, Plaintiffs fail to present summary-judgment evidence of at least one essential element of the claim (whether the existence of confidential information, conduct rising to the level of an unfair trade practice, or an ascertainable loss) or have abandoned those claims.

But because SPEC refused the offer, Plaintiffs cannot have been injured by the complained-of conduct. Undaunted, Plaintiffs assert that IUSA then formed another entity to acquire Qualitek's assets and place it in bankruptcy so SPEC would never be paid the debt it was owed. Even if the amount of Qualitek's debt to SPEC was confidential, it was Schehr, not IUSA or McKannay, who made a disclosure of it, and IUSA's use of the information in crafting a proposal to SPEC (which was presumably aware of its own debt), or in facilitating the acquisition of Qualitek's assets, amounts to nothing more than ordinary business conduct, not the fraudulent, deceptive or unethical conduct targeted by the LUPTA. *See Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) ("LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. … Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious.").

Next, Plaintiffs also complain of IUSA and McKannay's conduct concerning the DU shields, on two grounds – namely, that they seek payment for product SPEC ordered but IUSA never delivered, and that IsoRad can use these shields for a container it might build based on the Aspect Container design. The first ground is nothing more than a garden-variety breach-of-contract claim and does not amount to a LUTPA claim. *See Turner*, 989 F.2d at 1422 ("[T]he statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.") (citation omitted). And Plaintiffs' second ground is merely conjectural, unsupported by any summary-judgment evidence. Further, there is absolutely no indication that orders for the DU inserts stem from the use, much less misuse, of any confidential information or caused any ascertainable loss.

Plaintiffs' last remaining confidential-information LUTPA claim charges that IUSA and McKannay generated and funded litigation by Gilligan against SPEC. In 2014, SPEC purchased the intellectual property for Gilligan's Viking line of radiography devices, but Gilligan claims SPEC defaulted on this contract. According to Plaintiffs, Schehr told McKannay about the dispute after he left SPEC, whereupon McKannay offered Gilligan certain assistance in return for an interest in the Viking line. Thereafter, the business relationship between SPEC and Gilligan ended, resulting in alleged damages to SPEC of $157,019.31, arising from lost sales of iridium and other radioactive sources. This claim also fails. First, Plaintiffs present no summary-judgment evidence of any agreement between IUSA and McKannay, on the one hand, and Gilligan, on the other, regarding the Viking device line. Second, the claimed loss arises from lost sales of product unrelated to the Viking line. Hence, Plaintiffs have not identified an ascertainable loss caused by this conduct.

Therefore, IUSA and McKannay's motion for summary judgment on Plaintiffs' confidential-information LUTPA claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

### C. SPEC's Final Motion for Partial Summary Judgment

SPEC moves for summary judgment on IUSA's open-account claim regarding the DU inserts. SPEC argues that, although the DU inserts were not specifically addressed in this Court's prior ruling on IUSA's counterclaim, the rationale for the decision concerning the other items of open account also applies to the DU inserts.[48] Specifically, IUSA cannot maintain an open-account claim for the DU inserts because it never delivered them to SPEC, and IUSA never pleaded or proved a breach-of-contract claim against SPEC regarding the DU inserts.[49] In

---
[48] R. Doc. 322-1 at 29-33.
[49] *Id.*

opposition, IUSA argues that the Court's prior ruling cannot apply to the DU inserts because they were not addressed by the parties' moving papers or mentioned in the ruling.[50] IUSA also argues that there are disputed issues of material fact that preclude summary judgment on its supposed breach-of-contract claim against SPEC related to the DU inserts.[51]

Although neither IUSA nor SPEC specifically addressed the DU inserts in their prior motions for summary judgment on IUSA's open-account claim, the reasoning the Court employed in ruling on those motions applies to the issue currently before the Court. It is undisputed that IUSA never delivered the DU inserts to SPEC. To prevail on a claim for open account, the plaintiff-creditor must show proof of actual delivery or "'that books were kept in the normal course of business and indicate that merchandise has been sold and delivered.'" *Cline v. George Kellette & Sons, Inc.*, 685 So. 2d 206, 208 (La. App. 1996) (quoting *Entron v. Callais Cablevision*, 307 So. 2d 787, 793-94 (La. App. 1975)) (citations omitted). Because IUSA has not delivered the DU inserts to SPEC, its open-account claim fails. In its prior ruling, this Court observed that "IUSA presents its breach-of-contract claim as an alternative in the event this Court finds that no open-account exists." *Source Prod. & Equip. Co.*, 2019 WL 1856949, at *5 (internal quotations omitted). Because "the parties do not dispute the existence of an open account," and the Court held "that no claim for payment on this open account is due …, not that no open account existed," the Court previously ruled that IUSA's breach-of-contract claim fails "because IUSA has alleged no contractual relationship other than the open account." *Id.* This reasoning applies now with equal force to Plaintiffs' open-account claim concerning the DU inserts, which thus fails because it is undisputed that the DU inserts were never delivered to SPEC. IUSA simply has no separate breach-of-contract claim against SPEC regarding the DU

---

[50] R. Doc. 330 at 1-8.
[51] *Id.*

15

inserts. Therefore, SPEC's final motion for partial summary judgment on IUSA's counterclaim (other than the open account on the BDX commission) is GRANTED.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that IUSA and McKannay's motion for summary judgment (R. Doc. 326) is GRANTED, and Plaintiffs' LUTPA claims against them are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' final motion for partial summary judgment on IUSA's counterclaim (except as to the BDX commission) (R. Doc. 322) is GRANTED, and IUSA's open-account claim related to the DU inserts is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 31st day of March, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE