UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SOURCE PRODUCTION & EQUIPMENT CO., INC., ASPECT TECHNOLOGY LIMITED, SPECMED, LLC, SPEC MED INTELLECTUAL PROPERTY, LLC AND SPEC INTELLECTUAL PROPERTY, LLC | CIVIL ACTION<br><br>NO. 16-17528<br><br>SECTION M (1) |
| VERSUS | |
| KEVIN J. SCHEHR, ISOFLEX USA, ISOFLEX RADIOACTIVE LLC, RICHARD H. MCKANNAY, JR., AND JOHN DOES 1-10 | |

**ORDER & REASONS**

Before the Court is a motion by defendants Isoflex USA ("IUSA") and Richard H. McKannay, Jr. ("McKannay") (collectively, "IUSA Defendants") for attorney's fees and costs as the prevailing party on plaintiffs' trade-secrets infringement claims.[1] Plaintiffs Source Production & Equipment Co., Inc. ("SPEC"), Aspect Technology Limited, SpecMed, LLC, Spec Med Intellectual Property, LLC, and SPEC Intellectual Property, LLC (the "SPEC Affiliates" and together with SPEC, "Plaintiffs") respond in opposition,[2] and the IUSA Defendants reply in further support of their motion.[3] Also before the Court is the IUSA Defendants' motion for *in camera* review of their attorney time records,[4] Plaintiffs' opposition thereto,[5] and the IUSA Defendants' reply in further support of the motion.[6] Having considered the parties memoranda, the record, and the applicable law, the Court issues this Order & Reasons to provide interim

---

[1] R. Doc. 355.
[2] R. Doc. 359.
[3] R. Doc. 366.
[4] R. Doc. 356.
[5] R. Doc. 360.
[6] R. Doc. 364.

guidance to the parties ahead of their more fulsome exchange, submissions, and briefing concerning the appropriate amount of fees and costs to be awarded.

## I. BACKGROUND

This long and tortuous litigation concerned the alleged theft of trade secrets and breaches of fiduciary duty and contract by Plaintiffs' former employee, Kevin Schehr, and his allegedly wrongful sharing of the stolen trade secrets with his company Isoflex Radioactive LLC ("IsoRad") and the IUSA Defendants. The Court has summarized the factual background of this case in prior rulings.[7] The procedural background concerning the prosecution of Plaintiffs' claims against the IUSA Defendants for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3), and the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. R.S. 51:1434, is what is relevant to the pending motion for attorney's fees and costs.

Plaintiffs filed this action on December 16, 2016.[8] After defendants filed motions to dismiss,[9] Plaintiffs filed an amended complaint in which they alleged against all defendants claims for violations of the DTSA, the LUTSA, and the Louisiana Unfair Trade Practices Act ("LUTPA"), as well as conversion.[10]

The litigation over the substantive claims lasted more than three years and involved extensive discovery and motion practice. Plaintiffs' claims were greatly narrowed in multiple rounds of motions.[11] On August 29, 2017, the Court dismissed with prejudice Plaintiffs' conversion claim against the IUSA Defendants finding that this claim was preempted by the

---

[7] *See, e.g.*, R. Docs. 53, 97, 248, 278, 312, 316 & 352. The Court notes that this matter was originally assigned to a different judge, and was realloted to Section M upon the confirmation of the undersigned. R. Doc. 114. For ease of reference, all prior orders will be referred to as being issued by "the Court."

[8] R. Doc. 1.

[9] R. Docs. 27 & 28.

[10] R. Doc. 33. Plaintiffs also alleged against Kevin Schehr, individually, claims for violation of the Computer Fraud and Abuse Act ("CFAA"), breach of legal duty, breach of contract, and fraud.

[11] For the resulting rulings, *see* R. Docs. 53, 247, 311, 312, 315, 316 & 352. For brevity, the Court will discuss only the dismissals of Plaintiffs' claims against the IUSA Defendants.

LUTSA.[12] However, the Court found that "the facts alleged in the amended complaint allow[ed] the Court to draw the reasonable inference that Isoflex USA, Isoflex Radioactive, and McKannay acquired trade secrets that they knew or had reason to know were acquired by improper means," and thus, Plaintiff's stated claims under the DTSA and LUTSA.[13]

In March 2019, the parties filed their first round of summary-judgment motions.[14] After reviewing the motions, oppositions, and replies, the Court continued the trial in this matter and advised the parties that the motions would be set for oral argument by separate orders on a serial basis at the Court's discretion.[15] After two oral argument hearings,[16] the Court ruled on the motions, dismissing nearly all of Plaintiffs' claims.[17]

Importantly, on September 30, 2019, the Court largely granted the defendants' summary-judgment motions regarding Plaintiffs' DTSA, LUTSA, and LUTPA claims.[18] In the Order & Reasons, the Court recounted the ever-evolving nature of Plaintiffs' trade-secrets claims and the pains taken by the Court and all defendants to nail down the exact trade secrets Plaintiffs were alleging to have been misappropriated.[19] The Court analyzed the fourteen trade secrets that Plaintiffs identified on February 18, 2019,[20] noting that Plaintiff abandoned four of them at the oral argument.[21] As to the ten remaining trade secrets, the Court found that Plaintiffs failed to timely identify four of them because they were raised for the first time on February 18, 2019, one day before defendants' expert reports were due, and just one month before the close of

---

[12] R. Doc. 53 at 16-20.
[13] *Id.* at 14 (internal quotation marks omitted); *see generally id.* at 6-16.
[14] R. Docs. 149, 152, 154-56, 158, 160, 162-64 & 166.
[15] R. Doc. 275.
[16] R. Docs. 308 & 314.
[17] R. Docs. 311, 312, 315 & 316.
[18] R. Doc. 312.
[19] *Id.* at 2-6.
[20] Plaintiffs produced the February 18, 2019 identification of trade secrets after being ordered by the magistrate judge to "identify *with particularity* for the defendants the specific trade secrets plaintiffs claim were misappropriated." R. Doc. 132 (emphasis in original).
[21] R. Doc. 312 at 4.

3

discovery.[22] The Court stated that "[s]uch a late identification of purported trade secrets amounts to trial by ambush and is exactly the type of tailoring of trade-secret identification to discovery that earlier identification is designed to prevent."[23] The Court found that Plaintiffs did not carry their burden of proving secrecy as to three other of the trade secrets,[24] and there was no evidence to support disclosure or use as to another.[25] With respect to the two remaining trade secrets, the Court held that the DTSA and LUTSA claims could proceed only against Schehr because there was no evidence to support Plaintiffs' theory that IsoRad or the IUSA Defendants used Plaintiffs' trade secrets, [26] and then only for limited injunctive relief because Plaintiffs failed to offer evidence to support a claim for monetary damages.[27] Finally, the Court dismissed all of Plaintiffs' LUTPA claims that related to the trade secrets.[28]

The parties filed a second round of summary-judgment motions in February 2020.[29] The Court granted the IUSA Defendants' motion for summary judgment on Plaintiffs' "confidential information" LUTPA claims, holding that Plaintiffs presented no evidence that Plaintiffs communicated any allegedly confidential information to the IUSA Defendants under an express or implied agreement limiting its use or disclosure or that any alleged use or disclosure by the IUSA Defendants resulted in any ascertainable loss to Plaintiffs.[30]

## II. PENDING MOTION

The IUSA Defendants argue that they are entitled to attorney's fees and costs because they were the prevailing parties on Plaintiffs' DTSA and LUTSA claims, which they argue were

---

[22] *Id.* at 10-12.
[23] *Id.* at 11-12.
[24] *Id.* at 12-14.
[25] *Id.* at 19-20.
[26] *Id.* at 19-22.
[27] *Id.* at 24-25.
[28] *Id.* at 25.
[29] R. Docs. 322, 324 & 326.
[30] R. Doc. 352 at 12-14. Plaintiffs and the other defendants (*i.e.*, the non-IUSA Defendants) settled their respective claims after the motions for summary judgment were filed. R. Doc. 354. The only claim remaining in this litigation, other than the IUSA Defendants' motion for attorney's fees and costs, is the IUSA Defendants' counterclaim against SPEC for commissions of a relatively *de minimus* amount. R. Doc. 325 at 14-16.

brought and maintained in bad faith.[31] Pointing to the evolving nature of Plaintiffs' trade-secrets claims and the extensive discovery and motion practice required to eventually dismiss them, the IUSA Defendants argue that Plaintiffs continued to prosecute such claims after it should have become clear that the claims were without merit and specious.[32] The IUSA Defendants also argue that Plaintiffs' claims were pursued in bad faith because they were eventually abandoned or dismissed.[33] The IUSA Defendants further argue that the defense of all of Plaintiffs' claims was "inextricably interwoven" with their defense of the trade-secrets claims, and thus, all of the attorney's fees incurred in defending the claims are recoverable.[34] Accordingly, the IUSA Defendants request $471,956.29 in attorney's fees and $19,234.34 in costs.[35] The IUSA Defendants ask the Court to review their legal bills *in camera*, without producing them to Plaintiffs, because, they say, the bills include some entries containing narrative protected by attorney-client privilege.[36]

In opposition, Plaintiffs argue that an award of attorney's fees is not warranted because their trade-secrets claims were not objectively specious and were pursued in good faith.[37] Plaintiffs argue that they had reason to believe that the IUSA Defendants had obtained and were using their trade secrets considering the IUSA Defendants' relationship with their former employee, Schehr, who had unquestionably obtained some of Plaintiffs' information in a wrongful manner.[38] Plaintiffs argue that the trade-secrets claims' survival of the motions to dismiss is proof that the claims were not specious.[39] Further, Plaintiffs argue that the IUSA Defendants improperly delayed producing many documents until the end of discovery which

---

[31] R. Doc. 355.
[32] R. Doc. 355-1 at 2-13.
[33] *Id.* at 13-14.
[34] *Id.* at 14-15.
[35] *Id.* at 15-23.
[36] R. Doc. 356.
[37] R. Doc. 359.
[38] *Id.* at 2-4.
[39] *Id.* at 6-7.

hampered Plaintiffs' ability to investigate fully the IUSA Defendants' acquisition and use of Plaintiffs' alleged trade secrets. And Plaintiffs argue that their prosecution of their trade-secrets claims was hindered further by other defendants withholding until the very end of the discovery period certain schematic drawings that evidenced the use of Plaintiffs' alleged trade secrets.[40] In addition, Plaintiffs argue that their trade-secrets claims cannot be said to have been specious simply because they were ultimately dismissed on summary judgment, especially considering that Plaintiffs' expert opined that the evidence, as he saw it, reflected likely misappropriation.[41] Finally, Plaintiffs argue that the IUSA Defendants failed to establish that the trade-secrets claims were brought in bad faith because Plaintiffs uncovered that Schehr stole their confidential information (purportedly including trade secrets) and had reason to believe that he was sharing this information with the IUSA Defendants.[42]

In the event that the Court awards attorney's fees to the IUSA Defendants, Plaintiffs argue that the amount requested must be reduced.[43] But Plaintiffs maintain they are unable to evaluate the claimed amount without access to at least redacted bills.[44] To that end, Plaintiffs oppose the IUSA Defendants' motion for the Court to examine *in camera* their legal bills without producing anything to Plaintiffs.[45] Plaintiffs request that the IUSA Defendants be ordered to produce redacted legal bills for Plaintiffs to inspect while the Court reviews the unredacted bills *in camera*.[46]

### III. LAW & ANALYSIS

The DTSA and the LUTSA both have attorney's fees provisions. Under the DTSA and the LUTSA, a court *may* award reasonable attorney's fees to the prevailing party if the trade

---

[40] *Id.* at 8-9.
[41] *Id.* at 11-14 & 15-19.
[42] *Id.* at 19-22.
[43] *Id.* at 22-26.
[44] *Id.*
[45] R. Doc. 360.
[46] *Id.*

6

secret misappropriation claim is made in bad faith.  18 U.S.C. § 1836(b)(3)(D); La. R.S. 51:1434.  A party that receives a judgment in its favor on the merits is the prevailing party. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (a non-DTSA case); *see also Dunster Live, LLC v. LoneStar Logos Mgmt. Co.*, 908 F.3d 948, 952-53 (5th Cir. 2018) (collecting DTSA cases interpreting the term "prevailing party"). Although it is uncontested that the IUSA Defendants were the prevailing party on Plaintiffs' DTSA and LUTSA claims, a plain reading of either statute indicates that the decision to award attorney's fees still requires a finding of bad faith and, even then, lies within the district court's discretion.

"Bad faith" is not defined in either the DTSA or the LUTSA.  The Fifth Circuit has explained, in the context of fee shifting imposed under a court's inherent power, that "[t]he standards for bad faith are necessarily stringent" because "'fee shifting' is punitive." *Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986) (citations omitted).  Thus, "[a] party should not be penalized for maintaining an aggressive litigation posture." *Id.*  "But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." *Id.* (quotation marks and citation omitted).  Courts have used a two-part test to analyze whether trade-secret claims have been brought in such bad faith as to warrant attorney's fees, asking, first, whether the claims were entirely baseless or objectively specious, and second, whether the claims were made or pursued in subjective bad faith or for an improper purpose.  *See, e.g.*, *Degussa Admixtures, Inc. v Burnett*, 277 F. App'x 530, 534 (6th Cir. 2008) ("bad faith requires objective speciousness of the plaintiff's claim and subjective bad faith in bringing or maintaining the claim") (internal quotation marks, alterations, and citations omitted); *Stockade Cos. v. Kelly Restaurant Grp., LLC*, 2018 WL 3018177, at *6 & n.3 (W.D. Tex. June 15, 2018) (collecting cases).

7

With these principles in mind, the Court tackles the IUSA Defendants' motion, firmly convinced, though, that it is time for this litigation to come to an end. While Plaintiffs' claims did have a *ready-fire-aim* quality to them, it was a quality arising out of their concerns understandably engendered by the misstep of SPEC's former employee, Schehr, in unauthorizedly downloading hundreds of documents from his company-issued computer after he left the company and then setting up shop with SPEC's competitor, IsoRad (and essentially the IUSA Defendants), right across the street.

The Court has previously recounted its disappointment with Plaintiffs' ever-evolving conceptualization of their claims and articulation of their trade secrets, but the IUSA Defendants do not have completely clean hands themselves. A brief review is in order. For the longest, this case seemed to be wholly about trade-secrets misappropriation. It is true that Plaintiffs beat back early motion practice to dismiss their claims, but defeating motions to dismiss – on the basis of allegations they themselves framed – does not by itself claims-of-merit make. This early motion practice, though, did have the salutary effect of focusing the parties' attention on the central issues of the case: the existence of trade secrets and their alleged misappropriation. And while it was a teeth-pulling exercise to get Plaintiffs to identify their trade secrets, and while defendants (including the IUSA Defendants), though slowly at first, eventually produced reams of documents in discovery, the ultimate evaluation of the allegations of misappropriation or misuse was hindered by IsoRad and Schehr's tardy production of certain drawings of a competing transport container. That it took a battle of experts to assist the Court in resolving the issues raised by these drawings belies the IUSA Defendants' contention now that the entirety of Plaintiffs' position and all of their trade-secret claims were objectively specious, even if the Court, in the end, determined that they did not have sufficient merit to survive summary judgment.

Equally questionable is the IUSA Defendants' contention now that Plaintiffs asserted and pursued all of their trade-secret claims in subjective bad faith or for an improper purpose. First, the IUSA Defendants point to no direct evidence of such bad faith. Instead, they build their case for bad faith on the circumstantial evidence of Plaintiffs' ever-shifting litigation position on the existence of trade secrets and on the ultimate dismissal of Plaintiffs' trade-secrets claims.

In their memoranda, both sides acknowledge the complexity of this case, so it is understandable that the Court concludes that the IUSA Defendants' motion for attorney's fees and costs requires some sorting – sorting which the parties have neglected to do – in order to arrive at a fair and just result. The Court approaches this sorting in a measured way and at a global level, designed to bring this case to its speedy and appropriate end. The Court has determined that Plaintiffs' persistent failure to timely, specifically, and completely identify the trade secrets they believed to be in contention resulted in a protracted resolution of this dispute, and that their assertion and dogged litigation of several claims predicated on plainly baseless or tardily-asserted trade secrets also unnecessarily protracted resolution of this dispute. The Court therefore finds these particular claims to have been objectively specious and pursued in subjective bad faith. But the Court has also determined that the core trade-secrets claims, like those concerning the competing container design, were asserted in the wake of Schehr's wrongful act of downloading Plaintiffs' documents (many confidential), resulting in legitimate concerns on Plaintiffs' part about their potential misuse; that Plaintiffs' prosecution of these claims was hindered by a delayed production of the design drawings of a competing container; and that resolution of these core claims required expert analysis at some level. The Court therefore finds these core claims *not* to have been objectively specious or pursued in subjective bad faith.

In their motion, the IUSA Defendants have not anticipated the sorting of claims the Court has done, so they have not tried to assign their attorney's fees and costs to these particular buckets. Moreover, the Court is not convinced they could do so, even now, given the way the litigation proceeded. It would not be fair or just, however, to compel Plaintiffs to absorb all of the fees and costs the IUSA Defendants demand when the core trade-secrets dispute itself does not warrant such an award. Accordingly, the Court finds that an equitable way to fashion an award is to estimate a percentage of the litigation devoted to the identification of the trade secrets and to those few claims that had absolutely no merit on their face, as opposed to the percentage of the litigation devoted to the resolution of the core trade-secrets claims or even the more marginal (but unsuccessful) trade-secrets claims for which Plaintiffs presented a modicum of proof. Based on the Court's own experience in commercial disputes, and its supervision of this particular litigation, the Court finds that 25% is a fair and just approximation of the time devoted to the former category and thus a sound basis for a fee award.

Employing a lodestar analysis, the IUSA Defendants request $471,956.29 in attorney's fees and $19,234.34 in costs. Yet, they have not provided Plaintiffs with a copy of their billing records. Even without such records, Plaintiffs oppose the requested amounts, raising the usual objections to rates, hours, and billing judgment as to the fees requested, and asserting that no costs should be awarded because the IUSA Defendants were not the prevailing party on all issues between these parties. At first blush, many of these objections appear to the Court to have weight. But the Court reserves judgment on these issues, including the quantification of an award, pending the IUSA Defendants' disclosure of the billing records (with redactions of information protected by the attorney-client privilege), and the parties' additional briefing to address the specifics of these records. Still, in the interim, the Court issues this ruling on the IUSA Defendants' motion for attorney's fees to provide guidance to the parties in the hope that

they might find common ground on a resolution of this their final dispute, thereby avoiding the waste of any more resources on a lawsuit that can have provided satisfaction to no one. The time has come for its being laid to rest once and for all.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the IUSA Defendants' motion for attorney's fees and costs (R. Doc. 355) is GRANTED as to awarding them 25% of the amount of fees the Court ultimately deems reasonable under the loadstar method.[47]

IT IS FURTHER ORDERED that the IUSA Defendants' motion for *in camera* review of their unredacted attorney time records (R. Doc. 356) is GRANTED.

IT IS FURTHER ORDERED that the IUSA Defendants produce to Plaintiffs within 15 days of this Order their redacted attorney time records. Once the IUSA Defendants provide the redacted billing records to Plaintiffs' counsel, Plaintiffs will have 15 days within which to file a supplemental brief on the lodestar analysis raised by the IUSA Defendants' motion, and the IUSA Defendants will then have 15 days to respond. These memoranda shall not exceed 10 pages.

New Orleans, Louisiana, this 18th day of August, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[47] Neither the DTSA nor the LUTSA uses the term "costs" in its fee-shifting provision. Thus, to the extent the IUSA Defendants seek an award of costs on bases separate and apart from any entitlement to costs under Rule 54 of the Federal Rules of Civil Procedure, the parties will need to address whether the IUSA Defendants are entitled to any such award.