UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOURCE PRODUCTION &
EQUIPMENT CO., INC., ASPECT
TECHNOLOGY LIMITED,
SPECMED, LLC, SPEC MED
INTELLECTUAL PROPERTY, LLC
AND SPEC INTELLECTUAL
PROPERTY, LLC

VERSUS

KEVIN J. SCHEHR, ISOFLEX USA,
ISOFLEX    RADIOACTIVE    LLC,
RICHARD H. MCKANNAY, JR., AND
JOHN DOES 1-10

CIVIL ACTION

NO. 16-17528

SECTION M (1)

## ORDER & REASONS

Before the Court once again is the motion of defendants Isoflex USA and Richard H. McKannay, Jr. (collectively, the "IUSA Defendants") for attorney's fees and costs as the prevailing party on plaintiffs' trade-secrets infringement claims.[1]  Plaintiffs Source Production & Equipment Co., Inc. ("SPEC"), Aspect Technology Limited, SpecMed, LLC, Spec Med Intellectual Property, LLC, and SPEC Intellectual Property, LLC (together with SPEC, "Plaintiffs") responded in opposition,[2] and the IUSA Defendants replied in further support of their motion.[3]  The Court previously issued an Order & Reasons granting the motion upon holding that the IUSA Defendants were entitled to recover 25% of the lodestar amount and providing interim guidance to the parties ahead of their more fulsome exchange, submissions, and briefing concerning the appropriate amount of fees and costs to be awarded.[4]  Now, the IUSA Defendants

---

[1] R. Doc. 355.
[2] R. Doc. 359.
[3] R. Doc. 366.
[4] R. Doc. 367.

file a supplemental brief in support of their motion for fees,[5] Plaintiff file a supplemental opposition to the motion,[6] and the IUSA Defendants file a reply.[7]  Having considered the parties' memoranda, the record (including the unredacted legal bills of the IUSA Defendants' counsel), and the applicable law, the Court issues this Order & Reasons awarding the IUSA Defendants $64,070.95 in attorney's fees.

## I.    BACKGROUND

Notwithstanding the Court's effort to provide guidance to the parties in the expectation that they might resolve their remaining disputes, they have failed to do so.[8]  As a result, in the continuing saga of this long and tortuous litigation concerning the alleged theft of trade secrets and breaches of fiduciary duty and contract by Plaintiffs' former employee, Kevin Schehr, and his allegedly wrongful sharing of the stolen trade secrets with his company Isoflex Radioactive LLC ("IsoRad") and the IUSA Defendants, the Court is now compelled to fix the amount of the attorney's fees it held the IUSA Defendants were entitled to recover.  The Court has summarized the factual background of this case in prior rulings.[9]  The procedural background concerning the prosecution of Plaintiffs' claims against the IUSA Defendants for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3), and the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. R.S. 51:1434, is what is relevant to the fee motion.

---

[5] R. Doc. 370.

[6] R. Doc. 374.

[7] R. Doc. 375.

[8] The Court advised the parties in its earlier Order & Reasons that it was issuing its "ruling on the IUSA Defendants' motion for attorney's fees to provide guidance to the parties in the hope that they might find common ground on a resolution of this their final dispute, thereby avoiding the waste of any more resources on a lawsuit that can have provided satisfaction to no one.  The time has come for its being laid to rest once and for all."  R. Doc. 367 at 10-11.

[9] *See, e.g.*, R. Docs. 53, 97, 248, 278, 312, 316, 352 & 367.  The Court notes that this matter was originally assigned to a different judge and was realloted to Section M upon the confirmation of the undersigned.  R. Doc. 114. For ease of reference, all prior orders will be referred to as being issued by "the Court."

Plaintiffs filed this action on December 16, 2016.[10]  After defendants filed motions to dismiss,[11] Plaintiffs amended their complaint to bring claims against all defendants for violations of the DTSA, the LUTSA, and the Louisiana Unfair Trade Practices Act ("LUTPA"), as well as conversion.[12]

The litigation over the substantive claims lasted more than three years and involved extensive discovery and motion practice.  Plaintiffs' claims were greatly narrowed in multiple rounds of motions.[13]  On August 29, 2017, the Court dismissed with prejudice Plaintiffs' conversion claim against the IUSA Defendants finding that this claim was preempted by the LUTSA.[14]  However, the Court found that "the facts alleged in the amended complaint allow[ed] the Court to draw the reasonable inference that Isoflex USA, Isoflex Radioactive, and McKannay acquired trade secrets that they knew or had reason to know were acquired by improper means," and thus, Plaintiffs stated claims under the DTSA and LUTSA.[15]

In March 2019, the parties filed their first round of summary-judgment motions.[16]  After reviewing the motions, oppositions, and replies, the Court continued the trial in this matter and advised the parties that the motions would be set for oral argument by separate orders on a serial basis at the Court's discretion.[17]  After two oral argument hearings,[18] the Court ruled on the motions, dismissing nearly all of Plaintiffs' claims.[19]

---

[10] R. Doc. 1.

[11] R. Docs. 27 & 28.

[12] R. Doc. 33.  Plaintiffs also brought claims against Kevin Schehr, individually, for violation of the Computer Fraud and Abuse Act ("CFAA"), breach of legal duty, breach of contract, and fraud.

[13] For the resulting rulings, *see* R. Docs. 53, 247, 311, 312, 315, 316 & 352.  For brevity, the Court will discuss only the dismissals of Plaintiffs' claims against the IUSA Defendants.

[14] R. Doc. 53 at 16-20.

[15] *Id.* at 14 (internal quotation marks omitted); *see generally id.* at 6-16.

[16] R. Docs. 149, 152, 154-56, 158, 160, 162-64 & 166.

[17] R. Doc. 275.

[18] R. Docs. 308 & 314.

[19] R. Docs. 311, 312, 315 & 316.

Importantly, on September 30, 2019, the Court largely granted the defendants' summary-judgment motions regarding Plaintiffs' DTSA, LUTSA, and LUTPA claims.[20]   In the Order & Reasons, the Court recounted the ever-evolving nature of Plaintiffs' trade-secrets claims and the pains taken by the Court and all defendants to nail down the exact trade secrets Plaintiffs were alleging to have been misappropriated.[21]   The Court analyzed the 14 trade secrets that Plaintiffs identified on February 18, 2019,[22] noting that Plaintiff abandoned four of them at the oral argument.[23]   As to the 10 remaining trade secrets, the Court found that Plaintiffs failed to timely identify four of them because they were raised for the first time on February 18, 2019, one day before defendants' expert reports were due, and just one month before the close of discovery.[24] The Court stated that "[s]uch a late identification of purported trade secrets amounts to trial by ambush and is exactly the type of tailoring of trade-secret identification to discovery that earlier identification is designed to prevent."[25]   The Court found that Plaintiffs did not carry their burden of proving secrecy as to three other of the trade secrets,[26] and there was no evidence to support disclosure or use as to another.[27]   With respect to the two remaining trade secrets, the Court held that the DTSA and LUTSA claims could proceed only against Schehr because there was no evidence to support Plaintiffs' theory that IsoRad or the IUSA Defendants used Plaintiffs' trade secrets,[28] and then only for limited injunctive relief because Plaintiffs failed to offer evidence to

---

[20] R. Doc. 312.
[21] *Id.* at 2-6.
[22] Plaintiffs produced the February 18, 2019 identification of trade secrets after being ordered by the magistrate judge to "identify *with particularity* for the defendants the specific trade secrets plaintiffs claim were misappropriated."  R. Doc. 132 (emphasis in original).
[23] R. Doc. 312 at 4.
[24] *Id.* at 10-12.
[25] *Id.* at 11-12.
[26] *Id.* at 12-14.
[27] *Id.* at 19-20.
[28] *Id.* at 19-22.

support a claim for monetary damages.[29]  Finally, the Court dismissed all of Plaintiffs' LUTPA claims that related to the trade secrets.[30]

The parties filed a second round of summary-judgment motions in February 2020.[31]  The Court granted the IUSA Defendants' motion for summary judgment on Plaintiffs' "confidential information" LUTPA claims, holding that Plaintiffs presented no evidence that Plaintiffs communicated any allegedly confidential information to the IUSA Defendants under an express or implied agreement limiting its use or disclosure or that any alleged use or disclosure by the IUSA Defendants resulted in any ascertainable loss to Plaintiffs.[32]

On August 18, 2020, the Court granted the IUSA Defendants' motion for attorney's fees "as to awarding them 25% of the amount of the fees the Court ultimately deems reasonable under the lodestar method."[33]  The Court also granted the IUSA Defendants' motion for *in camera* review of their unredacted attorney time records.[34]  And the Court ordered that the IUSA Defendants produce to Plaintiffs a redacted version of these records and that the parties file supplemental briefing on the lodestar analysis.[35]

---

[29] *Id.* at 24-25.

[30] *Id.* at 25.

[31] R. Docs. 322, 324 & 326.

[32] R. Doc. 352 at 12-14. Plaintiffs and the other defendants (*i.e.*, the non-IUSA Defendants) settled their respective claims after the motions for summary judgment were filed. R. Doc. 354. The only claim remaining in this litigation, other than the IUSA Defendants' motion for attorney's fees, is the IUSA Defendants' counterclaim against SPEC for commissions of a relatively *de minimus* amount. R. Doc. 325 at 14-16.

[33] R. Doc. 367 at 11.

[34] *Id.*

[35] *Id.*  In its Order & Reasons, the Court also observed that "[n]either the DTSA nor the LUTSA uses the term 'costs' in its fee-shifting provision," so "to the extent the IUSA Defendants seek an award of costs on bases separate and apart from any entitlement to costs under Rule 54 of the Federal Rules of Civil Procedure, the parties will need to address whether the IUSA Defendants are entitled to any such award."  *Id.* at 11 n.47.  The IUSA Defendants do not address the issue of costs in their supplemental brief.  Hence, the Court finds that they have waived any right to costs apart from those awardable by the clerk under Rule 54.

## II.     THE PARTIES' CONTENTIONS

In their supplemental brief, the IUSA Defendants update the summary of the total fees they incurred through August 31, 2020, increasing the amount of fees they ask the Court to set as the lodestar from $471,956.29 to $479,661.29, and they submit biographical information for another attorney.[36]   However, they do not expound upon their prior lodestar analysis.[37]   The IUSA Defendants did provide the Court with an unredacted version of their legal bills for *in camera* review, and as ordered, they produced a redacted version to Plaintiffs on September 16, 2020.[38]

In their supplemental opposition, Plaintiffs argue that "numerous deficiencies in those billing records … require a reduction to the lodestar amount."[39]   Plaintiffs reassert their position that the hourly rates sought by the IUSA Defendants are unreasonable and contend further that "the IUSA Defendants have not met their burden of establishing that the total hours expended were reasonable"[40] because they failed to "exercise billing judgment by reducing entries that were vague, duplicative, or excessive,"[41] "heavily utilized block billing," [42] and "billed attorney and paralegal time for administrative and clerical tasks."[43]   Plaintiffs point to specific support for their suggested adjustments to the lodestar amount on each of these grounds,[44] contending that the adjusted lodestar amount should be no more than $286,203.97.   Thus, they conclude that the fee award should be no more than $71,550.99, after applying the 25% factor the Court previously held

---

[36] R. Doc. 370.  In their reply, the IUSA Defendants seek to augment this amount by another $18,367.50 for services through October 13, 2020.  R. Doc. 375 at 10.  This time is not considered by the Court for there must be an endpoint to all litigation.
[37] R. Docs. 355-1 at 15-22; 366 at 7.
[38] R. Doc. 374 at 2.
[39] *Id*.
[40] *Id*. at 3.
[41] *Id*. at 5-7.
[42] *Id*. at 3-4.
[43] *Id*. at 3, 7-8.
[44] R. Doc. 374-1.

to be the portion of the lodestar amount that was recoverable.[45]

## III.    LAW & ANALYSIS

Having held that the IUSA Defendants were entitled to an award of fees under the applicable law, the Court concluded that the most equitable way to fashion the award was "to estimate a percentage of the litigation devoted to the identification of the trade secrets and to those few claims that had absolutely no merit on their face, as opposed to the percentage of the litigation devoted to the resolution of the core trade-secrets claims or even the more marginal (but unsuccessful) trade-secrets claims for which Plaintiffs presented a modicum of proof," and "[b]ased on the Court's own experience in commercial disputes, and its supervision of this particular litigation," the Court found "that 25% was a fair and just approximation of the time devoted to the former category and thus a sound basis for a fee award."[46]

The IUSA Defendants now ask the Court to fix the amount of attorney's fees they are entitled to recover.  In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney's fee award, beginning with calculating the "lodestar." *Combs v. City of Huntington*, 829 F.3d 388, 391-92 (5th Cir. 2016) (citation omitted).  A court must determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).  As the party requesting fees, the IUSA Defendants bear the burden of establishing the reasonableness of the fees they request by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who*

---

[45] R. Doc. 374 at 8-10.
[46] R. Doc. 367 at 10.

*Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012).  "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections."  *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Although there is a strong presumption that the lodestar is reasonable, a court next considers the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974),[47] and may adjust the lodestar upward or downward depending on the weight it allots to those factors.  *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010), and *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)).  As the fee applicants, the IUSA Defendants "bear[] the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.'" *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) (emphasis in original).  The lodestar, however, "may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar."  *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 799).

The IUSA Defendants request a lodestar in the amount of $479,661.29 before application of the 25% factor the Court previously adopted (which would yield a fee award of $119,915.32).  Thus, there is only a $48,364.33 difference between the IUSA Defendants' suggested award

---

[47] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.  *Id.* at 717-19.

($119,915.32) and that of Plaintiffs ($71,550.99).  Given this relatively small difference when compared to the million-plus dollars in fees and costs expended by all sides in this litigation, it is mystifying to this Court that the IUSA Defendants and Plaintiffs were not able to find a compromise.  Regardless, the Court has undertaken a detailed review of the unredacted legal bills submitted by the IUSA Defendants and has weighed the Plaintiffs' objections to rates, hours, and billing judgment as to the fees requested.

During the course of this litigation, the IUSA Defendants' attorneys and paralegals logged 1,320.2 hours working on this matter.[48]  According to the IUSA Defendants, the total value of these services is $551,508.50.[49]  However, the IUSA Defendants reduce this amount by the value of services related to their counterclaim and the work of a summer associate ($15,899.50), and further by the amount of the courtesy adjustments counsel made for the benefit of their clients ($55,947.71), yielding the amount of the lodestar they claim ($479,661.29).[50]

The lodestar analysis in this case requires a determination of the hours reasonably expended as well as an appropriate hourly rate in the local market.  *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) (applying rates applicable where district court sits rather than rates applicable to attorney's place of work absent certain limited circumstances, such as a showing that out-of-district counsel was necessary to the litigation).  "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested."  *Martinez v. Refinery Terminal Fire Co.*, 2016 WL 4594945, at *7 (S.D. Tex. Sept. 2, 2016) (citing *Kellstrom*, 50 F.3d at 328).  The IUSA Defendants assert that the rates they propose are "squarely

---

[48] R. Doc. 370 at 2.
[49] *Id.*
[50] R. Docs. 355-7 at 2; 370 at 3.

within the [market] range for those in the metro Southeast."[51]  According to the declarations and billing records submitted, the IUSA Defendants seek to recover for services performed by six attorneys and four paralegals, including senior partner Raymond G. Areaux at an hourly rate of $615.00 for 243.5 hours of work; partner Emily Lippold Gummer at an hourly rate of $395.00 for 951 hours of work; former firm lawyer Ian C. Barras at an hourly rate of $340.00 for 7 hours of work; senior associate J. Matthew Miller at an hourly rate of $335.00 for 40.1 hours of work; two other associates at hourly rates of $160.00 for 36.9 hours of work; and paralegals ranging in hourly rates from $60 to $145.00 for 41.7 hours of work.[52]  Plaintiffs challenge the rates for attorneys Areaux, Gummer, and Miller, urging that the rates be set at no more than $450,  $350, and $275 per hour, respectively.[53]

As Plaintiffs correctly observe, the declarations submitted by the IUSA Defendants reflect qualifications and experience of their counsel roughly equivalent to those of the attorneys in a recent intellectual property case in which this Court made a fee award.  *See Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, 2020 WL 375596, at *6 (E.D. La. Jan. 23, 2020).  In *Cajun*, this Court awarded a $450.00 hourly rate to a senior counsel with about the same experience and qualifications as Mr. Areaux, $350.00 to a partner with about the same experience and qualifications as Ms. Gummer, and $275.00 to a senior associate with about the same experience and qualifications as Mr. Miller.  The Court finds that it is reasonable to use these same hourly rates here because they fall within the range of rates allowed by other courts in this district, albeit, as in *Cajun*, on the higher end of that range.  *See, e.g., EnVen Energy Ventures, LLC v. Black Elk*

---

[51] R. Doc. 366 at 7 (citing the American Intellectual Property Law Association's 2019 Report of the Economic Survey, R. Doc. 355-10).

[52] R. Docs. 355-5; 370 at 2.

[53] R. Docs. 359 at 25; 374 at 9.  Plaintiffs do not specifically challenge the rates submitted for the other attorneys or paralegals.

*Energy Offshore Operations, LLC*, 2015 WL 3505099, at *2-3 (E.D. La. June 3, 2015) (finding hourly rates of $325 for partner/shareholder with 20 years of experience, $300 for associate with 10 years of experience, and $275 for associate with seven years of experience to be reasonable); *Wagner v. Boh Bros. Constr. Co.*, 2012 WL 3637392, at *15 (E.D. La. Aug. 22, 2012) (finding hourly rates of $275 for partner/shareholder with 10 years of experience, and $235 for associate with four years of experience to be reasonable); *Foley v. SAFG Ret. Servs., Inc.*, 2012 WL 956499, at *2 (E.D. La. Mar. 20, 2012) (finding hourly rates of $350 for partner/member with over 30 years of experience, and $275 for associate with over eight years of experience to be reasonable); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701-02 (E.D. La. 2009) (finding hourly rates of $300 for partners, $225 for associates, and $75 for paralegals to be within the customary range of rates in the New Orleans area); *Oreck Direct, LLC v. Dyson, Inc.*, 2009 WL 961276, at *6 (E.D. La. Apr. 7, 2009) ("The Court is familiar with the local legal market and notes that the top rate for partner-level attorneys here [*i.e.*, New Orleans] is between $400 and $450 per hour."); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, 2009 WL 927996, at *4 & *7 (E.D. La. Apr. 2, 2009) (finding that $325 was a reasonable hourly rate for attorney with 10 years of experience in a specialty practice and for attorney with 29 years of unspecialized legal experience); *In re OCA, Inc., Sec. & Derivative Litig.*, 2009 WL 512081, at *25 (E.D. La. Mar. 2, 2009) (finding that, in the New Orleans legal market, partner-level attorneys performing securities work bill at rates between $400 and $450 per hour and associates bill at rates between $200 and $250 per hour, and that $100 per hour is a reasonable rate for paralegals, law clerks, investigators, and project assistants).  Applying these rates to the hours worked by these three attorneys, the total amount of the fees the IUSA Defendants claim to constitute the lodestar decreases by $85,378.50 from $479,661.29 to **$394,282.79**.

11

Plaintiffs contend that this amount for the lodestar should be reduced even further due to the block billing used by counsel for the IUSA Defendants. Block billing makes "it impossible for the court to determine the reasonableness of the hours spent on each task." *Rodney v. Elliot Sec. Sols., LLC*, 2020 WL 4756490, at *8 (E.D. La. July 30, 2020) (quoting *Canon U.S.A., Inc. v. S.A.M., Inc.*, 2009 WL 35334, at *4 (E.D. La. Jan. 6, 2009)). In *Rodney*, the court indicated that a common method "used to compensate for block billing is a flat reduction of a specific percentage from the award," and it applied a 35% reduction while noting that a reduction in the range of 15-35% has been found reasonable for block billing. *Id.* (quoting *Canon*, 2009 WL 35334, at *5). This Court has reviewed the legal bills submitted *in camera* and agrees with Plaintiffs that "[m]any of the time entries at issue here were block billed, yet the IUSA Defendants did not exclude any significant portion of these entries from their claimed amounts."[54] The IUSA Defendants insist that an across-the-board penalty for this block billing would be "draconian," urging that the Court confine any such reduction to just those entries they concede are block billed.[55] The Court does not agree. From the Court's review, the block billing was so replete in the invoices as to warrant a 25% reduction in the lodestar, and the Court finds such a reduction to be reasonable in the circumstances.

In addition, Plaintiffs ask that the lodestar amount be reduced due to the failure of the IUSA Defendants' counsel to exercise billing judgment in that many of their time entries are vague, duplicative, or excessive, but not written off. "The [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written

---

[54] R. Doc. 374 at 4; *see, e.g.,* R. Docs. 356-3 at 15, 35-36, 52, 55 & 72-73; 374-1 at 2-3.
[55] R. Doc. 375 at 4-6.

off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (citations omitted).  A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment.  *Id.*; *Kellstrom*, 50 F.3d at 324.

The IUSA Defendants insist that their attorneys exercised billing judgment as reflected by the adjustments they made to the bills in the form of courtesy discounts and the reductions they made on their own related to work on a counterclaim and work by a summer associate.[56]  Yet, the nature of the courtesy discounts is not explained and may have nothing to do with the deficiencies in the time entries cited by Plaintiffs; the other reductions are explained and reveal they have nothing to do with the deficiencies cited by Plaintiffs.  After reviewing the legal bills *in camera*, the Court finds that many of the time entries are indeed vague (*e.g.,* "consult on issues")[57] or duplicative (*e.g.,* internal meetings among multiple attorneys),[58] and therefore excessive.  The IUSA Defendants take issue with many of the entries Plaintiffs contest,[59] and reiterate that, because of the reductions they unilaterally made, "there is ample evidence that the IUSA Defendants[] exercised billing judgment."[60]  But the fee claimants "are charged with proving that they exercised billing judgment."  *Walker*, 99 F.3d at 770 (citation omitted).  The IUSA Defendants have not borne their burden of demonstrating that their counsel wrote off all the time for vague or duplicative entries.  *See id.* at 769-70 (plaintiffs failed to prove billing judgment where they provided no evidence of having written off hours); *see also Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 908 (E.D. Tex. 2017) (attorney failed to show billing judgment when

---

[56] R. Doc. 366 at 7.
[57] *See, e.g.,* R. Docs. 356-3 at 7, 33; 374-1 at 4.
[58] *See, e.g.,* R. Docs. 356-3 at 2; 374-1 at 5-6.
[59] R. Docs. 375 at 6-9 (including exhibits).
[60] R. Doc. 366 at 7.

her affidavit did not refer to "a single minute that was written off as unproductive, excessive, or redundant") (citations omitted).

Plaintiffs also argue that because the IUSA Defendants' counsel billed for certain administrative and clerical tasks, the amount of fees they claim as the lodestar should be reduced even more. *See Rodney*, 2020 WL 4756490, at *10 ("It is well established that when an attorney performs a task that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate.") (quoting *Kuperman v. ICF Int'l*, 2009 WL 10737138, at *9 (E.D. La. Oct. 13, 2009)). Based upon the Court's *in camera* review, the invoices reflect a nominal amount of billing for administrative and clerical tasks.

Given the lack of billing judgment for all the fees sought to be recovered and, to a much lesser extent, the billing for limited administrative and clerical tasks, the Court finds it appropriate to reduce the lodestar by an additional 10%. *See Saizan*, 448 F.3d at 800 (10% reduction for lack of billing judgment); *see also Walker*, 99 F.3d at 770 (15% reduction for lack of billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (13% reduction for inadequate documentation); *Cajun*, 2020 WL 375596, at *6 (10% reduction for lack of billing judgment); *Tech Pharm. Servs.*, 298 F. Supp. 3d at 906 (reducing the number of each firm's hours by 6% for lack of billing judgment); *Innovention Toys, LLC v. MGA Entm't, Inc.*, 2014 WL 1276436, at *4 (E.D. La. Mar. 27, 2014) (reducing the submitted hours by 10% for lack of evidence of billing judgment).

Combining the 25% reduction for block billing with the 10% reduction for lack of billing judgment and billing for administrative and clerical tasks, the Court calculates the lodestar, adjusted by this 35% reduction ($394,282.79 × .35 = $137,998.98), now to be **$256,283.81** (or $394,282.79 - $137,998.98 = $256,283.81). The parties make no effort to examine or analyze the

*Johnson* factors in connection with the IUSA Defendants' fees.  Nevertheless, the Court has considered the *Johnson* factors and determines they require no enhancement or reduction of the lodestar.

Finally, the Court applies the factor (25%) it previously held to represent the scope of the fee award the IUSA Defendants are entitled to recover.[61]  Hence, the Court fixes the amount of these fees at **$64,070.95** (or $256,283.81 × .25 = $64,070.95).

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the IUSA Defendants are awarded $64,070.95 in attorney's fees on their motion for attorney's fees and costs (R. Doc. 355) that was previously granted.

New Orleans, Louisiana, this 15th day of October, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[61] R. Doc. 367 at 11.